**Nos. 25-6214 & 25-6470, 25-6223 & 25-6475,
25-6224 & 25-6465, 25-6229 & 25-6468**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant-Cross-Appellee,

v.

DEVONTE DEVON JACKSON, GIANN ICOB SALAZAR DEL REAL,
JORGE ENRIQUEZ, JR., SHAMAR TYRELL GARCIA,

Defendants-Appellees-Cross-
Appellants.

---

On Appeal from the United States District Court for the District of Nevada
Nos. 2:25-cr-240, 2:25-cr-227, 3:25-cr-26, 2:25-cr-230 (Campbell, J. (D. Ariz.))

---

## APPELLANT'S PRINCIPAL BRIEF

---

<table>
<tr><td></td><td>PAMELA J. BONDI<br>  Attorney General</td></tr>
<tr><td></td><td>TODD BLANCHE<br>  Deputy Attorney General</td></tr>
<tr><td></td><td>STANLEY WOODWARD<br>  Associate Attorney General</td></tr>
<tr><td></td><td>HENRY C. WHITAKER<br>  Counselor to the Attorney General</td></tr>
<tr><td>SIGAL CHATTAH<br>  Acting U.S. Attorney<br>  First Assistant U.S. Attorney</td><td>MATTHEW R. GALEOTTI<br>  Acting Assistant Attorney General</td></tr>
<tr><td>ADAM FLAKE<br>  Assistant U.S. Attorney<br>  Chief, Appellate Division<br>  District of Nevada</td><td>TYLER ANNE LEE<br>  Criminal Division<br>  U.S. Department of Justice<br>  950 Pennsylvania Avenue NW<br>  Washington, DC 20530<br>  (202) 514-5593<br>  tyler.lee@usdoj.gov</td></tr>
</table>

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................i

TABLE OF AUTHORITIES ...................................................................iii

INTRODUCTION ................................................................................. 1

STATEMENT OF JURISDICTION AND BAIL STATUS ........................5

STATEMENT OF THE ISSUES ..............................................................5

STATEMENT OF THE CASE ..................................................................6

    A.    Statutory Background ....................................................6

    B.    Factual Background....................................................9

    C.    Prior Proceedings.................................................... 11

SUMMARY OF ARGUMENT .............................................................. 14

STANDARD OF REVIEW ................................................................... 15

ARGUMENT ...................................................................................... 16

I.    Ms. Chattah Is Validly Serving As Acting U.S. Attorney. .................. 16

    A.    Under the FVRA, Ms. Chattah is the Acting U.S. Attorney because the Office of U.S. Attorney is vacant and she has been designated as the first assistant to that office............................. 16

    B.    The district court erred in holding that Ms. Chattah cannot serve as Acting U.S. Attorney because she was not the first assistant when the vacancy initially arose................................ 18

II.    Ms. Chattah Was Validly Delegated Authority To Supervise The U.S. Attorney's Office......................................................................... 31

    A.    The Attorney General possesses authority to conduct and supervise proceedings in the District of Nevada, and she delegated that authority to Ms. Chattah. ................................. 32

i

B. The District Court Erred In Holding That The FVRA's Exclusivity Provision Prohibits Delegating Powers Shared By A Vacant Office To A Non-Acting Official ............................... 37

    1. The FVRA does not limit the exercise of lawfully delegated powers. ........................................................... 38

    2. The district court's contrary conclusion misreads the FVRA and conflicts with multiple appellate decisions. ..... 48

CONCLUSION.................................................................................. 57

ii

# TABLE OF AUTHORITIES

**Cases**

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
  35 F.4th 1328 (Fed. Cir. 2022) ........................37, 43, 44, 45, 50, 52, 53, 56

*Dames & Moore v. Regan*,
  453 U.S. 654 (1981) ............................................................................ 29

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) ............................................................................ 19

*Fleming v. Mohawk Wrecking & Lumber Co.*,
  331 U.S. 111 (1947) ............................................................................ 52

*Fortin v. Comm'r of Soc. Sec.*,
  112 F.4th 411 (6th Cir. 2024) ............................................................. 54

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*,
  107 F.4th 1064 (9th Cir. 2024).................... 37, 44, 45, 48, 49, 50, 51, 52, 56

*Hooks v. Kitsap Tenant Support Servs., Inc.*,
  816 F.3d 550 (9th Cir. 2016) ...........................................................38, 53

*Kajmowicz v. Whitaker*,
  42 F.4th 138 (3d Cir. 2022) ........................................37, 40, 45, 50, 52, 56

*Nichols v. United States*,
  578 U.S. 104 (2016) ............................................................................ 19

*NLRB v. Noel Canning*,
  573 U.S. 513 (2014) ............................................................................ 18

*NLRB v. SW Gen., Inc.*,
  580 U.S. 288 (2017) ........................................................................28, 38

*Russello v. United States*,
  464 U.S. 16 (1983) .............................................................................. 19

*Schaghticoke Tribal Nation v. Kempthorne,*
   587 F.3d 132 (2d Cir. 2009)...................................................37, 45

*Stand Up for Cal.! v. U.S. Dep't of Interior,*
   994 F.3d 616 (D.C. Cir. 2021),
   *affirming* 298 F. Supp. 3d 136 (D.D.C. 2018)........................................... 45

*SW Gen., Inc. v. NLRB,*
   796 F.3d 67 (D.C. Cir. 2015)................................................ 53

*United States v. Hilario,*
   218 F.3d 19 (1st Cir. 2000)...................................................54, 55

*United States v. Mangan,*
   575 F.2d 32 (2d Cir. 1978) ................................................ 53

*United States v. Ramirez,*
   --- F.Supp.3d ----, 2025 WL 3019248
   (C.D. Cal. Oct. 28, 2025).......................... 46, 47, 49, 51, 52, 53, 54, 55, 56

*United States v. Weyhrauch,*
   544 F.3d 969 (9th Cir. 2008) ...............................................33, 53

*United States v. Williams,*
   68 F.4th 564 (9th Cir. 2023) ................................................5

*United States v. Youssef,*
   547 F.3d 1090 (9th Cir. 2008)........................................... 15

**Statutes and Rules**

5 U.S.C. § 101............................................................. 6, 17

5 U.S.C. § 105............................................................. 6, 17

5 U.S.C. § 3345...........................................................*passim*

5 U.S.C. § 3346........................................................ 9, 16, 39, 55

5 U.S.C. § 3347...........................................................*passim*

iv

5 U.S.C. § 3348 .................................................................... 42, 44, 48, 49, 50

5 U.S.C. § 3349 ............................................................................................ 22

5 U.S.C. § 9807 ............................................................................................ 42

7 U.S.C. § 7996 ............................................................................................ 42

10 U.S.C. § 2014 .......................................................................................... 42

12 U.S.C. § 5491 .......................................................................................... 25

18 U.S.C. § 3731 .......................................................................................... 53

22 U.S.C. § 2651a ........................................................................................ 24

26 U.S.C. § 6103 .......................................................................................... 53

28 U.S.C. § 1291 ............................................................................................ 5

28 U.S.C. § 501 .............................................................................................. 6

28 U.S.C. § 503 ......................................................................................... 6, 32

28 U.S.C. § 504 .............................................................................................. 6

28 U.S.C. § 504a ............................................................................................ 6

28 U.S.C. § 506 .............................................................................................. 6

28 U.S.C. § 507A ............................................................................................ 6

28 U.S.C. § 509 ...................................................... 6, 10, 32, 46, 47, 50, 51, 54

28 U.S.C. § 510 .............................................................. 7, 10, 33, 39, 46, 50

28 U.S.C. § 515 ................................................... 6, 7, 10, 32, 33, 46, 47, 50

28 U.S.C. § 516 .................................................................... 7, 32, 33, 47, 54

28 U.S.C. § 517 ......................................................................... 7, 33, 47, 54

v

28 U.S.C. § 518 .................................................................. 7, 32, 33, 47, 54

28 U.S.C. § 519 ...................................................................... 7, 8, 32, 47, 54

28 U.S.C. § 533 ........................................................................... 7, 33

28 U.S.C. § 541 ................................................................... 6, 7, 8, 17

28 U.S.C. § 542 ..................................................................... 7, 33, 55

28 U.S.C. § 543 .......................................................................... 7, 33

28 U.S.C. § 546 ................................................................ 1, 2, 8, 9, 17

28 U.S.C. § 547 ................................................................................ 7

31 U.S.C. § 502 .......................................................................... 26

31 U.S.C. § 1344 ........................................................................ 42

35 U.S.C. § 3 ............................................................................. 43

38 U.S.C. § 304 .......................................................................... 26

40 U.S.C. § 302 .......................................................................... 26

41 U.S.C. § 3304 ........................................................................ 42

42 U.S.C. § 902 .......................................................................... 26

44 U.S.C. § 2103 ........................................................................ 25

Pub. L. No. 111-8, 123 Stat. 524 (2009)........................................ 43

28 C.F.R. § 0.137 .................................................................. 11, 17

**Other Authorities**

144 Cong. Rec. S10868-69 (daily ed. Sept. 24, 1998).................................. 20

144 Cong. Rec. S11022 (daily ed. Sept. 28, 1998) ...................................... 20

144 Cong. Rec. S11037-39 (daily ed. Sept. 28, 1998) .................................... 21

144 Cong. Rec. S12822 (daily ed. Oct. 21, 1998) .....................................21, 31

Anne Joseph O'Connell, *Actings*, 120 Colum. L. Rev. 613 (2020) ................. 35

Center for Presidential Transition, Presidential Transition Guide
(2023) ........................................................................................................ 24

*Designating an Acting Attorney General*, 42 Op. O.L.C. 182 (2018)..............25, 26

*Designating an Acting Director of National Intelligence,* 43 Op. O.L.C. 291
(2019) ....................................................................................................... 26

*Designating an Acting Director of the Bureau of Consumer Financial
Protection*, 41 Op. O.L.C. 99 (2017).......................................................... 26

*Designating an Acting Director of the Federal Housing Finance Agency*, 43
Op. O.L.C. 70 (2019)................................................................................. 26

*Designation of Acting Associate Attorney General*, 25 Op. O.L.C. 177
(2001) ....................................................................................................... 23

*Designation of Acting Director of the Office of Management and Budget*, 27
Op. O.L.C. 121 (2003)............................................................................... 26

*Designation of Acting Solicitor of Labor*, 26 Op. O.L.C. 211 (2002)................... 26

Executive Order 13251 of December 28, 2001 ............................................... 26

Executive Order 13915 of April 14, 2020....................................................... 26

Executive Order 13963 of December 10, 2020 ............................................... 26

*Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op.
O.L.C. 60 (1999) ...................................................................................34, 42

Letter from Gary L. Kepplinger, General Counsel, GAO, to U.S.
Senators Richard J. Durbin, Russell D. Feingold, and Edward M.
Kennedy (Jun. 13, 2008) .......................................................................... 35

vii

Letter from Victor S. Rezendes, Managing Director, Strategic Issues, GAO to U.S. Senators Joseph I. Lieberman and Dan Burton (Dec. 7, 2001) .................................................................................... 23

S. Rep. No. 105-250 (1998) .................................................. 20, 30, 36, 51, 53

**INTRODUCTION**

There are approximately 1,000 offices in the Executive Branch that require appointment by the President and confirmation by the Senate ("PAS" offices). Congress has recognized the importance of the functioning of the Executive Branch and has authorized multiple ways for the continued exercise of the powers of PAS offices when they are vacant. These provisions are critical to the functioning of the government and apply in varied circumstances, including Presidential transitions, unexpected death or illness, and Senate inaction. Over many years, Congress has repeatedly refined the balance between the important roles for the President and Senate and the ability of the Executive Branch to operate in times of vacancies. This case concerns how these provisions apply to the currently vacant office of the U.S. Attorney for the District of Nevada.

