Case Nos. 25-6214 & 25-6470; 25-6223 & 25-6475; 25-6224 & 25-6465;
25-6229 & 25-6468

United States Court of Appeals
for the Ninth Circuit

| | |
|---|---|
| United States of America, | D.C. No. 2:25-cr-240-GMN |
|     Plaintiff/Appellant/Cross-Appellee, | District of Nevada |
| v. | **Opposition to Motion to Dismiss** |
| Devonte Devon Jackson, | |
|     Defendant/Appellee/Cross-Appellant. | |
| United States of America, | D.C. No. 2:25-cr-227-JAD |
|     Plaintiff/Appellant/Cross-Appellee, | District of Nevada |
| v. | |
| Giann Icob Salazar Del Real, | |
|     Defendant/Appellee/Cross-Appellant. | |

| | |
|---|---|
| United States of America,<br><br>    Plaintiff/Appellant/Cross-Appellee,<br><br>v.<br><br>Jorge Enriquez, Jr.,<br><br>    Defendant/Appellee/Cross-Appellant. | D.C. No. 2:25-cr-26-MMD<br>District of Nevada |
| United States of America,<br><br>    Plaintiff/Appellant/Cross-Appellee,<br><br>v.<br><br>Shamar Tyrell Garcia,<br><br>    Defendant/Appellee/Cross-Appellant. | D.C. No. 2:25-cr-230-RFB<br>District of Nevada |

Rene L. Valladares
Federal Public Defender
Jeremy C. Baron
Sean A. McClelland
Assistant Federal Public Defenders
411 E. Bonneville Ave. Suite 250
Las Vegas, NV 89101
(702) 388-6577
jeremy_baron@fd.org
sean_mcclelland@fd.org

Counsel for Defendants/Appellees/Cross-Appellants

# Introduction

These appeals and cross-appeals present closely related merits and remedial questions. The district court correctly concluded Sigal Chattah is ineligible to serve as the acting U.S. Attorney for the District of Nevada and disqualified Ms. Chattah from supervising the four prosecutions at issue here. But in the same order, the court declined the defense's request to dismiss the indictments, even though the government obtained them during Ms. Chattah's invalid tenure.

The government brought an interlocutory appeal of the district court's order because the order required Ms. Chattah's disqualification. The defense cross-appealed the very same order because it did not dismiss the indictments.

The government asserts the Court lacks appellate jurisdiction over the cross-appeals. Dkt. No. 11.1. The government is wrong. When one party appeals a collateral order, the court of appeals may have pendent appellate jurisdiction over related orders, even if those orders by themselves are not collateral orders. *See United States v. Decinces*, 808 F.3d 785, 792 (9th Cir. 2015). This Court has pendent appellate jurisdiction over the district court's entire order for two reasons.

1

First, the disqualification decision and the decision not to dismiss come from a single order resolving a single motion (one in each of the four underlying cases) that raised a single merits issue: Ms. Chattah's eligibility. This posture qualifies for pendent appellate jurisdiction.

Second, the merits and remedial questions are "inextricably intertwined." *Decinces*, 808 F.3d at 792. The government insists Ms. Chattah can serve as a de facto acting U.S. Attorney by exercising delegated authority. That theory is legally erroneous, and—as a direct consequence—the indictments are voidable. *See Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1077 (9th Cir. 2024). Under *Gonzales*, the merits and remedial questions are one and the same. In addition, dismissal is appropriate under *United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020), because the government is engaging in misconduct by allowing an ineligible individual to serve as acting U.S. Attorney. The *Bundy* analysis depends in part on the flagrancy of the misconduct, which is a merits issue. Moreover, a *Bundy* remedy serves to deter future government misconduct. The need for deterrence is at its zenith. The Court should resolve the remedial question now.