Congress has provided three methods for the continued exercise of the powers of a vacant U.S. Attorney position: acting service under the generally applicable Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. § 3345; interim service under the U.S. Attorney-specific vacancy statute, 28 U.S.C. § 546; and the delegation of non-exclusive duties in accordance with relevant statutes. Each of these methods has precise rules, benefits, and drawbacks. It is typically up to the President, or the principal officers acting on his behalf, to

1

decide which method is best suited to the circumstances. Those methods generally supplement—rather than displace—each other.

This case involves the Executive Branch's use of all three of those methods, but focuses on two in particular: the FVRA and the delegation of non-exclusive duties. Ms. Chattah was initially appointed as the interim U.S. Attorney under § 546. As Ms. Chattah's interim service drew to a close, the Executive Branch used a different method of dealing with the vacancy and installed Ms. Chattah as Acting U.S. Attorney under the FVRA. As a backstop, and independent of the FVRA, the Attorney General also delegated to Ms. Chattah authority to conduct and supervise legal proceedings in the District of Nevada. In taking those steps, the government followed the rules in the FVRA and acted in accordance with longstanding executive practice to remove any doubt that Ms. Chattah is fully empowered to supervise criminal prosecutions in the District of Nevada while the office of U.S. Attorney is vacant.

The district court erred in holding that neither of those sources of authority permits Ms. Chattah to perform those functions. The district court agreed that the FVRA is available to address U.S. Attorney vacancies, in addition to § 546. But it then adopted an unprecedentedly narrow view of *who* can serve as an acting official under the FVRA. And it exacerbated that error by holding that the Attorney General also cannot delegate her concurrent or independent

2

authority to conduct and supervise criminal proceedings in the U.S. Attorney's Office to a different attorney within the Department of Justice (DOJ). The district court thus erroneously disqualified Ms. Chattah from participating in or supervising these prosecutions.

First, Ms. Chattah is lawfully serving as Acting U.S. Attorney. The Attorney General appointed Ms. Chattah as a Special Attorney in DOJ and designated her as the First Assistant U.S. Attorney for the District, so by automatic application of § 3345(a)(1) of the FVRA, she is currently serving as the Acting U.S. Attorney. Contrary to the district court's view, the FVRA does not require that only a first assistant who was serving at the time the vacancy arose can serve as the acting official under the default provision of the FVRA. On the contrary, § 3345(a)(1) is applicable to "the first assistant to *the office* of such officer" (emphasis added)—not the first assistant to the particular *officer* who was serving at the time the vacancy arose. Moreover, the statute's structure indicates that eligibility for service under § 3345(a)(1) is based on the first assistant's current (not past) status, because it uses the present tense, whereas other provisions use backward-looking language. The district court's novel contrary conclusion would mean that every presidential administration for more than two decades has unlawfully installed dozens of acting officials, without challenge.

3

Second, even if Ms. Chattah were not the Acting U.S. Attorney, she could still participate in and supervise the work of the U.S. Attorney's Office. The Attorney General has delegated to Ms. Chattah the power to conduct and supervise prosecutions in the District of Nevada. Ms. Chattah can continue to exercise that delegated authority in her capacity as First Assistant U.S. Attorney. Despite recognizing—as numerous courts have agreed—that the Attorney General can delegate her prosecutorial authority to Assistant U.S. Attorneys (AUSAs), the district court held that the Attorney General's delegation here was prohibited by the exclusivity provision of the FVRA (§ 3347). The court misinterpreted § 3347 and failed to appreciate the difference between an acting official, who may perform all the functions of an office, and a non-acting official who is merely exercising those functions that lawfully may be delegated. The district court's holding also conflicts with longstanding executive practice that has been accepted by every branch of the federal government and would cripple the functioning of government when a PAS office is vacant and no acting official may lawfully serve.

It is crucial that a DOJ component is overseen by someone the Executive Branch supports, and that a U.S. Attorney's Office can continue to function even when there is no Senate-confirmed or interim U.S. Attorney. The district court's contrary holdings misread the FVRA and would upend widespread and

4

longstanding executive practice across the federal government. The district court's disqualification orders should be reversed.

## STATEMENT OF JURISDICTION AND BAIL STATUS

In these consolidated appeals, the United States appeals the orders of the district court disqualifying Acting U.S. Attorney Sigal Chattah from participating in the prosecution of the defendants or supervising any AUSA prosecuting the defendants. *See* ER-8-39.[1] The district court, sitting by designation pursuant to this Court's order, *see* ER-48, entered the disqualification orders on September 30, 2025. Those orders are immediately appealable under 28 U.S.C. § 1291 pursuant to the collateral-order doctrine. *See, e.g.*, *United States v. Williams*, 68 F.4th 564, 569-71 (9th Cir. 2023). The United States filed timely notices of appeal on October 2, 2025. *See* ER-43, ER-130, ER-144, ER-260. The defendants are currently in pretrial custody. *See* Mot. to Expedite 5, *United States v. Jackson*, No. 25-6214 (Oct. 15, 2025).

## STATEMENT OF THE ISSUES

I. Whether Ms. Chattah is validly serving as Acting U.S. Attorney for the District of Nevada pursuant to the FVRA, because the office is vacant and

---

[1] "ER" refers to the government's Excerpts of Record. The parties' relevant motion briefing was substantially identical across all four defendants' cases, and the district court entered the same order in all four cases.

she is the First Assistant U.S. Attorney for the District of Nevada. *See* ER-164-168 (government brief); ER-14-27 (district court opinion).

II.     Whether Ms. Chattah can participate in and supervise the prosecution of the defendants pursuant to the Attorney General's express delegation of that authority to Ms. Chattah in her capacity as First Assistant U.S. Attorney for the District of Nevada. *See* ER-171-174 (government brief); ER-27-33 (district court opinion).

## STATEMENT OF THE CASE

### A.     Statutory Background

The Department of Justice is an executive department of the United States. 28 U.S.C. § 501; 5 U.S.C. §§ 101, 105. The Attorney General "is the head of the Department of Justice." 28 U.S.C. § 503. Congress has vested the Attorney General with "[a]ll functions" of the other officers, agencies, and employees of DOJ, with narrow exceptions not relevant here. *Id.* § 509. Those subordinate officers include the Deputy Attorney General, *id.* § 504, the Associate Attorney General, *id.* § 504a, the Solicitor General, *id.* § 505, twelve Assistant Attorneys General, *id.* §§ 506-507A, and United States Attorneys who conduct litigation in each judicial district, *id.* § 541. Congress also has vested the Attorney General with authority to conduct any legal proceeding that a U.S. Attorney may conduct. *Id.* § 515(a). In addition, Congress has vested the

6

Attorney General with general authority to conduct and supervise all litigation on behalf of the United States. *See id.* §§ 516-519.

Congress also has authorized the Attorney General to appoint various attorneys to carry out DOJ's functions, including special attorneys and special assistants to the Attorney General, *id.* § 515(a), AUSAs, *id.* § 542, special attorneys to assist U.S. Attorneys, *id.* § 543, and "officials" to "detect and prosecute crimes against the United States," *id.* § 533(1). Congress authorized the Attorney General to delegate her authority by "mak[ing] such provisions" as are "appropriate authorizing the performance" of any of her functions by "any other officer, employee, or agency of the Department of Justice." *Id.* § 510. Similarly, Congress provided that the Attorney General may "specifically direct[]" any DOJ officer or other "attorney specially appointed" by her to "conduct any kind of legal proceeding, civil or criminal, … which United States attorneys are authorized by law to conduct." *Id.* § 515(a); *see also id.* § 518(b).

Like the Attorney General, Congress broadly vested each U.S. Attorney with authority to conduct litigation on behalf of the United States, but only within her district. *Id.* § 547. U.S. Attorneys are appointed by the President, subject to the advice and consent of the Senate, *id.* § 541(a), for a "term of four years," plus continuing service until a successor is appointed and takes office, *id.* § 541(b). U.S. Attorneys are subject to the "direct[ion]" of the Attorney General

7

in the discharge of their duties, *id.* § 519, and are "subject to removal by the President," *id.* § 541(c).

Congress has provided multiple avenues for the continued functioning of U.S. Attorneys' Offices when the office of U.S. Attorney is vacant. As described, the Attorney General has overlapping authority to conduct and supervise litigation on behalf of the United States and the power to delegate that authority to others in DOJ. Congress also has provided statutory mechanisms to enable someone to temporarily serve as an interim or Acting U.S. Attorney. First, in 28 U.S.C. § 546, Congress authorized the Attorney General to "appoint a United States attorney for the district in which the office of United States attorney is vacant" to serve on an interim basis for up to 120 days or until a presidentially appointed U.S. Attorney takes office. *Id.* § 546(a), (c). The Attorney General may not appoint someone whose nomination has been rejected by the Senate, but a pending nominee may serve as interim U.S. Attorney. *Id.* § 546(b). If an interim appointment expires after 120 days, and the vacancy has not otherwise been filled, the district court may appoint an interim U.S. Attorney. *Id.* § 546(d).

Second, in the generally applicable FVRA, 5 U.S.C. § 3345 *et seq.*, Congress has authorized certain officers to temporarily perform the duties of a vacant PAS office "in an acting capacity," *id.* § 3345(a), subject to specified time

8

limits, *id.* § 3346. The default rule is that the "first assistant" to the vacant office serves as the acting officer, *id.* § 3345(a)(1), but the President may instead designate certain other officers or employees to serve in that role, *id.* § 3345(a)(2)-(3). The FVRA generally prohibits acting service by a current nominee for the office, unless the nominee served as the first assistant for at least 90 days within the year preceding the vacancy or is currently serving as the first assistant pursuant to a PAS appointment. *Id.* § 3345(b)(1)-(2). The FVRA is the "exclusive means" for authorizing an "acting official" to temporarily perform the duties of a vacant PAS office, unless Congress has expressly provided otherwise or the President makes a recess appointment. *Id.* § 3347(a).