## Factual Background

Jason Frierson was the last Senate-confirmed U.S. Attorney for the District of Nevada. Dkt. No. 11.2 at 1. He resigned on January 17, 2025. *Id.* At that point, the first assistant U.S. Attorney, Sue Fahami, became the acting U.S. Attorney. *Id.* at 2; *see* 5 U.S.C. § 3345(a)(1).

The administration appointed Sigal Chattah as interim U.S. Attorney on or about March 28, 2025. Dkt. No. 11.2 at 2; *see* 28 U.S.C. § 546. Under Section 546, Ms. Chattah had a limited 120-day term. 28 U.S.C. § 546(c)(2). Once that 120-day term expired, the district court judges could appoint a successor interim U.S. Attorney who would serve until the Senate confirmed a permanent replacement. *Id.* § 546(d).

On July 28, 2025—one day before the administration believed the 120-day period would expire—the administration followed five complicated "procedural steps" to attempt to assign Ms. Chattah to the acting U.S. Attorney role. Dkt. No. 11.2 at 2. "These steps purported to foreclose the statutory power of the judges in the District of Nevada to appoint an interim U.S. Attorney at the end of Ms. Chattah's 120-day term." *Id.* at 3.

3

In four separate prosecutions, the defense filed a materially identical motion challenging Ms. Chattah's eligibility to fill the acting U.S. Attorney role.  The motion asked the district court to dismiss the indictments because the government obtained them while Ms. Chattah was improperly in charge of the U.S. Attorney's office; in the alternative, the motion asked the district court to disqualify Ms. Chattah from supervising the prosecutions.  Presumably because the motion implicated the district court's appointment power under Section 546(d), this Court's chief judge assigned an out-of-district judge (Senior Judge David Campbell) to the motions.  Dkt. No. 11.2 at 3.

The district court entered one single consolidated order on September 30, 2025, resolving the defense motion in all four cases.  Dkt. No. 11.2.  On the merits, the court agreed Ms. Chattah was ineligible to serve as the acting U.S. Attorney.  The government had asserted Ms. Chattah was eligible under 5 U.S.C. § 3345(a)(1).  Under that statute, when a Senate-confirmed individual leaves an executive branch office, the first assistant who is serving at the time of the vacancy automatically becomes the acting officer.  The government argued the statute could apply even when "a first assistant is designated months

4

after the vacancy occurs." Dkt. No. 11.2 at 7.  The district court disagreed with that claim:  the provision "operates only on first assistants in place when vacancies begin." *Id.* at 16.  Because Ms. Chattah was not the first assistant when Mr. Frierson resigned on January 17, she failed to satisfy Section 3345(a)(1).

The government further argued the Attorney General could delegate every power of the vacant U.S. Attorney position to Ms. Chattah and thereby make her a de facto acting U.S. Attorney.  The district court also rejected this claim, which "runs headlong into" 5 U.S.C. § 3347.  Dkt. No. 11.2 at 20.  Under that statute, the administration cannot rely on general delegation authority as an alternative to Section 3345, which it attempted to do here.

Because the government's two theories were erroneous, the district court "disqualif[ied] Ms. Chattah from participating in or supervising Defendants' prosecutions." Dkt. No. 11.2 at 31.  The district court declined, however, to dismiss the indictments. *Id.* at 32.

The government initiated an appeal of the district court's single order because it required disqualification.  The defense then initiated a

5

cross-appeal of that same order because it declined to dismiss the indictments.

The government separately sought a stay in the district court, which the court granted. The court explained it "stands by its previous ruling" on the merits. *Jackson*, ECF No. 57 at 2. "The government has not shown it is likely to prevail on its challenge to [the court's] conclusions." *Id.* "[T]he Court is fully persuaded that its decision is correct as a matter of law." *Id.* at 3. "The Court still holds that Ms. Chattah has not been validly appointed." *Id.* It nevertheless granted a stay out of a "spirit of solicitude" toward the executive branch. *Id.* at 4.

The government now seeks to dismiss the cross-appeals of the same order the government itself has appealed, claiming a lack of appellate jurisdiction. Dkt. No. 11.1.