## B. Factual Background

On January 17, 2025, Jason M. Frierson resigned as U.S. Attorney for the District of Nevada, and then-First Assistant U.S. Attorney Sue Fahami automatically became Acting U.S. Attorney under the FVRA, 5 U.S.C. § 3345(a)(1). *See* ER-8-9. On March 27, 2025, the Attorney General appointed Ms. Chattah as interim U.S. Attorney under 28 U.S.C. § 546, effective April 1, 2025. ER-183. Pursuant to that statute, Ms. Chattah was authorized to serve as U.S. Attorney on an interim basis for 120 days. *See* 28 U.S.C. § 546(c)(2).

As the end of Ms. Chattah's term as interim U.S. Attorney approached, the President and the Attorney General determined that Ms. Chattah was the

9

best person to continue to lead the U.S. Attorney's Office until a permanent U.S. Attorney was nominated and confirmed by the Senate. Accordingly, before Ms. Chattah's interim appointment expired, the Executive Branch transferred Ms. Chattah to the role of Acting U.S. Attorney, subject to the FVRA's statutory eligibility and timing restrictions for such service. Consistent with those statutory requirements, Ms. Chattah resigned her position as interim U.S. Attorney on July 28, 2025, 119 days into her term. ER-185. That same day, the Attorney General exercised her authority under multiple statutes (including 28 U.S.C. §§ 509, 510, and 515) to appoint Ms. Chattah as a Special Attorney and designate her as First Assistant U.S. Attorney for the District of Nevada, effective upon her resignation as interim U.S. Attorney. ER-187-193. The appointment documents specified that Ms. Chattah was "authorized to conduct in the District of Nevada, any kind of legal proceedings, civil or criminal, ... which United States Attorneys are authorized to conduct." ER-192. Effective the same day, Ms. Fahami's designation as First Assistant U.S. Attorney ended and she was reclassified as the Executive U.S. Attorney. ER-195-197.

Upon her resignation as interim U.S. Attorney and designation as First Assistant U.S. Attorney, Ms. Chattah became the Acting U.S. Attorney under the default provision of the FVRA, 5 U.S.C. § 3345(a)(1), because the office of

10

U.S. Attorney was vacant and Ms. Chattah had been designated the First Assistant in writing in accordance with DOJ regulations, 28 C.F.R. § 0.137(b).

Between July 29, 2025, and August 28, 2025, a federal grand jury in the District of Nevada returned felony indictments against all four defendants. On July 29, 2025, defendant Giann Icob Salazar Del Real was charged with various controlled substance and firearm offenses. ER-125-128. On July 30, 2025, defendant Shamar Garcia was charged with possessing a firearm as a felon. ER-257-258. On August 13, 2025, defendant Devonte Jackson was charged with Hobbs Act robbery and brandishing a firearm during a crime of violence. ER-40-41. On August 28, 2025, defendant Jorge Enriquez, Jr. was charged with assault with a dangerous weapon within Indian country. ER-141-142. All four defendants' indictments were signed by Assistant U.S. Attorneys, not Ms. Chattah. ER-41, ER-128, ER-142, ER-258.

## C. Prior Proceedings

On August 28, 2025, Mr. Garcia moved to dismiss his indictment and to disqualify Ms. Chattah and any AUSA acting under her authority from his prosecution, arguing, as relevant here, that Ms. Chattah was improperly serving as the Acting U.S. Attorney under the FVRA and therefore lacked authority to prosecute him. ER-198-256. Mr. Jackson, Mr. Salazar Del Real, and Mr. Enriquez subsequently filed identical motions. *See* ER-9 n.1. All four cases were

11

reassigned to Judge David G. Campbell of the District of Arizona, sitting by designation in the District of Nevada. *See* ER-10, ER-49, ER-136, ER-149, ER-265.

The government opposed the defendants' motions. *See, e.g.*, ER-154-197. The government explained that Ms. Chattah was validly serving as interim U.S. Attorney from April 1, 2025, until her resignation on July 28, 2025, when she began validly serving as Acting U.S. Attorney under the FVRA. *See, e.g.*, ER-164-168. At minimum, the government argued, Ms. Chattah had authority to conduct and supervise the prosecutions of the defendants in her capacity as First Assistant U.S. Attorney pursuant to the Attorney General's express delegation of authority to her. *See, e.g.*, ER-171-174. And, in all events, the government explained that dismissal of the indictments was improper. *See, e.g.*, ER-176-180.

The district court denied the motions to dismiss the indictments. ER-33-37, ER-39. But the court granted the defendants' requests to disqualify Ms. Chattah from participating in their prosecutions and from supervising any AUSA prosecuting them. ER-38-39. The court determined that Ms. Chattah is ineligible to serve as Acting U.S. Attorney under § 3345(a)(1) of the FVRA because she was not the first assistant at the time the vacancy arose. ER-14-27. The court also rejected the government's alternative argument that even if Ms. Chattah is not validly serving as Acting U.S. Attorney, she could still conduct

12

and supervise the defendants' prosecutions in her capacity as First Assistant U.S. Attorney and pursuant to the Attorney General's delegation of authority to her. ER-27-33. The court reasoned that the FVRA's exclusivity provision, 5 U.S.C. § 3347, precluded the Attorney General from delegating to Ms. Chattah the power to supervise and conduct the criminal proceedings in these cases. ER-27-32. The court concluded that because Ms. Chattah was not validly serving as Acting U.S. Attorney, "her involvement in these cases would be unlawful." ER-38.

The government appealed the orders disqualifying Ms. Chattah. ER-43, ER-130, ER-144, ER-260. The district court stayed the effects of the disqualification orders pending appeal. ER-4-7. The defendants filed notices of cross-appeal from the district court's denial of their motions to dismiss the indictments, which the government has moved to dismiss for lack of jurisdiction. *See* Gov't Mot. to Dismiss, *United States v. Jackson*, No. 25-6470 (Oct. 27, 2025). Other defendants in the District of Nevada subsequently challenged Ms. Chattah's authority to supervise their prosecutions; in light of the stay, the district court denied those motions without prejudice pending this Court's resolution of this appeal. *See, e.g.*, Order, *United States v. Armas-Rodriguez*, No. 3:25-cr-30 (Oct. 23, 2025).

13

## SUMMARY OF ARGUMENT

I.      Ms. Chattah is validly serving as the Acting U.S. Attorney for the District of Nevada under the FVRA.  The office of U.S. Attorney is currently vacant, and Ms. Chattah is currently serving as the First Assistant U.S. Attorney for the District.  Accordingly, under the default provision of the FVRA, 5 U.S.C. § 3345(a)(1), she is the Acting U.S. Attorney.

The district court erred in concluding that Ms. Chattah is not validly serving under § 3345(a)(1) because she was not the first assistant at the time that the vacancy initially arose.  That requirement appears nowhere in the statute.  The statute instead provides that the first assistant is the person who is the "first assistant to *the office* of such officer"—not the first assistant to the *particular officer* who was serving at the time the vacancy arose.  5 U.S.C. § 3345(a)(1) (emphasis added).  The district court's contrary interpretation conflicts with the structure of the statute and widely accepted Executive Branch practice over the last two decades, and would hamstring incoming presidential administrations in designating acting officers of their choice.

II.     In any event, Ms. Chattah may participate in and supervise the defendants' prosecutions in her capacity as First Assistant U.S. Attorney based on the Attorney General's delegation of authority to her.  That delegation followed well-established practice that has been uniformly recognized by all

14

three branches of government. In particular, even when an individual is no longer eligible to serve as an acting officer under the FVRA, the official may continue to perform the functions and duties of the vacant office that were lawfully delegated to them.

The district court erroneously held that the FVRA's exclusivity provision, 5 U.S.C. § 3347, prohibits delegating the powers of a vacant office to a non-acting official. As courts of appeals have concluded, the FVRA does not preclude the exercise of delegated functions by a non-acting official. The FVRA's exclusivity provision governs only temporary service by *acting* officials, who exercise both delegable and non-delegable functions. Furthermore, as the district court and this Court have recognized, the FVRA's remedy provision is limited to *non*-delegable functions and duties that may only be performed by the vacant office, underscoring that the FVRA's exclusivity provision does not preclude delegations.

## STANDARD OF REVIEW

This Court reviews questions of statutory interpretation *de novo*. *See, e.g.*, *United States v. Youssef*, 547 F.3d 1090, 1093 (9th Cir. 2008) (per curiam).

## ARGUMENT

### I. Ms. Chattah Is Validly Serving As Acting U.S. Attorney.

#### A. Under the FVRA, Ms. Chattah is the Acting U.S. Attorney because the Office of U.S. Attorney is vacant and she has been designated as the first assistant to that office.

1. The FVRA is one of several means by which the President or the Attorney General can designate someone to run a U.S. Attorney's Office when there is no Senate-confirmed U.S. Attorney. Under the FVRA, when a PAS office is vacant because of the death, resignation, or inability of the incumbent officeholder, another official may perform the functions and duties of that office on an acting basis. *See* 5 U.S.C. § 3345(a).

Section 3345(a) identifies three categories of individuals who may serve as acting officials, subject to time limits in § 3346. The default rule is that the "first assistant to the office" shall "perform the functions and duties of the office temporarily in an acting capacity." 5 U.S.C. § 3345(a)(1). Alternatively, the President may designate another PAS officer under § 3345(a)(2) or certain other agency officers or employees under § 3345(a)(3) to serve in an "acting capacity." *Id.* § 3345(a)(2)-(3). The FVRA generally prohibits acting service by a current nominee for the office, unless the nominee served as the first assistant for at least 90 days within the year preceding the vacancy or is currently serving as the first assistant pursuant to a PAS appointment. *Id.* § 3345(b)(1)-(2).

16

2. Ms. Chattah is the Acting U.S. Attorney under the default provision of the FVRA. *See* 5 U.S.C. § 3345(a)(1).

It is undisputed that the U.S. Attorney for the District of Nevada is a PAS office in the Executive Branch subject to the FVRA, *see* 28 U.S.C. § 541(a); 5 U.S.C. §§ 101, 105, and that it is vacant. The last Senate-confirmed U.S. Attorney, Jason M. Frierson, resigned on January 17, 2025, ER-8, and no one is currently serving as interim U.S. Attorney under 28 U.S.C. § 546, after Ms. Chattah resigned from that position on July 28, 2025, ER-185.