## Argument

This case involves a single district court order. The order is a collateral order because it disqualifies the purported acting U.S. Attorney. *See United States v. Williams*, 68 F.4th 564, 569-70 (9th Cir. 2023). That same order additionally declined to dismiss the

6

indictments. The defense assumes that, standing on its own, the decision denying dismissal would not be a collateral order. *See United States v. MacDonald*, 435 U.S. 850, 863 (1978) (rejecting interlocutory review of a decision not to dismiss an indictment for a speedy trial violation). But this Court has pendent appellate jurisdiction over the district court's entire order. This Court therefore can and should review the decision not to dismiss alongside the rest of the appealed-from order, rather than review the order piecemeal in separate appeals.

## I. When a party appeals a collateral order, pendent appellate jurisdiction can extend to other orders.

If a party initiates an interlocutory appeal seeking review of a collateral order, the appellate court's jurisdiction may extend to other closely related orders, even if the other orders are not collateral orders. The doctrine applies in criminal and civil cases alike.

### A. Pendent appellate jurisdiction applies when orders are inextricably intertwined.

The doctrine of pendent appellate jurisdiction covers non-collateral orders that are inextricably intertwined with collateral orders. The Supreme Court addressed this doctrine in *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35 (1995). "[I]t may be proper for a

court of appeals, with jurisdiction over one ruling, to review, conjunctively, related rulings that are not themselves independently appealable." *Id.* at 50-51. The doctrine can apply when the related ruling is "inextricably intertwined with" the collateral order, or when "review of the [related] decision [is] necessary to ensure meaningful review of the" collateral order. *Id.* at 51; *see also Clinton v. Jones*, 520 U.S. 681, 707 n.41 (1997) ("The Court of Appeals correctly found that pendent appellate jurisdiction over this issue was proper.").

Pendent jurisdiction can apply when the issues "rely on legal theories that are so intertwined that [the appellate court] must decide the pendent issue in order to review the claims properly raised on interlocutory appeal." *United States v. Decinces*, 808 F.3d 785, 792 (9th Cir. 2015) (cleaned up); *see also Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 95 F.4th 181, 188 (4th Cir. 2024) ("[W]e may review an issue not otherwise subject to immediate appeal when the issue is so interconnected with an issue properly before us as to warrant concurrent review.") (cleaned up). The doctrine can also apply when "resolution of the issue properly raised on interlocutory appeal must necessarily resolve the pendent issue." *Decinces*, 808 F.3d at 792

8

(cleaned up).  A court may "decline to exercise pendent appellate jurisdiction" if the issues are insufficiently intertwined.  *United States v. Tillman*, 756 F.3d 1144, 1149 (9th Cir. 2014).  A "tangential relationship" is not enough.  *Melendres v. Arpaio*, 695 F.3d 990, 996 (9th Cir. 2012).

The doctrine applies in various contexts.  For example, when a civil defendant seeks interlocutory review of a collateral order denying qualified immunity, the appellate court may have pendent jurisdiction over a related non-collateral summary judgment order.  *See Marks v. Clarke*, 102 F.3d 1012, 1018 (9th Cir. 1996).  "In reviewing the district court's orders, it is often impossible to separate the court's reasoning or decisions regarding qualified immunity from those regarding liability." *Id.*  "The issues are generally analyzed together and are sometimes simply not susceptible of independent review."  *Id.*  "[T]he district court's rulings [on] summary judgment . . . are dependent on both the reasoning and results of its qualified immunity decisions."  *Id.*[1]

_____

[1] *See also, e.g., Elegant Massage*, 95 F.4th at 189 ("Because our resolution of [a merits question] is essential to our analysis of the class

9

In these settings—when the collateral order and the non-collateral order involve inseparable legal issues—pendent appellate jurisdiction is proper.