Nor did the district court dispute that Ms. Chattah is currently serving as the First Assistant U.S. Attorney for the District of Nevada. Every PAS office within DOJ must have "a First Assistant within the meaning of the [FVRA]." 28 C.F.R. § 0.137(b). "Where there is a position of Principal Deputy to the PAS office, the Principal Deputy shall be the First Assistant. Where there is no position of Principal Deputy to the PAS office, *the First Assistant shall be the person whom the Attorney General designates in writing*." *Id.* (emphasis added). The district court acknowledged that, on July 28, 2025, the Attorney General appointed Ms. Chattah to a position within DOJ (Special Attorney) and designated her in writing as the First Assistant U.S. Attorney for the District of Nevada, replacing Sue Fahami. ER-9.

17

Ms. Chattah is therefore serving as the First Assistant. Under the default provision of the FVRA, then, she "shall perform the functions and duties of the office" of U.S. Attorney "in an acting capacity," subject to the time limits of the FVRA. 5 U.S.C. § 3345(a)(1). She has validly served in that capacity since July 28, 2025.

## B. The district court erred in holding that Ms. Chattah cannot serve as Acting U.S. Attorney because she was not the first assistant when the vacancy initially arose.

Contrary to the district court's conclusion, the FVRA does not require a first assistant to be the incumbent at the time the vacancy initially arose in order to serve as an acting PAS officer under the default provision in § 3345(a)(1).

1. First, consider the statutory text. The statute does not say that only the first assistant *at the time the vacancy arose* shall be the default acting officer under § 3345(a)(1). Rather, it says that "[i]f" a PAS officer "dies, resigns, or *is* otherwise unable to perform the functions and duties of the office," "the first assistant *to the office* of such officer shall perform" those functions and duties in an acting capacity. 5 U.S.C. § 3345(a)(1) (emphases added). Because a vacancy is "a continuing state," *NLRB v. Noel Canning*, 573 U.S. 513, 539 (2014), § 3345(a)(1) requires determining who the first assistant is at the point in time when a PAS officer "is" unable to perform, not just when a PAS officer first became unable to perform. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 478

18

(2003) (when a statutory provision is "expressed in the present tense," it requires consideration of the status at the time of the covered action, not before); *Nichols v. United States*, 578 U.S. 104, 109-10 (2016) (same). That is confirmed by the statute's reference to the first assistant "to the *office* of such officer" (which can be different people over time), rather than the first assistant to a particular PAS officeholder at a particular time.

Second, consider § 3345's structure. Elsewhere in the same section, Congress *did* include backward-looking language that makes eligibility for acting service for certain individuals depend on the state of affairs during the time preceding the vacancy. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quotation marks omitted).

Two paragraphs later, for instance, Congress made ineligible for a presidential acting designation certain officials who had not served in the agency for at least 90 days in the year preceding when the vacancy arose. *See* 5 U.S.C. § 3345(a)(3)(A). In the next subsection of the statute, Congress lifted the general prohibition on having an acting official also be the nominee for anyone who had served as first assistant for at least 90 days prior to the date on which the vacancy

19

initially arose. *See id.* § 3345(b)(1)(A). No such backward-looking eligibility requirement, however, applies to an official who is designated first assistant under § 3345(a)(1) and is not the nominee for the position in question. To the contrary, the general prohibition in § 3345(b)(1)(A) implicitly contemplates that a first assistant *may* serve as an acting official even if she "did not serve in the position of first assistant" prior to the vacancy, so long as she is not also the nominee. *Id.*

Third, although text and structure alone should resolve the question, consider also the legislative history of the statute. An earlier version of the bill defined the first assistant in § 3345(a)(1) as the "first assistant of *such officer*," S. Rep. No. 105-250 at 25 (1998) (emphasis added), rather than the "first assistant *to the office* of such officer," 5 U.S.C. § 3345(a)(1) (emphasis added). That proposed language was the subject of debate and a cloture vote and was eventually altered in the final version of the bill after the cloture motion failed. *See* 144 Cong. Rec. S10868-69 (daily ed. Sept. 24, 1998); 144 Cong. Rec. S11022 (daily ed. Sept. 28, 1998) (statement of Sen. Thompson) (explaining that under the bill being debated "the first assistant to the officer becomes the acting officer"). Some Senators voted against cloture precisely because the "first assistant to such officer" language proposed in the bill was too restrictive, and Congress as a result changed the language to the "first assistant to the office of

20

such officer" to address those concerns. For example, Senator Lieberman worried that "by the terms of the bill, a first assistant apparently can take over only if he or she was the first assistant at the time of the vacancy." 144 Cong. Rec. S11037 (daily ed. Sept. 28, 1998). Senator Lieberman continued:

> Also troubling is what can happen when a new President comes into office. If individuals in Senate-confirmed positions leave before the new President takes office, as often happens, then the only people who would be qualified to serve as acting officials as the new administration gets off the ground, because they were the first assistants at the time of the vacancy, are holdovers, often political appointees from the previous administration. That would create an awkward situation that would require a new administration to staff itself with a previous administration's political appointees.

*Id.* at S11038.

In response, Senator Thompson assured the Senate that "just to be the acting officer, anyone who serves in that position would become the acting officer without having been there any length of time." *Id.* But those assurances were not enough, and the cloture motion failed. *Id.* at S11039. To secure passage of the bill, as Senator Thompson later explained, "subsequent changes" were made, including using "[t]he term 'first assistant to the office' … rather than 'first assistant to the officer.'" 144 Cong. Rec. S12822 (daily ed. Oct. 21, 1998). "This change [was] made to 'depersonalize' the first assistant." *Id.* That critical change in the language—which was made after specific concerns that the earlier phrasing was too narrow and restricted acting service to incumbent first

21

assistants—reinforces what § 3345(a)(1)'s text and structure already plainly demonstrate: that the first assistant is not required to be serving in that role at the moment the vacancy in the PAS office arises.

Finally, consider longstanding Executive Branch practice. Administrations of both parties have routinely, at the start of a new administration, temporarily filled PAS positions that become vacant *before* noon on Inauguration Day by appointing new first assistants *at or after* noon on Inauguration Day. Those first assistants, by automatic operation of § 3345(a)(1), then serve in an acting capacity, subject to the FVRA's time constraints. There are numerous examples of this practice, including Sarah Harris's service as Acting Solicitor General at the beginning of the current administration, Brian Boynton's service as Acting Assistant Attorney General for the Civil Division at the beginning of the Biden administration, and David Barron's service as the Acting Assistant Attorney General for the Office of Legal Counsel at the beginning of the Obama administration. *See* Appellant's Br. 20, *United States v. Giraud*, 3d Cir. No. 25-2635 (Sept. 12, 2025).

The Government Accountability Office (GAO)—a component of the Legislative Branch statutorily charged with monitoring FVRA compliance, *see* 5 U.S.C. § 3349(b)—agrees with that longstanding practice. *See* Letter from Victor S. Rezendes, Managing Director, Strategic Issues, GAO to U.S. Senators Joseph

I. Lieberman and Dan Burton (Dec. 7, 2001), *available at* https://www.gao.gov/assets/gao-02-272r.pdf. So does DOJ's Office of Legal Counsel (OLC). *See Designation of Acting Associate Attorney General*, 25 Op. O.L.C. 177, 179-81 (2001).

2.      All of this shows that someone whom the Attorney General designates as the First Assistant U.S. Attorney after the prior U.S. Attorney steps down can serve under the FVRA as the Acting U.S. Attorney for the specified time period during the vacancy in that PAS office. Although the district court offered several justifications for its contrary reading of the statute, none withstands scrutiny.

First, the district court recognized that § 3345(a)(1), unlike § 3345(a)(2) and (a)(3), is automatic: the first assistant becomes the acting officer without any need for further action by the President or anyone else. ER-19. But the automatic nature of the provision does not suggest that it "operates only on first assistants in place when vacancies begin." ER-23. On the contrary, because a vacancy is a continuing state of affairs, the automatic nature of § 3345(a)(1)'s default rule and its "present tense," ER-18, establish that whoever is serving as the first assistant at a particular moment in time during the vacancy becomes the acting official. If only the first assistant who was in office when the vacancy arose could serve, then § 3345(a)(1) could not automatically apply once that first

23

assistant left office. Section 3345(a)(1) is an automatic default rule—it applies to first assistants precisely because an agency head can often ensure that there is a first assistant in place and the President therefore does not have to personally fill every PAS vacancy that arises. The rule makes sense, given the approximately 1,000 PAS offices in the Executive Branch.[2]

Second, the district court asserted (ER-16-17) that allowing new first assistants to become acting officials under § 3345(a)(1) would render the limits in § 3345(a)(2) and (a)(3) mostly superfluous, because if the President's choice for an acting officer does not satisfy the § 3345(a)(2) and (a)(3) criteria, he can simply direct the agency head to appoint that person as the first assistant under (a)(1). That is wrong. There are at least three significant circumstances where the President cannot rely on subsection (a)(1) to select an acting officer and thus subsections (a)(2) and (a)(3) continue to play an important role. First, when the first assistant position is itself a PAS office, (a)(1) is unavailable because the Executive Branch cannot appoint a first assistant without Senate confirmation. Instead, the President must use (a)(2) or (a)(3). That is often the case for the highest positions in agencies. *See, e.g.*, 22 U.S.C. § 2651a(a)(2) (both Secretary

---

[2] *See* Center for Presidential Transition, Presidential Transition Guide (2023), 93, *available at* https://presidentialtransition.org/wp-content/uploads/sites/6/2023/11/ 2023-Presidential-Transition-Guide.pdf (compiling data from the 2016 United States Government Policy and Supporting Positions).

of State and Deputy Secretary are PAS offices). Second, (a)(1) is also not available when the office of an agency head is vacant and the first assistant must be appointed by the agency head. *See, e.g.*, 12 U.S.C. § 5491(b)(5) (Bureau of Consumer Financial Protection); 44 U.S.C. § 2103(c) (National Archives and Records Administration). Third, subsections (a)(2) and (a)(3) also play a distinct role when the President wants to leave the current first assistant in place and appoint someone else to be the acting officer—*e.g.*, because the individual serving as first assistant is the best suited to perform the important second-in-command functions of a first assistant. *See, e.g.*, *Designating an Acting Attorney General*, 42 Op. O.L.C. 182 (2018) (discussing the designation of Matthew Whitaker as Acting Attorney General under § 3345(a)(3)).