## B. The doctrine extends to criminal cases.

The government asserts pendent appellate jurisdiction exists only in civil cases, not criminal cases. Dkt. No. 11.1 at 12-13. The argument is misguided.

The government's position depends largely on *Abney v. United States*, 431 U.S. 651 (1977). Dkt. No. 11.1 at 12. There, the Court exercised interlocutory jurisdiction over the defendant's double jeopardy claim but refused to consider a challenge to the sufficiency of an

---

certification order . . . we exercise pendent appellate jurisdiction to review the district court's denial of [the civil defendant's] motion to dismiss."); *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 976 (9th Cir. 2015) ("[W]e may exercise pendent jurisdiction to consider issues that call into question the district court's authority to rule on a party's motion for a preliminary injunction.") (cleaned up); *Paige v. California*, 102 F.3d 1035, 1040 (9th Cir. 1996) ("Review of the [summary judgment] order is a necessary predicate to review of the injunction because the relief provided in the injunction was based on the fact that the merits . . . had been resolved."); *Matter of Rimsat, Ltd.*, 98 F.3d 956, 964 (7th Cir. 1996) (Posner, J.) (defining "inextricably intertwined" as covering pendent orders that "involve the same facts and issues as the main order").

indictment. It therefore rejected "pendent jurisdiction over otherwise nonappealable claims even though they are joined with a double jeopardy claim over which the appellate court does have interlocutory appellate jurisdiction." *MacDonald*, 435 U.S. at 857 n.6; *see also, e.g.*, *United States v. Yellow Freight System, Inc.*, 637 F.2d 1248, 1251 & n.2 (9th Cir. 1980).

The Supreme Court took a different approach in *Swint*. It considered but rejected an argument that *Abney*'s treatment of pendent appellate jurisdiction "should control in criminal cases only," concluding the analysis "bears on civil cases as well." 514 U.S. at 49-50. The Court then adopted a new approach to pendent appellate jurisdiction. *Id.* at 50-51; *see, e.g.*, *Clinton*, 520 U.S. at 707 n.41 (applying the *Swint* test); *Marks*, 102 F.3d at 1018 (same).

*Swint* thus forecloses the argument that a special rule should govern criminal cases; rather, the same test covers civil and criminal law. Indeed, this Court has twice applied *Swint* in criminal cases without imposing a blanket restriction. *Decinces*, 808 F.3d at 792 n.4 (reserving decision on "whether pendent jurisdiction applies in the criminal context"); *Tillman*, 756 F.3d at 1149. Other courts have

likewise applied the pendent appellate jurisdiction doctrine in criminal cases—sometimes at the government's request.[2]

In sum, when an appellate court entertains an interlocutory appeal of a collateral order, the court has pendent appellate jurisdiction over closely related non-collateral orders. The rule applies in criminal and civil cases alike. When the collateral and non-collateral orders present issues that should be "analyzed together" and are "not susceptible of independent review," the appellate court should exercise pendent jurisdiction. *Marks*, 102 F.3d at 1018; *see also* Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3937 (3d ed.) ("In rough terms, the working answer is that the appeal can properly be extended to include orders that are not independently appealable but that are somehow

---

[2] *See, e.g.*, *United States v. Bilodeau*, 24 F.4th 705, 716-17 (1st Cir. 2022) (rejecting a defense argument for pendent appellate jurisdiction without imposing a blanket bar); *United States v. Hoskins*, 902 F.3d 69, 76 (2d Cir. 2018) (exercising pendent appellate jurisdiction at the government's request); *United States v. Menendez*, 831 F.3d 155, 164 (3d Cir. 2016) (exercising pendent appellate jurisdiction at the defense's request); *United States v. Bundy*, 392 F.3d 641, 649 (4th Cir. 2004) (rejecting a government argument for pendent appellate jurisdiction without imposing a blanket bar); *United States v. Lopez-Lukis*, 102 F.3d 1164, 1167 n.10 (11th Cir. 1997) (exercising pendent appellate jurisdiction at the government's request).

bound up with the appealable order and that are otherwise 'ripe' for review.")