The district court did not address the latter two circumstances. And it erroneously speculated that the first circumstance "seems likely to be rare" because it would only occur where the first assistant position is both a PAS office *and* vacant at the time the primary office becomes vacant. ER-17. It is not unusual for PAS offices to be vacant. And even when a PAS first assistant office is already filled, the Executive Branch cannot rely on (a)(1) to designate a different first assistant without Senate confirmation, and instead must use (a)(2) or (a)(3). Furthermore, presidential designations under § 3345(a)(2) and (a)(3) are not rare. On the first day of this administration alone, rather than relying on

§ 3345(a)(1), the President designated 31 officials to serve in an acting capacity, at least 27 of whom he designated under (a)(2) and (a)(3) of the FVRA. *See* https://www.whitehouse.gov/presidential-actions/2025/01/designation-of-acting-leaders/.[3] The President later relied on (a)(2) to name Secretary of State Marco Rubio, a Senate-confirmed PAS official, as the Acting Archivist of the United States. *See* https://www.archives.gov/about/organization/senior-staff. More broadly, Presidents have issued standing orders of succession for agencies pursuant to their authority under (a)(2) and (a)(3).[4] And many proposed Presidential designations under § 3345(a)(2) and (a)(3) have occasioned formal opinions issued by the Office of Legal Counsel.[5]

---

[3] The government has reviewed the statutory authority underlying those designations. Based on that review, only four of them could have been based on a statute other than the FVRA. *See* 38 U.S.C. § 304 (Acting VA Secretary); 31 U.S.C. § 502 (Acting OMB Director); 40 U.S.C. § 302(b) (Acting GSA Administrator); 42 U.S.C. § 902(b)(4) (Acting SSA Commissioner).

[4] *See e.g.*, Executive Order 13963 of December 10, 2020 (Department of Defense); Executive Order 13915 of April 14, 2020 (Department of the Interior); Executive Order 13251 of December 28, 2001 (Department of State); *see also Designating an Acting Director of National Intelligence,* 43 Op. O.L.C. 291, 300-02 (2019) (discussing the order of succession for the Office of the Director of National Intelligence).

[5] *See Designating an Acting Director of National Intelligence*, 43 Op. O.L.C. 291 (2019); *Designating an Acting Director of the Federal Housing Finance Agency*, 43 Op. O.L.C. 70 (2019); *Designating an Acting Attorney General*, 42 Op. O.L.C. 182 (2018); *Designating an Acting Director of the Bureau of Consumer Financial Protection*, 41 Op. O.L.C. 99 (2017); *Designation of Acting Director of the Office of Management and Budget*, 27 Op. O.L.C. 121 (2003); *Designation of Acting Solicitor of Labor*, 26 Op. O.L.C. 211 (2002).

26

Third, the district court dismissed (ER-18-21) the fact that § 3345(a)(3) and (b)(1) have backward-looking language, whereas § 3345(a)(1) does not. The court reasoned that § 3345(a)(3) is a "different kind of mechanism" than subsection (a)(1) because it is "not automatic" and thus (a)(3)'s backward-looking language "limit[s] the President's choices" to experienced employees. ER-19. But the court did not explain why, in its view, the automatic nature of § 3345(a)(1) justified the lack of similar language expressly focusing on whether the first assistant held office at the time the vacancy arose. If Congress were concerned about allowing recently-appointed first assistants to serve as acting officers, it could have similarly limited § 3345(a)(1) as it did (a)(3). But Congress did not do so;[6] indeed, as explained above, it expressly rejected proposed statutory text that would have limited acting service to incumbent first assistants.

The district court likewise neglected to properly consider the backward-looking language in § 3345(b)(1), instead focusing on § 3345(b)(1)'s use of "[n]otwithstanding subsection (a)(1)." That focus was misplaced because the government's argument does not hinge on that language. *See* ER-167 (government's motion response discussing § 3345(b)(1)). Subsection (a)(1) sets out the general rule that when a PAS office is vacant, the first assistant shall

---

[6] Nor did Congress similarly limit subsection (a)(2), which allows the President to direct another PAS officer to serve as the acting official, to service by individuals with a certain level of prior government experience.

perform the office's duties in an acting capacity. Subsection (b)(1) places limitations on acting service, delineating certain circumstances that prohibit a person from serving as the acting officer, "[n]otwithstanding" (a)(1)'s broad language. 5 U.S.C. § 3345(b)(1). "The 'notwithstanding' clause simply shows that (b)(1) overrides (a)(1)." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 304 (2017).

In erroneously focusing on the "notwithstanding" language, the district court overlooked that § 3345(b)(1)(A)(ii) logically contemplates that someone who was *not* the first assistant at the time of the vacancy can still be serving as the acting official under (a)(1). As discussed, § 3345(b)(1) provides that a first assistant *who is the nominee* for the permanent position may serve as an acting officer only if she served as first assistant before the vacancy arose.[7] Section 3345(b)(1) places no similar restrictions on a first assistant who serves as the acting officer and is *not* the nominee. The district court failed to address that point.

---

[7] The district court also erred in speculating that a "possible reason" for § 3345(b)(1)'s structure is the "general" principle that subsection (a)(1) does not control when the first assistant is the nominee. ER-20. Section 3345(b)(1), by its text, does not create such a blanket prohibition. Rather, it establishes that a first assistant who is also the nominee *can* serve as the acting officer so long as she satisfies the requirement of prior service. Put another way, the fact that subsection (b)(1) imposes prior-service restrictions *only* where the first assistant is also the nominee reinforces that subsection (a)(1) does not contain such restrictions.

Fourth, the district court suggested that Congress's use of the phrase "to the office of such officer" was merely intended to "ensure that the 'assistant' covered by subsection (a)(1) is the first assistant to the office" as opposed to "a personal assistant to the departed officer." ER-21. That is precisely the government's point. The first assistant is the individual who is the first assistant to the office at present, not simply the first assistant to the particular officer whose departure initially created the vacancy. Section 3345(a)(1) contains no limiting temporal language indicating otherwise. Indeed, the district court itself conceded that "Congress did not explicitly say that the first assistant addressed in subsection (a)(1) must be serving when the vacancy arises." ER-23.

Fifth, the district court disregarded (ER-21-23) the OLC opinion and GAO guidance (*supra* at 22-23) stating that the first assistant need not be the first assistant at the time the vacancy arose, on the ground that no deference was warranted to those offices' views, and asserted that the FVRA was enacted to curtail Executive Branch evasion of predecessor legislation. But GAO, an arm of Congress, has expressly agreed that § 3345(a)(1) applies to non-incumbent first assistants and Congress has made no attempt to amend that provision in the past two decades to curtail this common Executive Branch practice. *See Dames & Moore v. Regan*, 453 U.S. 654, 686 (1981) ("long-continued practice, known to and acquiesced in by Congress, would raise a presumption that the action had

29

been taken in pursuance of its consent") (brackets and quotation marks omitted). Similarly, OLC's interpretation informs the correct understanding of the statute's scope—particularly when viewed in conjunction with Congress's acquiescence and unchallenged Executive Branch practice. Likewise, that OLC initially and briefly took a different view of § 3345 is significantly outweighed by the fact that, subsequently, OLC interpreted the statute to mean that the first assistant need not be the first assistant at the time the vacancy arose, and that agreed-upon interpretation has remained unchanged for nearly a quarter of a century.

Finally, the district court invoked (ER-24-27) a Senate report from the FVRA's legislative history. But that report is irrelevant given the clarity of the statutory text. Even the district court itself recognized that it was resorting to legislative history to support a reading of the statute that is not apparent from the text. *See* ER-23 ("Congress did not explicitly say that the first assistant addressed in subsection (a)(1) must be serving when the vacancy arises."). Moreover, as explained in detail above (*supra* at 20-22), the Senate report on which the district court relied concerned an earlier version of the bill with critically different language that defined the first assistant as the "first assistant of such officer," S. Rep. No. 105-250, at 25, *not* the "first assistant to the office of such officer," 5 U.S.C. § 3345(a)(1).

30

In relying on the Senate Report, the district court asserted that the "intent and structure of the Senate bill was adopted in the final legislation." ER-25. The legislative history in fact shows the opposite with respect to the critical language at issue here. As explained above, the earlier definition in the Senate bill—"first assistant of such officer"—raised concerns that the language was overly restrictive and would allow only incumbent first assistants to serve as acting officers. Subsequent alterations accordingly broadened the language, changing it to "first assistant to the *office of such officer*," 5 U.S.C. § 3345(a)(1) (emphasis added), in order to "depersonalize" it, 144 Cong. Rec. S12822 (statement of Sen. Thompson). The statutory language therefore underwent a key revision between the Senate bill and the final legislation. To the extent the Court considers legislative history (which it need not do, given the clarity of the text), this deliberate shift in language supports the government's position that the first assistant is not limited to one specific person at one specific time.

## II. Ms. Chattah Was Validly Delegated Authority To Supervise The U.S. Attorney's Office.

Even if Ms. Chattah cannot serve as the Acting U.S. Attorney, she may continue to exercise prosecutorial and supervisory authority in the District of Nevada pursuant to the Attorney General's express delegation of authority to her in her capacity as First Assistant U.S. Attorney. The district court erred in concluding that this delegation of authority is barred by the FVRA. ER-27-33.

31

**A.** **The Attorney General possesses authority to conduct and supervise proceedings in the District of Nevada, and she delegated that authority to Ms. Chattah.**

1. The Attorney General unquestionably has the authority—through multiple reinforcing statutes—to prosecute crimes and supervise litigation in the District of Nevada. The Attorney General is the "head of the Department of Justice," 28 U.S.C. § 503, and is vested with "[a]ll functions" of DOJ's officers, agencies, and employees, subject to narrow exceptions not relevant here, *id.* § 509. That includes the U.S. Attorneys' functions to conduct litigation in their districts. Indeed, § 515(a) specifies that the Attorney General may "conduct any kind of legal proceeding, civil or criminal, ... which United States attorneys are authorized by law to conduct."

The Attorney General also has separate, direct authority to conduct and supervise all litigation on behalf of the United States. The Attorney General may "personally conduct and argue any case in a court of the United States in which the United States is interested." 28 U.S.C. § 518(b). The Attorney General also may "supervise all litigation to which the United States, an agency, or officer thereof is a party" and "direct all United States attorneys, assistant United States attorneys, and special attorneys" in exercising their duties. *Id.* § 519; *see also id.* §§ 516-517.