## II. This Court has pendent appellate jurisdiction over the cross-appeals.

The doctrine of pendent appellate jurisdiction applies to the defense's cross-appeals regarding dismissal of the indictment. That conclusion follows for two reasons.

### A. The order under review is a single order resolving a single motion with a single merits issue.

Pendent appellate jurisdiction is appropriate because these cross-appeals concern the very same order and the very same merits issue as the appeals. In some cases, an appellant will seek review of a collateral order resolving one motion, and a cross-appellant will seek review of a separate order resolving a separate motion that raises a separate merits issue. Courts should police pendent appellate jurisdiction in that context. By contrast, the instant appeals and cross-appeals involve a single order resolving a single motion that raised a single merits issue: Ms. Chattah's eligibility. Pendent appellate jurisdiction exists in this unique setting.

The doctrine often arises in cases involving multiple orders, motions, or merits issues.  For example, a civil defendant might seek interlocutory review of a collateral order denying qualified immunity and simultaneously seek review of a non-collateral summary judgment order.  *See Marks*, 102 F.3d at 1024.  A civil defendant might seek interlocutory review of an injunction and separately seek review of "the merits of" a non-collateral order invalidating settlement agreements.  *Dominguez v. Better Mortgage Co.*, 88 F.4th 782, 794 (9th Cir. 2023).  The government might seek interlocutory review in a criminal case of an order excluding inculpatory evidence, and the defendant might simultaneously seek review of a non-collateral order denying a motion to dismiss an indictment.  *See Decinces*, 808 F.3d at 789, 792.  A criminal defendant might seek interlocutory review of a collateral order denying a double jeopardy challenge and simultaneously seek review of a non-collateral order upholding the indictment's sufficiency.  *See Abney*, 431 U.S. at 663.[3]

---

[3] *See also United States v. Eberhart*, 388 F.3d 1043, 1051 (7th Cir. 2004) (the government appealed an order granting a new trial under

In these situations—where the court of appeals has interlocutory jurisdiction over one order, but a litigant seeks review of a non-collateral order resolving an entirely separate motion or an entirely separate merits issue—there is room for pause. A permissive pendent appellate jurisdiction rule allowing for this type of review could encourage litigants to file "frivolous" motions that produce collateral orders, and then abusively use those collateral orders to bring "more serious, but otherwise nonappealable questions to the attention of the courts of appeals." *Abney*, 431 U.S. at 663. Courts should not allow "parties to parlay . . . collateral orders into multi-issue interlocutory appeal tickets." *Swint*, 514 U.S. at 49-50.

---

Criminal Rule 33; the court declined pendent appellate jurisdiction over the denial of a motion for acquittal under Rule 29), *rev'd on other grounds*, 546 U.S. 12 (2005); *United States v. Ferguson*, 246 F.3d 129, 138 (2d Cir. 2001) (same); *United States v. Hsia*, 176 F.3d 517, 527 (D.C. Cir. 1999) (the government appealed an order dismissing certain counts from an indictment; the court declined pendent appellate jurisdiction over the refusal to dismiss other counts, based in part on concerns "[a]n even partly open door could enable defendants to achieve untoward delay by coupling extra claims with a weak interlocutory appeal, and would thus give them an incentive to raise weak claims before the trial court on issues allowing interlocutory appeals").

15

There are no equivalent concerns here regarding gamesmanship. The defense is not trying to transform an interlocutory appeal regarding a double jeopardy motion into a wide-ranging appeal involving wholly separate dismissal theories. Nor is the defense trying to shoehorn a suppression argument into a government interlocutory appeal about the exclusion of other incriminating evidence. Rather, the government is raising the question of Ms. Chattah's eligibility, and the defense is merely raising the corresponding remedial issue. Merits and remedial questions are intimately bound; the latter typically flows directly from the former. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971) ("[T]he nature of the violation determines the scope of the remedy."); *Independent Wireless Tel. Co. v. Radio Corp. of America*, 269 U.S. 459, 472 (1926) ("Equity will not suffer a wrong without a remedy."). The concerns that sometimes attend exercising pendent appellate jurisdiction—a doctrine meant to guard against improper, wide-ranging multi-issue interlocutory appeals—are thus not present in this unusual scenario.