32

The Attorney General also has unquestioned authority to appoint various attorneys within DOJ and to delegate her functions to those attorneys. As explained, the Attorney General may appoint special attorneys and special assistants to the Attorney General, 28 U.S.C. § 515(a), AUSAs, *id.* § 542, special attorneys to assist U.S. attorneys, *id.* § 543, and other "officials" to "detect and prosecute crimes against the United States," *id.* § 533(1). The Attorney General may delegate "any function of the Attorney General" to "any other officer, employee, or agency of the Department of Justice," *id.* § 510, and may "specifically direct[]" any DOJ officer or other "attorney specially appointed" by her to "conduct any kind of legal proceeding, civil or criminal, … which United States attorneys are authorized by law to conduct," *id.* § 515(a); *see id.* § 518(b) (the Attorney General "may direct … any officer of the Department of Justice" to "conduct and argue any case in a court of the United States in which the United States is interested"); *id.* §§ 516-517; *see United States v. Weyhrauch*, 544 F.3d 969, 974 (9th Cir. 2008) (per curiam) (recognizing delegation authority under § 515(a)).

The Attorney General exercised those authorities here in appointing Ms. Chattah as a Special Attorney and designating her as First Assistant United States Attorney for the District of Nevada. ER-187. The Attorney General's delegation of powers to Ms. Chattah expressly authorized her to "conduct in the

33

District of Nevada, any kind of legal proceedings, civil or criminal, … which United States Attorneys are authorized to conduct," ER-192, and to supervise matters within the office to the same extent as any other first assistant. Ms. Chattah may exercise that authority, including as it relates to the criminal proceedings at issue here, even if she is ineligible to serve as the Acting U.S. Attorney under the FVRA.

2. The Attorney General's delegation of authority to Ms. Chattah is consistent with well-established practice—endorsed by all three branches of government—recognizing that an agency head may delegate authority to an individual to perform certain functions and duties of a vacant PAS office, even where the individual would not be eligible to serve in an "acting" capacity under the FVRA.

The Executive Branch has long understood delegations of authority to allow the duties of an office to be performed during a vacancy when there is no acting official in place. Shortly after the FVRA was enacted, OLC determined that "the Act permits" certain "responsibilities to be delegated to other appropriate officers and employees in the agency" because "Congress understood that there would be occasions … when there would, for a period, be no one qualified to serve in an acting capacity." *Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 72 (1999). Accordingly,

34

executive officials routinely carry out the functions of a vacant PAS office pursuant to a delegation of authority where no acting official is available. *See, e.g.*, Anne Joseph O'Connell, *Actings*, 120 Colum. L. Rev. 613, 634 (2020) (noting that "many functions and duties are regularly delegated" to executive officials).

For example, Steven Bradbury led OLC from February 2005 through the end of that Presidential administration without the Senate acting on his nomination to the position of Assistant Attorney General for OLC. In those portions of his tenure during which the FVRA's time limits precluded Mr. Bradbury from serving as the "acting" official, he led OLC pursuant to a delegation of authority in his role as the Principal Deputy Assistant Attorney General. *See* Letter from Gary L. Kepplinger, General Counsel, GAO, to U.S. Senators Richard J. Durbin, Russell D. Feingold, and Edward M. Kennedy (Jun. 13, 2008), *available at* https://go.usa.gov/xtEQP ("GAO Bradbury Letter"). Likewise, in the absence of a confirmed Assistant Attorney General for DOJ's Civil Division, Brian Boynton led the Division throughout the entirety of the last Presidential administration, including pursuant to delegated authority after his time for acting service under the FVRA had expired. *Compare, e.g.*, Brief for Respondent, 2021 WL 1154026 ("Acting Assistant Attorney General"), *with* Response Brief, 2024 WL 4262497 ("Principal Deputy Assistant Attorney

35

General"). And of particular relevance here, there have been multiple instances in which a First Assistant U.S. Attorney has continued to lead a U.S. Attorney's Office pursuant to delegated authority when the office of U.S. Attorney was vacant and the time limit for acting service under the FVRA had expired.[8]

Notably, Congress has endorsed the view that executive officials may exercise authority pursuant to delegations that are independent of, and compatible with, the FVRA. In enacting the FVRA, the Senate Committee on Governmental Affairs recognized that the "[d]elegable functions of the [vacant] office could still be performed by other officers or employees," even where no acting official was serving under the FVRA. S. Rep. No. 105-250, at 18. And GAO—again, the arm of Congress charged with monitoring FVRA compliance—agrees that non-acting officials can perform the lawfully delegated duties of a vacant office. *See* GAO Bradbury Letter (concluding that the FVRA did not prohibit Mr. Bradbury from performing the duties of the vacant office of

---

[8] For example, pursuant to a delegation of authority as the First Assistant U.S. Attorney, Elizabeth A. Strange led the U.S. Attorney's Office for the District of Arizona from approximately November 2017 until May 2019, *see, e.g.*, Brief of Appellee, 2018 WL 2418885; Michelle M. Baeppler led the U.S. Attorney's Office for the Northern District of Ohio from approximately May 2022 until June 2023, *see, e.g.*, Brief of Plaintiff-Appellee, 2023 WL 2600208; and Robert J. Troester led the U.S. Attorney's Office for the Western District of Oklahoma from approximately August 2018 until June 2019, *see, e.g.*, Brief of Plaintiff-Appellee, 2018 WL 5309976.

Assistant Attorney General for OLC while serving as Principal Deputy Assistant Attorney General).[9]

Courts have likewise endorsed this view, concluding that the FVRA does not preclude a non-acting officer from exercising lawfully delegated duties of a vacant PAS office. *See Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1336 (Fed. Cir. 2022); *Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132, 135 (2d Cir. 2009). This Court adopted similar logic in holding that the FVRA's remedial provisions do not prohibit ratification of an agency official's performance of lawfully delegated duties of a vacant office. *See Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1073-74 (9th Cir. 2024); *see also Kajmowicz v. Whitaker*, 42 F.4th 138, 148 (3d Cir. 2022).

**B.     The District Court Erred In Holding That The FVRA's Exclusivity Provision Prohibits Delegating Powers Shared By A Vacant Office To A Non-Acting Official**

The district court concluded that 5 U.S.C. § 3347, the provision that generally makes the FVRA the "exclusive means" to designate an "acting

---

[9] GAO has reiterated that understanding in subsequent decisions. *See* https://www.gao.gov/assets/880/874603.pdf (Assistant Attorney General for Office of Legal Policy, Department of Justice); https://www.gao.gov/assets/870/865197.pdf (Legal Adviser, Department of State); https://www.gao.gov/assets/870/869737.pdf (Under Secretary of Agriculture for Food, Nutrition, and Consumer Services, Department of Agriculture).

official," prohibits Ms. Chattah from exercising the authority delegated to her by the Attorney General. ER-27-28. That was mistaken.

### 1. The FVRA does not limit the exercise of lawfully delegated powers.

a. The FVRA's text makes clear that § 3347(a)'s exclusivity provision does not apply to the exercise of lawfully delegated powers by non-acting officials. As detailed above, Congress created in the FVRA a mechanism through which certain classes of government officials may serve as "acting" officers. 5 U.S.C. § 3345(a); *see SW Gen.*, 580 U.S. at 293. An official serving as an "acting" officer pursuant to the FVRA can exercise *all* "the functions and duties" of the vacant office, including any non-delegable powers that are specifically committed by statute exclusively to that office. 5 U.S.C. § 3345(a). Section 3347(a), in turn, provides that unless there is a recess appointment or another statute expressly authorizes the designation of an acting official for a particular office, the FVRA is the "exclusive means for temporarily authorizing an acting official to perform the functions and duties" of a PAS office. *Id.* § 3347(a); *see Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 556 (9th Cir. 2016) (where there is an office-specific vacancy statute, the FVRA is no longer exclusive but remains available, and "the President is permitted to elect between these two statutory alternatives"). Section 3347(a) thus makes clear that the FVRA is generally the exclusive means of designating an individual as

38

an "acting official," who is empowered to perform all the functions and duties of the vacant office.

Nothing in § 3347(a)'s exclusivity provision purports to address the delegation of a vacant office's functions and duties to an official exercising those powers in a non-acting capacity. That flows from the plain language of § 3347(a), which provides that the FVRA is the "exclusive means for temporarily authorizing an *acting official* to perform the functions and duties" of a PAS office. 5 U.S.C. § 3347(a) (emphasis added); *see id.* § 3345 (titled "Acting officer" and providing for performance of duties "in an *acting* capacity") (emphasis added); *id.* § 3346 (setting forth time limits for "serving as an *acting* officer") (emphasis added). The critical term "acting official" is not surplusage. Instead, it makes clear that the FVRA concerns the means of designating an "acting official" to perform all the functions and duties of an office, not the means of delegating some or all the office's delegable duties to a non-acting official.

The distinction between an acting official and one exercising a vacant office's powers by delegation is significant. An acting official derives her authority from her designation pursuant to the FVRA and is authorized to perform all "the functions and duties of the office" for which she is acting. 5 U.S.C. § 3345(a). A non-acting official, by contrast, derives authority only to the extent another official has delegated powers to her. *See, e.g.*, 28 U.S.C. § 510.

39

A non-acting official exercising delegated power thus faces two constraints not applicable to an acting official. First, a non-acting official can exercise only delegable powers—that is, the functions and duties that "a statute tasks an officer with … yet permits him to subdelegate." *Kajmowicz*, 42 F.4th at 149. The non-acting official cannot exercise authority that is "'exclusive' to the office" and thus non-delegable. *Id.* Second, non-acting officials are subject to any limits the superior officer sees fit to place on the delegation and can exercise only those delegable powers that have actually been delegated to them. Neither constraint applies to acting officials under the FVRA, who may exercise *all* powers of the office.

b. The surrounding FVRA provisions confirm that § 3347(a)'s exclusivity provision does not address the delegation of powers to non-acting officials. Start with § 3347(a)(1), which excepts from the FVRA's exclusivity provision a statute that "expressly authorizes" certain officials "to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity," or that itself "designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(a)(1). That exception applies only to statutes that provide for the designation of an official to serve in an "acting

40

capacity," demonstrating that the FVRA is concerned with which officials may serve as "acting" officials, not officials who merely exercise delegated powers.

That understanding is reinforced by § 3347(b). There, Congress provided that a statute giving "general authority to the head of an Executive agency … to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency, is not a statutory provision to which" the exception in § 3347(a)(1) applies. 5 U.S.C. § 3347(b). That provision precludes using a general delegation statute to make someone an acting official. That makes sense, given that a general delegation statute cannot authorize the performance of an office's non-delegable functions and duties, which an acting official is authorized to perform and which a non-acting official is not. The provision thus underscores that Congress drew a distinction in the FVRA between being an acting official authorized to perform all the functions and duties of an office and being a non-acting official delegated the power to perform only the delegable functions and duties of an office.