Unsurprisingly, then, courts may exercise pendent appellate jurisdiction where one litigant raises a merits issue in an interlocutory

appeal, and the other party seeks to raise related non-collateral issues from the very same order. *See Rocky Mtn. Wild v. Dallas*, 98 F.4th 1263, 1283 n.4 (10th Cir. 2024) ("[One party] asserts that this court has [pendent] appellate jurisdiction over its appeal because both appeals arise from the same district court order and address the same underlying access decision, and because their rights will be adjudicated by this court in conjunction with [another party's] appeal . . . . This is correct.") (cleaned up); *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 594-95 (3d Cir. 2004) (explaining the district court "issued an order denying [a] motion to compel arbitration on both [federal] and . . . state law grounds"; exercising pendent appellate jurisdiction over the state law arguments as "necessary to ensure meaningful review of the District Court's order in its entirety").

Were there any doubt, this case is sui generis and poses questions of exceptional public importance. The Court should exercise pendent appellate jurisdiction in this atypical case. *Cf. Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459 (9th Cir. 2023) ("[T]his case presents extraordinary circumstances justifying our exercise of pendent appellate jurisdiction.") (cleaned up).

17

## B. The merits and remedial issues are inextricably intertwined.

Setting aside the unique single-order posture, the cross-appeals satisfy the governing standards.

An appellate court retains interlocutory jurisdiction over a non-collateral order if that order is "inextricably intertwined" with a collateral order. *Decines*, 808 F.3d at 792. "[T]he issues must rely on legal theories that are so intertwined that [the appellate court] must decide the pendent issue in order to review the claims properly raised on interlocutory appeal, or resolution of the issue properly raised on interlocutory appeal must necessarily resolve the pendent issue." *Id.* (cleaned up).

Orders are inextricably intertwined if it is "impossible to separate the court's reasoning or decisions regarding" the collateral order and the non-collateral order. *Marks*, 102 F.3d at 1018. The test is further satisfied if "[t]he issues are generally analyzed together and are . . . simply not susceptible of independent review." *Id.* Finally, orders are inextricably intertwined if "the district court's rulings [on the non-

18

collateral order] . . . are dependent on both the reasoning and results of its [collateral order]." *Id.*

The merits issue from the appeals and the remedial issue from the cross-appeals are inextricably intertwined under this analysis for at least two reasons.[4]

### 1. The general delegation argument presents intertwined merits and remedial issues.

On the merits, the government relies on its general delegation authority. That merits argument and the corresponding remedial issues are intimately bound.

The government maintains Ms. Chattah can serve as a de facto acting U.S. Attorney because the Attorney General retains—and may delegate to anyone within Main Justice—all the responsibilities of a

---

[4] As the government observes, the Third Circuit is considering a similar case, and it is not reviewing the district court's decision denying dismissal. *United States v. Giraud*, No. 25-2635, Dkt. No. 23 (3d Cir. Sept. 9, 2025). But as the defense has already explained, Dkt. No. 9.1 at 5 n.1, the defense in the Third Circuit litigation refrained from filing notices of cross-appeal and agreed the appellate proceedings should not cover the remedial issue. Here, by contrast, the defense has filed notices of cross-appeal and maintains the Court should reach the remedial issue. The Third Circuit's order—which simply agreed with the position of all parties—does not amount to persuasive authority.

vacant U.S. Attorney office.  Dkt. No. 12.1 at 31-56.  In other words, the government believes the President need never nominate anyone to fill any of the 93 U.S. Attorney positions across the country.  Rather, the government argues the administration may simply hire anyone it wants into new positions in Main Justice and then delegate the powers of vacant U.S. Attorney's offices to those new employees.  That argument would allow the de facto acting U.S. Attorneys to serve in perpetuity, without the administration ever needing to seek Senate confirmation for those individuals.