The FVRA's remedial provisions in § 3348 demonstrate that Congress distinguished between delegable and non-delegable duties. That section provides that when a PAS office is vacant, and no one is filling the office on an acting basis under the FVRA, the office remains vacant and "only the head of [the] Executive agency may perform any function or duty of such office." 5

41

U.S.C. § 3348(b).  An action taken by any other person "shall have no force or effect" and "may not be ratified."  *Id.* § 3348(d).  Importantly, though, Congress narrowly defined "function or duty" for "this section" as limited to the functions and duties that are required by statute or regulation "to be performed by the applicable officer (*and only that officer*)."   *Id.* § 3348(a)(2)(A)(ii),  (B)(i)(II) (emphasis added); *see also* 23 Op. O.L.C. at 72 ("Congress delimited which functions could be performed only by a qualified acting officer … defining them as only those functions or duties assigned exclusively to the … officer by statute or regulation.").  Section 3348 thus expressly differentiates between delegable and exclusive non-delegable powers and provides a remedy only for the unlawful exercise of exclusive non-delegable powers.[10]

Furthermore, since enacting the FVRA, Congress has expressly recognized that an official can exercise the functions of a vacant PAS office in a non-acting but temporary capacity.  In 2009, Congress passed an appropriations rider that is still in effect and states: "[N]o part of any appropriation contained in this or any other Act may be used for the payment of services to any individual carrying out the responsibilities of any position requiring Senate advice and

---

[10] For examples of Executive Branch functions that Congress has expressly made exclusive and non-delegable, *see, e.g.,* 5 U.S.C. § 9807(c)(1); 7 U.S.C. § 7996(e)(2)(C);  10  U.S.C.  § 2014(f);  31  U.S.C.  § 1344(d)(3);  41  U.S.C. § 3304(a)(7).

consent in an *acting or temporary capacity* after the second submission of a nomination for that individual to that position has been withdrawn or returned to the President." Pub. L. No. 111-8, Div. D, Title VII, § 749, 123 Stat. 524, 693 (2009) (emphasis added). This further underscores that Congress has acquiesced in the longstanding and widely accepted practice of subordinate officials exercising the delegable duties of a vacant PAS office in a non-acting capacity.

  c. Every court of appeals to consider this and similar issues—including this Court—has agreed with this plain-text interpretation of the FVRA. In *Arthrex*, the Federal Circuit addressed the exact issue presented here and held that § 3347's exclusivity provision does not bar the wholesale delegation of all of an office's delegable powers to a non-acting official. 35 F.4th at 1338. That case concerned a challenge to the denial of a rehearing request of an order invalidating a patent. The authority to decide such rehearing requests was vested in the Director of the U.S. Patent and Trademark Office, a PAS office. *See id.* at 1332; 35 U.S.C. § 3(a)(1). But because the offices of Director and Deputy Director were vacant, the rehearing decision was made by the Commissioner of Patents, who had been delegated the non-exclusive duties and functions of the Director under a standing order issued by a previous Director. *See Arthrex*, 35 F.4th at 1332. In holding that the Commissioner had authority to deny the rehearing request, the Federal Circuit explained that the FVRA

"does not … restrict" the delegation and performance of a "PAS officer's delegable duties when he is absent*." Id.* at 1338. The court rejected the argument that this interpretation would render § 3347(b) superfluous, explaining that § 3347(b) "merely provides that a statute granting the head of an agency 'general authority … to delegate [his] duties' does not exempt the agency from the FVRA." *Id.* When "Congress grants an agency head general delegation authority but specifies that certain duties are non-delegable," the court explained, "§ 3347(b) makes clear that the FVRA still applies to those non-delegable duties." *Id.*

This Court expressly relied on *Arthrex* in resolving a similar FVRA objection in *Gonzales*. *See Gonzales*, 107 F.4th at 1073 (citing *Arthrex*, 35 F.4th at 1336). *Gonzales* concerned a challenge to a rule that was originally issued by Chad Wolf in his role as Acting Secretary of the Department of Homeland Security (not pursuant to a delegation of authority) and that was later ratified by Secretary Alejandro Mayorkas. Plaintiffs challenged the validity of the rule on the ground that Mr. Wolf was not properly serving as Acting Secretary when he promulgated the rule. This Court agreed that Mr. Wolf lacked authority to promulgate the rule, but found that Secretary Mayorkas's subsequent ratification of Mr. Wolf's action was not prohibited by the FVRA's remedial provision, 5 U.S.C. § 3348(d), because promulgation of the rule was an action that the

44

Secretary could have delegated to another person. *Gonzales*, 107 F.4th at 1072-73. In so holding, this Court determined that the FVRA remedial provision's text is "plain and unambiguous," *id.* at 1074 (quotation marks omitted), and agreed with the Federal Circuit's determination that the provision "applies only to those duties of [a PAS] officer that are nondelegable," *id.* at 1073 (citing *Arthrex*, 35 F.4th at 1336).

Other courts of appeals have likewise concluded that the FVRA does not invalidate the exercise of the delegable functions and duties of a vacant office. *See Schaghticoke*, 587 F.3d at 135 (holding that the FVRA did not prohibit an inferior officer from performing a function of a PAS officer who had resigned because the agency's regulations permitted the PAS officer to delegate that function); *see also Kajmowicz*, 42 F.4th at 148 (determining that the FVRA's remedial provision is "unambiguous" and "applies only to functions and duties that a [Presidentially appointed and Senate-confirmed] officer alone is permitted by statute ... to perform" (quotation marks omitted)); *Stand Up for Cal.! v. U.S. Dep't of Interior*, 994 F.3d 616, 622 (D.C. Cir. 2021) (observing that the "FVRA forecloses the delegation of *exclusive* duties and authorities to a successor official after expiration of the statutorily authorized 210-day period of acting-capacity service") (emphasis added), *affirming* 298 F. Supp. 3d 136, 150 (D.D.C. 2018)

45

(holding that the exercise of *delegable* duties of a vacant PAS office by the principal deputy after his acting service had expired did not violate the FVRA).

d.      The U.S. District Court for the Central District of California recently considered this precise delegation question under nearly identical factual circumstances, and held that although First Assistant U.S. Attorney Bill Essayli was not validly serving as Acting U.S. Attorney by operation of the FVRA, the FVRA's remedial provision did not nullify his exercise of delegable duties of that office. *See United States v. Ramirez*, --- F.Supp.3d ----, 2025 WL 3019248, at \*13-14 (C.D. Cal. Oct. 28, 2025).  Furthermore, the district court held that Mr. Essayli was properly appointed as a Special Attorney and designated as the First Assistant U.S. Attorney, and therefore could continue supervising prosecutions in his capacity as First Assistant.  *Id.* at \*18-20.  The district court determined that Mr. Essayli's supervision of prosecutions as First Assistant did not violate the FVRA, because even where the statute "precludes [the First Assistant] from serving as Acting United States Attorney," it "says nothing about other duly-authorized positions." *Id.* at \*18.  Consistent with the principles described above, the district court recognized that the Attorney General "may delegate" the delegable duties of the office of U.S. Attorney to other officials under applicable statutes and regulations that grant her broad delegation authority, including 28 U.S.C. §§ 509, 510, and 515.  *See id.* at \*18-

46

19. Likewise, here, there is "no basis to preclude [Ms. Chattah] from performing the lawful duties of a [First Assistant]," *id.* at *18, which can include the non-exclusive duties of a U.S. Attorney that the Attorney General has delegated to her, *see id.* at *18-19.

     e.     In all events, the FVRA's exclusivity provision does not prohibit the delegation at issue here because the Attorney General did not solely delegate the powers of the office of the U.S. Attorney. Rather, the Attorney General also delegated her own separate authority to prosecute crimes and supervise litigation in the District of Nevada, which is independent of the U.S. Attorney's powers to conduct the same types of litigation. As explained (*supra* at 32-33), Congress vested the Attorney General with the powers of all officers within DOJ, 28 U.S.C. § 509, including the U.S. Attorneys, *id.* § 515, and, separately, *directly* vested the Attorney General with authority to conduct and supervise all litigation on behalf of the United States, *id.* §§ 516-519. At a minimum, no reason exists to construe the FVRA to prohibit the Attorney General from delegating her *own* powers merely because they overlap with the powers of a vacant office.

47

### 2. The district court's contrary conclusion misreads the FVRA and conflicts with multiple appellate decisions.

The district court adopted a novel construction of the FVRA that departed from the precedent of this Court and other circuits and that was based on a series of mistaken conclusions about both the FVRA's scope and the nature of delegated authority.

First, the district court misunderstood the government's argument. Contrary to the district court's characterization (ER-29), the government does not contend that the narrow definition of "function or duty" in § 3348 applies throughout the entire FVRA and renders § 3347(b)'s exclusivity provision "limited to nondelegable duties." The district court was correct that § 3348's definition of "function or duty" is limited to that section. And the government agrees that § 3347 of the FVRA is the exclusive means of designating an acting official who can perform *all* the duties of the office—both delegable and non-delegable. As this Court explained in *Gonzales*, "§ 3347(b) clarifies that general vesting-and-delegation statutes are not sufficient to authorize the department to choose the *acting officer* under the FVRA." 107 F.4th at 1078 (emphasis added). But as set out above, a person does not need to be serving as an acting officer to perform the non-exclusive delegable duties of the office. Even if Ms. Chattah cannot serve as Acting U.S. Attorney, the FVRA does not prohibit her from

48

exercising delegated authority in her capacity as First Assistant U.S. Attorney. *See Ramirez*, 2025 WL 3019248, at *18-19 (holding that even where the FVRA precludes the First Assistant from serving as Acting U.S. Attorney, it does not prohibit him from performing the office's non-exclusive delegable duties). That conclusion does not flow from the erroneous view that § 3347(b) is limited to non-delegable duties. Rather, it is because § 3347's exclusivity provision applies only when authorizing "*acting official[s]*" to perform an office's functions and duties. 5 U.S.C. § 3347(a) (emphasis added).

Second, the district court was incorrect to suggest that *Gonzales* and *Kajmowicz*, in addressing the FVRA's remedial provision (§ 3348), "said nothing about the meaning or scope of § 3347(b)." ER-30 & n.8. As explained, the fact that the FVRA's remedial provision does not apply to delegable functions and duties underscores why § 3347's exclusivity provision does not prohibit delegating those powers to an individual in a non-acting capacity. *See Ramirez*, 2025 WL 3019248, at *12-14 (explaining that § 3348(d) does not apply to an improperly serving Acting U.S. Attorney's performance of delegable duties); *Gonzales*, 107 F.4th at 1073. The district court did not explain why Congress would enact a remedial scheme that provided no remedy for what the district court understood to be the unlawful exercise of delegable authority in violation of § 3347.