As the defense will explain in greater detail in its principal and response brief, this argument fails on the merits—and, as a direct consequence, Ms. Chattah's actions as a purported acting U.S. Attorney (such as allowing the Assistant U.S. Attorneys to initiate the prosecutions at issue here) are voidable.  To summarize, when there is a vacant office that requires Senate confirmation—like the position of U.S. Attorney—the Federal Vacancies Reform Act provides a mechanism for filling the vacancy on a temporary basis.  5 U.S.C. § 3345.  But the Act prohibits an executive agency from filling the vacant office through the expediency of having the agency head delegate

the vacant office's responsibilities to another individual. *Id.* § 3347. As this Court has explained, "general vesting-and-delegation statutes"—statutes that generally allow agency heads to delegate their authority—"are not sufficient to authorize the department to choose the acting officer under the FVRA." *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1078 (9th Cir. 2024).

If the administration nevertheless pursues this route and attempts to assign a de facto acting officer by using the agency head's general delegation authority, that individual will be improperly occupying the vacant office. If the improper de facto acting officer performs a so-called delegable function (a function that someone else in the agency could theoretically perform), those actions are "voidable" (albeit not "void"; once an eligible individual fills the vacant position, the eligible individual may "ratif[y]" the improper de facto acting officer's previous decisions). *Gonzales*, 107 F.4th at 1077 (cleaned up). "Thus, agencies hypothetically could rely on their vesting-and-delegation authority [to designate a de facto acting officer], even if knowingly violating the FVRA, but that would neither make [the de

facto acting officer's] actions immediately lawful nor ensure their ratification." *Id.*

Again, the defense's principal and response brief will explain this legal landscape in greater detail. For present purposes, the point is that these conclusions flow together: an agency cannot use delegation authority to name a de facto acting officer; an agency may attempt to do so anyway; if it does, the improper de facto acting officer's actions will be immediately unlawful and voidable. *Gonzales*, 107 F.4th at 1077-78. Accordingly, the defense maintains Ms. Chattah's actions, such as permitting the U.S. Attorney's office to pursue the instant prosecutions, are immediately unlawful and voidable. It is "impossible to separate the . . . reasoning" underlying these issues; the statutory framework must be "analyzed together and [is] . . . simply not susceptible of independent review." *Marks*, 102 F.3d at 1018. Because the merits argument and the remedial argument under the FVRA and *Gonzales*

are unitary, they are inextricably intertwined for purposes of pendent appellate jurisdiction.[5]

### 2. The *Bundy* argument presents intertwined merits and remedial issues.

The defense will further present a remedial argument under *United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020). This remedial argument and the corresponding merits issues are inseparable.

When the government engages in misconduct in a criminal case, the federal courts retain authority to issue a suitable sanction. A remedy may be appropriate if the court "finds a serious due-process violation" or if the court concludes a sanction is necessary "under [the court's] inherent supervisory powers." *Bundy*, 968 F.3d at 1030. If "the government's actions [are] sufficiently egregious," the court may select the strongest remedy: "dismissal with prejudice." *Id.*

---

[5] The test is also satisfied because the request for dismissal "call[s] into question the district court's authority to" issue the disqualification order. *Armstrong*, 789 F.3d at 976 (cleaned up). If the district court had properly dismissed the indictments, it would have had no occasion to determine whether Ms. Chattah should be disqualified from the (dismissed) prosecutions moving forward.