49

Third, the district court similarly erred in dismissing, in a footnote (ER-30 n.8), the Federal Circuit's decision in *Arthrex* on the ground that the court of appeals improperly applied § 3348's narrow definition of "functions and duties" to the entire FVRA. That was not *Arthrex*'s reasoning. There, the Federal Circuit rejected Arthrex's argument that § 3348(d) deprived the Commissioner's action of any "force or effect." *Arthrex*, 35 F.4th at 1335 (quotation marks omitted). The court's statements that "the FVRA applies" only to non-delegable duties should be read in context as referring to § 3348(d). That is how this Court and the Third Circuit have understood *Arthrex*. *See Gonzales*, 107 F.4th at 1073; *Kajmowicz*, 42 F.4th at 151. Moreover, *Arthrex* strongly supports the legality of Ms. Chattah's continued supervision of these prosecutions pursuant to the Attorney General's delegation of authority. The Federal Circuit held that the FVRA did not prohibit an officer's exercise of a delegable function pursuant to the wholesale delegation of all delegable functions of a vacant PAS office. *See Arthrex*, 35 F.4th at 1335-38. That reasoning applies fully here, and this Court should not create a conflict with the Federal Circuit.

Fourth, for the reasons just explained, the district court's conclusion that the delegation statutes at issue here (28 U.S.C. §§ 509, 510, and 515) "could not be used to appoint an Acting U.S. Attorney" correctly states the law, but misses the point. ER-31. The FVRA's exclusivity provision, § 3347, prohibits the use

50

of those statutes to appoint an acting officer.  However, they can be used to delegate duties, including non-exclusive duties of the U.S. Attorney (which are also vested in the Attorney General under 28 U.S.C. § 509) to others within DOJ.  *See Ramirez*, 2025 WL 3019248, at *18-19.  When the Attorney General exercises her authority to delegate certain duties to a person, she is not "designat[ing]" that person to perform the office's functions and duties "in an acting capacity."  5 U.S.C. § 3347(a)(1)(A).  As discussed, there is a critical difference between designating a person as an acting officer and delegating an office's non-exclusive functions to that person. Only an acting officer can perform all the duties of an office, including any non-delegable powers that are specifically committed by statute or regulation exclusively to that office.  By contrast, non-acting officers may perform only those duties of a vacant office that are delegated to them and only if the duties are delegable in the first instance.[11]

Fifth, the district court thought it significant that Ms. Chattah had been delegated "all" of the "U.S. Attorney's powers" in her role as First Assistant

---

[11] The district court's reliance (ER-31-32) on legislative history was similarly misplaced.  Although § 3347(b) was adopted to address a "specific past practice" of "agencies evading the requirements for *designating* acting officers," *Gonzales*, 107 F.4th at 1078 n.7 (emphasis in original), the Senate Report expressly recognized that "[d]elegable functions of the [vacant PAS] office could still be performed by other officers or employees,"  S. Rep. No. 105-250 at 18.

51

U.S. Attorney. ER-32. But even if there were *no* powers of the U.S. Attorney that are exclusive to the office and thus non-delegable—and the government is not aware of any—that would not support the district court's reading of the statute. Rather, it would simply mean that, for this particular office, the FVRA's exclusivity prohibition (which applies generally to offices throughout the Executive Branch) imposes only a minimal constraint—namely, that the person exercising delegated functions of a vacant office cannot use the title "Acting" and must formally be delegated the powers of the office. As the Federal Circuit recognized in *Arthrex*, even if the FVRA's application to a particular office is limited, that "does not … justify departing from the plain language of the statute." 35 F.4th at 1337-38; *see Gonzales*, 107 F.4th at 1080; *Ramirez*, 2025 WL 3019248, at *19. Indeed, Congress enacted the FVRA against the background principle that "when a statute delegates authority to a federal officer or agency, subdelegation … is presumptively permissible absent affirmative evidence of a contrary congressional intent." *Kajmowicz*, 42 F.4th at 149 (brackets and quotation marks omitted); *see also Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 120-23 (1947). And Congress "chose [the FVRA's] limiting language … knowing full well that 'many [PAS officers] lack any meaningful statutory

52

[*i.e.*, non-delegable and exclusive] duties.'" *Arthrex*, 35 F.4th at 1337 (quoting S. Rep. No. 105-250, at 18).[12]

Critically, because the FVRA applies across the entire Executive Branch, its meaning cannot turn on the result of its application to one specific office in one specific agency, as the district court in *Ramirez* correctly recognized. *See Ramirez*, 2025 WL 3019248, at *19. Just as many PAS positions (unlike U.S. Attorney) have a PAS first assistant, many agencies (unlike the Department of Justice) require a PAS official to take official action. *See, e.g.*, *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 80 (D.C. Cir. 2015); *Hooks*, 816 F.3d at 555. To the extent that the primary functions of a Department of Justice lawyer—participating in litigation and supervising others—can be delegated to any DOJ lawyer, that is a feature of the Department of Justice that has little to do with the FVRA.

Sixth, the district court's reasoning is fundamentally flawed because it is based on the mistaken premise that the Attorney General delegated only the

---

[12] Even if the office of U.S. Attorney currently has no exclusive functions, there still is a legal difference between the power of an Acting U.S. Attorney and one delegated the functions of a U.S. Attorney. The former official could exercise any exclusive functions of the office added by statute or regulation in the future, whereas the latter official could not. Moreover, an official delegated the functions of a U.S. Attorney may face litigation concerning the delegability of those functions, and some courts have suggested that there are restrictions on the power to delegate certain functions of a U.S. Attorney. *See Weyhrauch*, 544 F.3d at 974-75 (certifications under 18 U.S.C. § 3731, ¶ 2); *cf. United States v. Mangan*, 575 F.2d 32, 39 (2d Cir. 1978) (applications under 26 U.S.C. § 6103(i)(1)(B), the current version of which includes U.S. Attorneys).

U.S. Attorney's authority, rather than the Attorney General's own authority. *See* ER-32. As the First Circuit recognized when discussing delegations to AUSAs, an AUSA's "ability to act does not hinge on the authority of the local United States Attorney, but derives from the Attorney General's plenary power over litigation to which the United States is a party, *see* [28 U.S.C.] § 516." *United States v. Hilario,* 218 F.3d 19, 22 (1st Cir. 2000). Congress vested the Attorney General with all of the authority granted to U.S. Attorneys, 28 U.S.C. §§ 509, 515, and, separately, also vested the Attorney General with independent authority to conduct and supervise litigation involving the United States, *id.* §§ 516-519. The district court did not even address the Attorney General's decision to delegate those separate, independent powers to Ms. Chattah.

Finally and relatedly, the district court erred in jumping to the conclusion (ER-38) that invalidity in Ms. Chattah's service as Acting U.S. Attorney under the FVRA means that she must be disqualified entirely from supervising defendants' prosecutions. That leap in logic overlooks the fact that if Ms. Chattah is not the Acting U.S. Attorney, she remains the First Assistant U.S. Attorney. *See Ramirez*, 2025 WL 3019248, at *18 (noting that generally an acting officer will continue to occupy her underlying office and perform its duties) (citing *Fortin v. Comm'r of Soc. Sec.*, 112 F.4th 411, 424 (6th Cir. 2024)). When a First Assistant U.S. Attorney who is serving as Acting U.S. Attorney's time

54

expires under 5 U.S.C. § 3346, she is not expelled from the office. She does not become uniquely unable—among all the other DOJ lawyers in the office—to supervise other lawyers, or to participate in the prosecution of criminal cases. She has the same authority from the Attorney General to prosecute cases as any other member of the Office. *See Hilario*, 218 F.3d at 22. The same would be true if her acting-officer time never began.

Even if Ms. Chattah may not serve as Acting U.S. Attorney under the FVRA—or in the event that her acting service times out under 5 U.S.C. § 3346—she does not cease to be First Assistant U.S. Attorney, and there is no basis to conclude that she cannot continue prosecuting defendants pursuant to her authority as First Assistant. "[T]he statutes and regulations" that "define the Attorney General's duties and powers" authorize First Assistant U.S. Attorneys "to perform duties that are not exclusive to the office of the United States Attorney." *Ramirez*, 2025 WL 3019248, at *19. Indeed, the district court here not only recognized that "the power to prosecute is not exclusive to the U.S. Attorney," but affirmatively held that AUSAs in the District of Nevada can continue prosecuting the defendants' cases pursuant to their authority deriving directly from the Attorney General. ER-34 (citing 28 U.S.C. § 542; *Hilario*, 218 F.3d at 22). But the district court offered no justification for why that same logic does not apply to Ms. Chattah in her capacity as First Assistant U.S. Attorney.

55

*Cf. Ramirez*, 2025 WL 3019248, at *18 ("[I]f Essayli supervises these prosecutions as the FAUSA, he would not be doing so in violation of the FVRA."). If there is a violation of § 3345(a)(1), then Ms. Chattah cannot serve as Acting U.S. Attorney. But the district court erred in concluding that such a violation somehow renders her uniquely barred from exercising the prosecutorial and supervisorial powers that other attorneys in the U.S. Attorney's Office exercise every day.

The district court's holding would end the common practice—blessed by all three branches of government, *see supra* Part II.A.2—of having principal deputies or other individuals perform the delegable powers of a vacant PAS office in a non-acting capacity. Such a "broad reading" of the FVRA's limitations "would effectively cripple the operation of the federal government." *Kajmowicz*, 42 F.4th at 151. That is because "[t]he universe of delegable PAS-officer duties is expansive, potentially encompassing every Executive agency." *Arthrex*, 35 F.4th at 1337; *accord Gonzales*, 107 F.4th at 1080 (recognizing "broad authority" of department heads to delegate). Adopting the district court's view would significantly upend the ordinary functions of the government and the ability of agencies to continue operating when PAS offices are vacant and acting service is not available.

## CONCLUSION

For the foregoing reasons, the district court's disqualification orders should be reversed.

Respectfully submitted,

PAMELA J. BONDI
   Attorney General

TODD BLANCHE
   Deputy Attorney General

STANLEY WOODWARD
   Associate Attorney General

HENRY C. WHITAKER
   Counselor to the Attorney General

SIGAL CHATTAH
   Acting U.S. Attorney
   First Assistant U.S. Attorney

ADAM FLAKE
   Assistant U.S. Attorney
   Chief, Appellate Division
   District of Nevada

MATTHEW R. GALEOTTI
   Acting Assistant Attorney General

*/s/ Tyler Anne Lee*

TYLER ANNE LEE
   Criminal Division
   U.S. Department of Justice
   950 Pennsylvania Avenue NW
   Washington, DC 20530
   (202) 514-5593
   tyler.lee@usdoj.gov

October 31, 2025

57

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**
25-6214 & 25-6470, 25-6223 & 25-6475,
25-6224 & 25-6465, 25-6229 & 25-6468

I am the attorney or self-represented party.

**This brief contains** 13,208 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Tyler Anne Lee       **Date** 10/31/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*