Dismissal is necessary when the government violates due process in a manner "so grossly shocking and outrageous as to violate the universal sense of justice." *Bundy*, 968 F.3d at 1030 (cleaned up). Dismissal may also be necessary under the court's "inherent supervisory powers." *Id.* An exercise of inherent authority can be proper "to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury" and "to deter future illegal conduct." *Id.* (cleaned up). An exercise of supervisory power prevents the federal courts from "making themselves accomplices in willful disobedience of law." *Id.* (cleaned up). The conduct need not rise to the level of a due process violation for a supervisory sanction to be appropriate. *See id.*

When evaluating a suitable remedy, a court may consider "various options," including dismissal with or without prejudice. *Bundy*, 968 F.3d at 1031. "Under its supervisory powers, a district court may dismiss an indictment with prejudice for prosecutorial misconduct only if there is (1) flagrant misbehavior and (2) substantial prejudice." *Id.* (cleaned up).

As the defense will explain in greater detail in its principal and response brief, dismissal with prejudice is appropriate under *Bundy*. The administration is engaging in misconduct within the meaning of *Bundy* by attempting to assign the role of acting U.S. Attorney to an individual who is plainly ineligible to serve. The misconduct is not isolated to this district; rather, the administration is engaging in a pattern of similar misbehavior extending across multiple districts, including (perhaps most recently) the Eastern District of Virginia. The administration's position creates multiple risks to "judicial integrity," *Bundy*, 968 F.3d at 1030, including the legitimacy of the four prosecutions at issue in this appeal. Dismissal with prejudice is appropriate.

For present purposes, the point is that the *Bundy* analysis is inseparable from the merits. A court must evaluate not just whether the government engaged in misconduct, but whether the misconduct is "sufficiently egregious to merit" a particular remedy. 968 F.3d at 1030. The court may need to determine whether the government's "misbehavior" is "flagrant." *Id.* at 1031. A court acting under *Bundy* is considering how best to "protect[] the integrity of the federal courts" and

avoid the courts becoming "accomplices in willful disobedience of law." *Id.* at 1030 (cleaned up). Those remedial questions directly depend on the merits, i.e., whether the government has engaged in misconduct, and, if so, how serious.

When answering these questions, it is "impossible to separate" the merits from the choice of remedy. *Marks*, 102 F.3d at 1018. Under *Bundy*, the severity of the misconduct and the corresponding sanction must be "analyzed together and are . . . simply not susceptible of independent review." *Id.* Because the merits and remedial arguments under *Bundy* are unitary, pendent appellate jurisdiction exists.

In sum, the *Bundy* analysis satisfies the inextricably intertwined test. But even if there is doubt on that front, the Court should still exercise pendent appellate jurisdiction under the unique facts of this case. One basis for a *Bundy* remedy is "to deter future illegal conduct" and avoid courts becoming "accomplices in willful disobedience of law." 968 F.3d at 1030 (cleaned up). The need for deterrence is currently at its peak. If the Court affirms the district court's merits decision regarding Ms. Chattah's ineligibility but declines to resolve the remedial question, there will be no substantial deterrent effect for the

foreseeable future. A further *Bundy* analysis would have to wait for a direct appeal, and there is no telling how long the underlying criminal cases will take to resolve (or whether there will be direct appeals after resolution). If the federal courts are going "to deter future illegal conduct," *id.*, the time is now. For that reason alone, the Court should retain jurisdiction over the cross-appeals.

## Certifications

This response does not exceed 5,600 words. *See* Circuit Rules 27-1(1)(d), 32-3(2).

All the defendants but Mr. Enriquez are incarcerated in pre-trial custody. Mr. Enriquez is at liberty and being supervised by pre-trial services. *See* Circuit Rule 27-8.1.

## Conclusion

This Court should deny the motion to dismiss the cross-appeals.

Dated November 6, 2025.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Jeremy C. Baron*
Jeremy C. Baron
Assistant Federal Public Defender

*/s/ Sean A. McClelland*
Sean A. McClelland
Assistant Federal Public Defender