Nos. 25-6214 & 25-6470, 25-6223 & 25-6475,
25-6224 & 25-6465, 25-6229 & 25-6468

In The

# United States Court of Appeals for the Ninth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellant-Cross-Appellee,*

v.

DEVONTE DEVON JACKSON, GIANN ICOB SALAZAR DEL REAL, JORG ENRIQUEZ, JR., SHAMAR TYRELL GARCIA

*Defendants-Appellees-Cross-Appellants*

On Appeal from the United States District Court for the District of Nevada, Nos. 2:25-cr-240, 2:25-cr-227, 3:25-cr-26, 2:25-cr-230 (Campbell, J. (D. Ariz.))

**BRIEF FOR AMICI CURIAE NEVADA ATTORNEYS FOR CRIMINAL JUSTICE AND NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS IN SUPPORT OF APPELLEES AND AFFIRMANCE**

JAMES I. PEARCE†
SAMANTHA P. BATEMAN
MARY L. DOHRMANN††
NATHANIEL A.G. ZELINSKY
WASHINGTON LITIGATION GROUP
1717 K St NW, Suite 1120
Washington, D.C. 20006
202-521-8750
jpearce@washingtonlitigationgroup.org

November 25, 2025          *Counsel for Amicus Curiae*

† *Admitted only in New York and North Carolina; practicing under the supervision of D.C. Bar Members*

†† *Admitted only in New York; practicing under the supervision of D.C. Bar Members*

## CORPORATE DISCLOSURE STATEMENT

*Amici curiae*, Nevada Attorneys for Criminal Justice and the National Association of Criminal Defense Lawyers, are not corporate entities and are not owned in whole or in part by any corporate entity.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................... **Error! Bookmark not defined.**ii

INTEREST OF THE *AMICUS CURIAE* ...................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .....................................2

STATEMENT OF THE CASE ........................................................................4

    I.    Legal background ....................................................................4

    II.    Factual Background............................................................5

ARGUMENT ..................................................................................................7

    I.    United States Attorneys Exercise Extraordinary Authority and Discretion ...............................................8

    II.    The Attorney General's July 28 Order Was Unlawful.................10

        A.    The Attorney General's Purported Designation of Ms. Chattah As a "Special Attorney" And Invocation of the Federal Vacancies Reform Act Do Not Make Ms. Chattah The Acting U.S. Attorney ..................................................................11

        B.    The Attorney General Cannot Delegate Ms. Chattah The Authority to Lead the U.S. Attorney's Office ...................................................20

        C.    Accepting the Government's Theory Thwarts Senate Review and Raises Constitutional Concerns ................................................................25

CONCLUSION ..............................................................................................29

# TABLE OF AUTHORITIES

## Cases:

*Cf. Seila L. LLC v. Consumer Fin. Prot. Bureau,*
591 U.S. 197 (2020)................................................................................17

*Ewing v. Mytinger & Casselberry,*
339 U.S. 594 (1950) ...............................................................................10

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
561 U.S. 477 (2010) ...............................................................................17

*Freytag v. Comm'r,*
501 U.S. 868 (1991) ..................................................................... 3, 7, 31

*In re Grand Jury Proc.,*
671 F.Supp. 5 (D. Mass. 1987) ..............................................................32

*Knight v. Comm'r,*
552 U.S. 181 (2008) ...............................................................................14

*L.M.-M. v. Cuccinelli,*
442 F. Supp. 3d 1 (D.D.C. 2020)............................................................21

*Loper Bright Enters., Inc. v. Raimondo,*
603 U.S. 369 (2024) ...............................................................................23

*Morrison v. Olson,*
487 U.S. 654, (1988) ................................................................................9

*N.L.R.B. v. New Vista Nursing and Rehab.,*
719 F.3d 203 (3d Cir. 2013) ...................................................................31

*N.L.R.B. v. Noel Canning,*
573 U.S. 513 (2014) ...............................................................................24

*NLRB v. SW Gen., Inc.,*
580 U.S. 288 (2017).......................................................................... passim

*United States v. Armstrong,*
517 U.S. 456 (1996) .................................................................................9

*United States v. Arthrex, Inc.,*
594 U.S. 1 (2021) ...................................................................................32

*United States v. Batchelder,*
442 U.S. 114 (1979).................................................................................9

# TABLE OF AUTHORITIES—Continued

Page

*United States v. Garcia*, No. 2:25-cr-00230,
2025 WL 2784640 (D. Nev. 2025) ........................................................21

*United States v. Giraud*,
No. 1:24-cr-768, 2025 WL 2416737 (D. N.J. Aug. 21, 2025) ................. passim

*United States v. Ramirez*,
No. 5:25-cr-264, 2025 WL 3019248 (C.D. Cal. Oct. 28, 2025).....................15

*United States v. Samango*,
607 F.2d 877 (9th Cir. 1979)................................................................10

*United States v. Serubo*,
604 F.2d 807 (3d Cir. 1979)..................................................................10

*United States v. Trump*,
740 F.Supp.3d 1245 (S.D. Fla. 2024) ...................................................13

## Statutes & Other Authorities:

28 U.S.C. § 515 ........................................................................ 2, 7, 13

28 U.S.C. § 515(b).......................................................................... 13, 14

28 U.S.C. § 541(a) ...............................................................................4

28 U.S.C. § 543 ..................................................................................14

28 U.S.C. § 546 .................................................................... 5, 6, 25, 29

28 U.S.C. § 546(d) ...........................................................................2, 5

28 U.S.C. § 547..................................................................................9

44 Cong. Rec. 4544 (1909)................................................................16

5 U.S.C. § 3345................................................................................ 6, 17

5 U.S.C. § 3345(a)(1) ...................................................................... 6, 17

5 U.S.C. § 3347(a).......................................................................... 12, 25

5 U.S.C. § 3347(b).............................................................................25

An Act to Establish the Department of Justice, ch. 150, sec. 17, 16 Stat. 162
(1870) ...........................................................................................16

iv

# TABLE OF AUTHORITIES—Continued

Page

*Designation of Acting Associate Attorney General*, 25 Op. O.L.C. 177 (2001) ........................................................................................................22

*Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60 (1999) ...............................................................................22

H.R. Rep. No. 59-2901 (1906) .........................................................................16

*In re Persico*, 522 F.2d 41 (2d Cir. 1975) ........................................................16

Judiciary Act, ch. 20, § 35, 1 Stat. 73 (1789)..................................................15

Letter from Victor S. Rezendes, Managing Director, Strategic Issues, GAO to U.S. Senators Joseph I. Lieberman and Dan Burton (Dec. 7, 2001).....22

Memorandum of Samuel A. Alito, Jr., Deputy Assistant Attorney General, Office of Legal Counsel, to William P. Tyson, Director, Executive Director, Executive Office of United States Attorneys 3 (Nov. 13, 1986) .32

Motion to Dismiss, *United States v. Garcia*, No. 25-CR-655, ECF No. 21 (C.D. Cal.) (filed Aug. 29. 2025)...................................................................24

S. Rep. No. 105-250 (1998) .......................................................................... 18, 19

Robert H. Jackson, *The Federal Prosecutor* ....................................................11

U.S. Const. art. II, § 2, cl. 2 ...................................................................... 2, 4, 27

*United States v. Comey*, No. 25-CR-272, ECF No. 137-1 (E.D. Va.) (filed Nov. 3, 2025).........................................................................................24

## INTEREST OF THE *AMICUS CURIAE*[1]

*Amicus curiae*, the Nevada Attorneys for Criminal Justice (NACJ), is the primary organized voice of the Nevada criminal defense bar. NACJ is a community of defense practitioners who represent scores of defendants in the District of Nevada directly affected by a ruling in this case.

*Amicus curiae*, the National Association of Criminal Defense Lawyers (NACDL), is a nonprofit voluntary professional bar association that works on behalf of criminal defense attorneys to ensure justice and due process for those accused of crime or misconduct. NACDL frequently appears as amicus curiae to address issues of broad significance to criminal defendants and the defense function, including constitutional protections, statutory interpretation affecting criminal liability or procedure, and systemic concerns involving prosecutorial power.

---

[1] No counsel for any party has authored this brief in whole or in part, and no entity or person, aside from *amicus curiae* and its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. All parties consent to the filing of this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Sigal Chattah is ineligible to act as the United States Attorney for the District of Nevada. The Attorney General appointed Ms. Chattah in March 2025 to be the interim United States Attorney under 28 U.S.C. § 546, which allowed Ms. Chattah to serve for 120 days or until the confirmation of a Senate-confirmed U.S. Attorney. After 120 days, the district court in Nevada—not the Attorney General—was empowered to appoint a replacement. 28 U.S.C. § 546(d).

But the Attorney General was determined to prevent the district court from acting and to keep Ms. Chattah as U.S. Attorney. The Attorney General purported to: (i) make Ms. Chattah a "Special Attorney" under 28 U.S.C. § 515; (ii) designate Ms. Chattah as the First Assistant (while redesignating the then-First Assistant as the "Executive U.S. Attorney"); and then (iii) assert that Ms. Chattah was the acting U.S. Attorney under the Federal Vacancies Reform Act ("FVRA"). To our knowledge, no prior Attorney General has ever attempted this.

This Court should reject the Attorney General's convoluted attempt to circumvent the law. The Appointments Clause, U.S. Const. art. II, § 2, cl. 2, provides Congress sole authority to define the offices that the President may fill and the method of their appointment. Congress exercised that authority

2

and enacted detailed provisions delineating who may serve as a U.S. Attorney in a permanent or acting capacity. It is inconceivable that Congress intended to empower the executive to sidestep these comprehensive statutes—and install whomever the President wants—in such a roundabout manner. The same is true even if the government describes Ms. Chattah not as the acting U.S. Attorney, but instead as performing functions of the office under authority delegated by the Attorney General.

The legal issue presented by Ms. Chattah's unlawful appointment is no technical matter, and the practical stakes extend far beyond this case. The government's machinations here undermine the rights of thousands of criminal defendants and 3.3 million residents subject to the jurisdiction of the top federal prosecutor for Nevada. *See Freytag v. Comm'r*, 501 U.S. 868, 880 (1991) ("The structural interests protected by the Appointments Clause are not those of any one branch of Government but of the entire Republic."). Acutely conscious that the "manipulation of official appointments" was a "powerful weapon" in the Crown's hands, *id.* at 883 (citation omitted), the Framers provided Congress, not the executive branch, the role of defining offices and appointment methods.

This Court should enforce the statutes Congress passed with respect to the awesome position of U.S. Attorney—an office that wields great

responsibilities for securing justice and protecting civil liberties—by concluding that Ms. Chattah is barred from serving as the acting U.S. Attorney in this or any other case in the District of Nevada. It should also reject the government's alternative theory that Ms. Chattah can exercise power delegated directly from the Attorney General.

**STATEMENT OF THE CASE**

## I.    LEGAL BACKGROUND

The Appointments Clause provides that federal officers shall be appointed by the President with the advice and consent of the Senate. U.S. Const. art. II, § 2, cl. 2. But "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.* By law, the President must nominate, and the Senate must confirm, all U.S. Attorneys. 28 U.S.C. § 541(a).

To address circumstances in which a U.S. Attorney position is vacant, Congress enacted 28 U.S.C. § 546. Under Section 546, the Attorney General may appoint an interim U.S. Attorney when a vacancy arises, *id.* § 546(a), so long as the Attorney General's appointee is not a person that the President nominated to the same office and to whom "the Senate refused to give advice and consent." *Id.* § 546(b). An interim U.S. Attorney appointed under

4

Section 546(a) serves until either the "qualification" of a presidentially appointed and Senate-confirmed nominee or for 120 days. *Id.* § 546(c). If the 120 days expires, the district court in the relevant judicial district "may appoint" a U.S. Attorney "to serve until the vacancy is filled." *Id.* § 546(d).

Congress has also long supplied the President with "limited authority to appoint acting officials to temporarily perform the functions . . . without first obtaining Senate approval" in an office that otherwise requires presidential appointment and Senate confirmation.[2] *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 294 (2017). The current law, enacted in 1998, is the Federal Vacancies Reform Act, 5 U.S.C. §§ 3345 et *seq.* ("FVRA"), which identifies three types of government officials who may perform acting service in a PAS office. *Id* § 3345(a)(1)-(3). The FVRA provides, as a default, that the "first assistant" serves as the acting officer, but allows the President (but only the President) to select instead another Senate-confirmed officer or a sufficiently senior officer or employee in the agency. *Id.* § 3345(a)(1)-(3).

## II.   FACTUAL BACKGROUND[3]

When the most recent Senate-confirmed U.S. Attorney for the District of Nevada resigned on January 17, 2025, he was replaced by the then-First

---

[2] Such offices are referred to as "PAS" offices.

[3] The facts are drawn from the district court's recitation. *See* ER.8-10.

Assistant, Sue Fahami, as prescribed under the FVRA. *See* 5 U.S.C. § 3345(a)(1). On March 28, 2025, the Attorney General appointed Sigal Chattah under 28 U.S.C. § 546(a).

One day before Ms. Chattah's 120-day interim term was set to expire, on July 28, the Attorney General and Ms. Chattah took several coordinated actions. First, Ms. Chattah resigned as interim U.S. Attorney, while simultaneously giving a public statement that she "look[ed] forward to continuing to lead the U.S. Attorney's Office." ER.9. Second, in a single order, the Attorney General (i) appointed Ms. Chattah as a "Special Attorney to the Attorney General" under 28 U.S.C. § 515; (ii) designated Ms. Chattah as the "First Assistant United States Attorney" for Nevada; and (iii) stated that Ms. Chattah "will have authority to serve" as Acting U.S. Attorney "upon a vacancy in that office" under the FVRA. ER.187. Finally, the Attorney General also redesignated Ms. Fahami, who had been serving as the First Assistant U.S. Attorney, as "Executive U.S. Attorney." ER.9.

Since March, Ms. Chattah has been exercising the authority of a U.S. Attorney for the District of Nevada, including issuing press releases and signing indictments as either the "Acting U.S. Attorney" or the "Acting U.S. Attorney and Special Assistant to the United States Attorney General." *See e.g.*, ER.35 n.10.

6

## ARGUMENT

"[T]he power of appointment to offices was deemed the most insidious and powerful weapon of eighteenth century despotism." *Freytag*, 501 U.S. at 883 (citation omitted). The Framers "lived under a form of government that permitted arbitrary governmental acts to go unchecked" and "recognized the serious risk for abuse and corruption posed by permitting one person to fill every office in the Government." *SW Gen., Inc.*, 580 U.S. at 317 (Thomas, J., concurring) (first quoting *INS v. Chadha*, 462 U.S. 919, 959 (1983); and then citing The Federalist No. 76, at 513 (J. Cooke ed. 1961)). The Framers thus crafted the Appointments Clause to empower Congress to define the duties of officers; provide the Senate the critical role in confirming the appointment of all principal officers; and allow Congress to vest the appointment of inferior officers in the President, the heads of department, or the Courts.

Congress has required Senate approval for U.S. Attorney appointments and restricted who may serve as a U.S. Attorney temporarily in the case of a vacancy. Under the laws that Congress has enacted, Ms. Chattah is disqualified from serving as U.S. Attorney on an acting or interim basis. She is also ineligible to perform as though she were the U.S. Attorney by acting under authority delegated from the Attorney General.

## I.  UNITED STATES ATTORNEYS EXERCISE EXTRAORDINARY AUTHORITY AND DISCRETION

It is critical that the Court fully enforce the Appointments Clause in this case: United States Attorneys are precisely the kind of extraordinarily mighty officers that prompted the Framers to adopt the Appointments Clause in the first place.

United States Attorneys exercise the "vast power" and "immense discretion" of a prosecutor at the highest level. *Morrison v. Olson*, 487 U.S. 654, 727 (1988) (Scalia, J., dissenting). They decide how "to enforce the Nation's criminal laws," and courts afford "the presumption of regularity" to their "prosecutorial decisions." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation marks omitted); *see also* 28 U.S.C. § 547 (setting forth the duties of U.S. Attorneys).

To be sure, the defense bar and the courts play a critical role in protecting against prosecutorial abuse once a case has been filed. But "[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion" alone. *United States v. Batchelder*, 442 U.S. 114, 124 (1979). Indeed, "grand jury proceedings are secret, Ex parte[,] and largely under the control of the federal prosecutor." *United States v. Serubo*, 604 F.2d 807, 816 (3d Cir. 1979) (footnote omitted). In that setting, "the prosecutor operates without the

check of a judge or a trained legal adversary, and [is] virtually immune from public scrutiny." *Id.* at 817. As this Court has explained, the grand jury can perform its functions—the "independent determination of probable cause that a crime has been committed and protection of citizens against unfounded prosecutions"—only if it is free from "manipulation . . . by over-zealous prosecutors." *United States v. Samango*, 607 F.2d 877, 882 (9th Cir. 1979). For offenses that are not subject to the Fifth Amendment's Grand Jury Clause, a prosecutor may charge a person by information alone, publicly alleging criminal conduct without any grand jury involvement. *See Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 599 (1950) (noting the "impact" of an "indictment" or "information" "on the reputation or liberty of a man" and the "incalculable" "harm" caused "by the mere institution of [a] proceeding[]").

In an address to U.S. Attorneys, then-Attorney General Robert H. Jackson observed that prosecutors have "more control over life, liberty, and reputation than any other person in America." R. Jackson, *The Federal Prosecutor*, Address Delivered at the Second Annual Conference of United States Attorneys (April 1, 1940). He also cautioned against "the most dangerous power of the prosecutor: that he will pick people that he thinks he should get, rather than pick cases that need to be prosecuted." *Id* For that

9

reason, Congress has required Senate advice and consent to fill U.S. Attorney positions. *Id.* (noting "[b]ecause of this immense power to strike at citizens . . . with all the force of government itself," the U.S. Attorney position "from the very beginning has been safeguarded by presidential appointment, requiring confirmation of the Senate").

## II.    THE ATTORNEY GENERAL'S JULY 28 ORDER WAS UNLAWFUL

The Attorney General's action in this case is precisely the type of executive-branch aggrandizement the Appointments Clause was designed to prevent. As the district court correctly concluded, Congress did not cede authority to the executive branch to appoint whomever it wants—for whatever duration—to the awesome position of U.S. Attorney.

First, the Attorney General cannot use the combination of the FVRA and Section 515 to install anyone to be an acting U.S. attorney. The Attorney General purported to: (i) appoint Ms. Chattah as a "Special Attorney" under Section 515; (ii) designate her the First Assistant U.S. Attorney; and (iii) authorize her as the acting U.S. Attorney "upon a vacancy in that office" under the FVRA. *See* ER.9; ER.187. But text, structure, and history indicate Section 515 is a narrow provision that allows the appointment of special attorneys for special cases—not an expansive method to appoint acting U.S.

10

Attorneys. And the government's position makes a hash of the FVRA's carefully structured limits on who may serve in an acting capacity.

Second, the Attorney General cannot circumvent the FVRA by delegating authority to Ms. Chattah. The text of the FVRA is clear that it is, with exceptions not relevant to this case, the "exclusive means" for appointing acting officers. 5 U.S.C. § 3347(a). The government's contrary interpretation flouts that plain text, undermines the FVRA's purpose, and risks rendering the FVRA surplusage.

Taken together, the government's misreading of Section 515 and the FVRA and its faulty delegation theory erode the Appointments Clause's structural safeguards by consolidating appointment and supervision authority within a single branch.

### A. The Attorney General's Purported Designation of Ms. Chattah As a "Special Attorney" And Invocation of the Federal Vacancies Reform Act Do Not Make Ms. Chattah The Acting U.S. Attorney

The government advances a novel legal theory that combines the Attorney General's power to appoint and designate a "Special Attorney" under 28 U.S.C. § 515 with its reading of the FVRA that would make Ms. Chattah, because of her own resignation as the interim U.S. Attorney, the acting U.S. Attorney. The Court should reject that cynical effort to sidestep the appointment process.

1.  The Attorney General's use of Section 515 effectively to appoint Ms. Chattah as the acting U.S. Attorney for the District of Nevada is inconsistent with that provision's text, purpose, and history, as well as the larger statutory scheme governing U.S. Attorney appointments.[4]

Start with text.  Section 515 authorizes the Attorney General to appoint "special attorney[s]" or "special assistant[s]," 28 U.S.C. § 515(b), and to empower them to "conduct any kind of legal proceeding, civil or criminal . . . *which United States attorneys are authorized by law to conduct." Id.* § 515(a) (emphasis added).  By granting the Attorney General the authority to appoint a "special attorney" or a "special assistant" with powers analogous to a duly authorized U.S. Attorney, Congress necessarily distinguished those "special" positions from the office of the U.S. Attorney itself.  Congress "easily could have" provided in Section 515 that an Attorney-General-appointed "special attorney" could serve "as" a U.S. Attorney, and it "presumably would have" if it intended the result the government seeks here.  *Knight v. Comm'r*, 552 U.S. 181, 188 (2008).

Context leads to a similar conclusion.  Congress has legislated a default rule of presidential nomination and Senate confirmation (in Section 541), a

---

[4] The order also cites 28 U.S.C. §§ 509 and 510, but neither Section 509 nor Section 510 supplies "an officer-appointing power."  *See United States v. Trump*, 740 F.Supp.3d 1245, 1266 (S.D. Fla. 2024).

U.S. Attorney-specific vacancy provision (in Section 546), and a broader interstitial mechanism for addressing executive-branch vacancies that can be applied to U.S. Attorneys (in the FVRA). Congress has also authorized the Attorney General to appoint special attorneys to assist U.S. Attorneys. *See* 28 U.S.C. § 543. But what Congress has not done is empower the Attorney General to appoint a special attorney under Section 515 and orchestrate a series of resignations and redesignations to transform that special attorney— who is no longer eligible to fill the role under Section 546 (because she has served more than a 120-day term) or the FVRA (*see infra* pp. 14-20) into an acting U.S. Attorney. Abiding that result here would almost certainly fuel future efforts at circumvention. Indeed, the executive appears to have adopted a similar approach in other judicial districts, leading two other district courts (so far) to reject the government's theory. *See United States v. Ramirez,* No. 5:25-cr-264, 2025 WL 3019248 (C.D. Cal. Oct. 28, 2025); *United States v. Giraud,* No. 1:24-cr-768, 2025 WL 2416737 (D. N.J. Aug. 21, 2025).

Section 515's history confirms its narrow purpose. The U.S. Attorney position is venerable and was originally established as the "attorney for the United States in [ea]ch district" shortly after the founding under the 1789 Judiciary Act. *See* Judiciary Act, ch. 20, § 35, 1 Stat. 73, 92-93 (1789). Not

13

until 1870—when creating the Department of Justice—did Congress empower the Attorney General to appoint assistants for herself and for district attorneys. *See* An Act to Establish the Department of Justice, ch. 150, sec. 17, 16 Stat. 162, 164-65 (1870). Congress intended the Attorney General to use this authority where necessary to "employ special counsel in special cases." *See* H.R. Rep. No. 59-2901, at 2 (1906). It was never intended to displace the longstanding separate regime for the appointment and operation of U.S. Attorneys. Indeed, although "Attorneys General [have] made extensive use of special attorneys," *In re Persico*, 522 F.2d 41, 54 (2d Cir. 1975), including to prosecute U.S. Attorneys, *see* 44 Cong. Rec. 4544 (1909), the July order in this and other similar cases appears to be the first time an Attorney General has used the special-attorney appointment provision in Section 515 or its predecessors to install an acting U.S. Attorney. *Cf. Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 220 (2020) ("Perhaps the most telling indication of [a] severe constitutional problem' with an executive entity 'is [a] lack of historical precedent' to support it.") (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 505 (2010).

2. The government's theory also relies on a flawed reading of the FVRA. That law provides that where a PAS officer "dies, resigns, or is otherwise

unable to perform the functions and duties of his office," then "the first assistant to the office of such officer" temporarily fills the vacancy to "perform the functions and duties of the office . . . in an acting capacity," 5 U.S.C. § 3345. Although first assistants "automatically assume acting duties" under Section 3345(a)(1), *SW Gen.*, 580 U.S. at 305, the FVRA provides that "notwithstanding" that default rule, "the President (and only the President)" may fill the vacant office—but only with either a different PAS officer or a senior official in the relevant agency who has served for at least 90 days within the past year. 5 U.S.C. § 3345(a)(2)-(3). Section 3345(b) imposes certain limitations on the pool of eligible acting officers under Section 3345(a)(1).

The district court correctly concluded that Ms. Chattah was ineligible to serve as an acting officer under Section 3345(a)(1) because she was not serving as the first assistant when the vacancy arose. ER.18-23. That conclusion flows from Section 3345(a)'s text. Section 3345(a)'s present-tense verbs ("dies, resigns, or is otherwise unable to perform the functions and duties of the office") and Section 3345(a)(1)'s mandatory directive (the first assistant "shall perform") establish a default rule that the incumbent first assistant fill the position as soon as the vacancy occurs without "the President []or anyone else" playing "a role in this process." *Giraud*, 2025

15

WL 2416737, at *15. That default incumbent-first-assistant rule exists "because such person is often a career official with knowledge of the office or a Senate-confirmed individual" who could perform "the routine functions of the office" for "a limited period of time." S. Rep. No. 105-250, at 12 (1998).[5] The default rule also means that "[i]f there is no first assistant, no one is permitted by law to become an acting officer until the President designates" either a "Senate-confirmed individual" or an eligible senior official in the relevant agency under Section 3345(a)(2) or (3). *Id.* at 13.

Section 3345(a)'s structure reinforces that interpretation. If, as the government contends (Br.16-31), the Attorney General could simply designate anyone as the "first assistant" at any time after a vacancy has arisen with the result that that person then becomes the acting officer, Congress would have had no plausible reason to identify—and narrowly cabin—the alternatives to the automatic first-assistant rule. *See Giraud*, 2025 WL 2416737, at *15 (noting that the government's reading "would render the limits in subsections (a)(2) and (a)(3) surplusage in the vast majority of

---

[5] By contrast, the government's (flawed) textual argument (Br.18-19)—that the phrase "to the office" in Section 3345(a)(1) would allow the appointment of a first-assistant-who-immediately-becomes-the-acting-officer at any time during a vacancy—would result in inexperienced, noncareer appointees who do not understand the routine functions of the offices they are to lead.

cases"). The government suggests Congress may have sought to address circumstances when "the first assistant is itself a PAS office," but the fact that it offers only a single example, Br.24-25, illustrates that its interpretations would render Sections 3345(a)(2) and (3) "meaningless in all but the most unlikely situations," ER.18, if not "entirely irrelevant," *Giraud*, 2025 WL 2416737, at *15.[6]

The government's remaining counterarguments are equally meritless. It contends (Br.19) that Congress did not use "backward-looking language" in Section 3345(a)(1) to confirm the incumbent-first-assistant rule even though it used such language in other parts of statute, namely Sections 3345(a)(3)(A) (the person chosen by the President must have been a senior officer in the relevant office for at least 90 of the 365 days that preceded the vacancy) and (b)(1)(A) (disqualifying from acting service anyone who did not serve as first assistant in the year preceding the vacancy or served less than 90 days and has been nominated to the position permanently). True enough, but irrelevant. Those latter provisions impose limitations on who may serve,

---

[6] Similarly unlikely is the circumstance where the first assistant must be appointed by an agency head, which is itself vacant (for which the government cites statutes but no actual examples) or where the President wants to bypass the current first assistant (buttressed with a single example). *See* Br.25. The latter circumstance, moreover, is precisely why Congress enabled the President two other options (in Sections 3345(a)(2) and (3)) to opt out of the first-assistant default rule.

17

while the first-assistant provision in Section 3345(a)(1) designates an automatic first choice. Section 3345(a)(3)(A) is designed "to limit the President's choices to 'officials with both experience and seniority.'" *United States v. Garcia*, No. 2:25-cr-00230, 2025 WL 2784640, at *6 (D. Nev. 2025) (quoting *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 28 (D.D.C. 2020)). And Section 3345(b)(1), which disqualifies certain persons from serving as acting officers, "imposes limitations on presidential nominees" who would otherwise be eligible to serve. *Id.* at *7. By contrast, Section 3345(a)(1) affirmatively articulates a default rule in which the President plays no role—unless the government's ill-founded interpretation governs.

The government also invokes "longstanding" executive-branch practice. Br.22. But the government's reliance on history runs headlong into Congress's enactment of the FVRA, which was designed precisely to stem the very roundabout vacancy-appointment practices that the government is now pursuing. *See Giraud*, 2025 WL 2416737, at *18. To the extent the government also relies on the General Accounting Office and the Office of Legal Counsel, those offices have themselves issued conflicting opinions on whether the FVRA requires that a first assistant be serving in that role when the vacancy arises in order to assume acting duties pursuant to Section 3345(a)(1). *Compare Guidance on Application of Federal Vacancies*

18

*Reform Act of 1998*, 23 Op. O.L.C. 60, 63-64 (1999) ("[T]he better understanding is that you must be the first assistant when the vacancy occurs in order to be the acting officer ."), *with Designation of Acting Associate Attorney General*, 25 Op. O.L.C. 177, 181 (2001) (taking the opposite view); *see* Letter from Victor S. Rezendes, Managing Director, Strategic Issues, GAO to U.S. Senators Joseph I. Lieberman and Dan Burton (Dec. 7, 2001) (acknowledging conflicting views). Even if this Court owed any deference to the interpretations supporting the government's position here, *but see Loper Bright Enters., Inc. v. Raimondo*, 603 U.S. 369, 386 (2024) (noting that courts are not required to defer to agency interpretation of statutes), that inconsistency "undermines the persuasiveness" of those views, ER.22, and with it any resulting historical practice the government claims to discern.

In any event, history undercuts the government's position. In prior litigation in another case, the government "failed to identify a single example of a post-vacancy first assistant serving in an acting capacity prior to enactment of the FVRA," a history that "casts some doubt on whether Congress intended the phrase 'first assistant' to encompass those appointed to the first-assistant position after the vacancy arose." *L.M.-M.*, 442 F. Supp. 3d at 27-28. It strains credulity to imagine that any historical examples exist of what occurred here: the individual installed as the post-vacancy first

19

assistant was elevated to fill an empty position created only moments earlier by her very own resignation from a time-limited, interim appointment.[7] The absence of any historical practice supporting the government's unorthodox approach to a question that "concern[s] the allocation of power between two elected branches of Government" is a "significant weight" against it. *See N.L.R.B. v. Noel Canning*, 573 U.S. 513, 524 (2014).

### B. The Attorney General Cannot Delegate Ms. Chattah The Authority to Lead the U.S. Attorney's Office

The government offers yet another rationale to keep Ms. Chattah in charge of the U.S. Attorney's Office: that she need not actually serve as the acting U.S. Attorney because she can simply perform the job without the title, exercising powers delegated from the Attorney General. Br.31-56. That proconsul theory of federal prosecutorial power conflicts with the FVRA's

---

[7] Although the government has offered no *historical* examples of this dubious practice, the executive branch appears to have used this approach repeatedly over the last year. *See* Motion to Dismiss, *United States v. Garcia*, No. 25-CR-655, ECF No. 21, at 14-15, 20-22 (C.D. Cal.) (filed Aug. 29. 2025) (describing similar approaches to U.S. Attorney positions in the District of New Jersey, Central District of California, the Northern District of New York, and the District of New Mexico); *United States v. Comey*, No. 25-CR-272, ECF No. 137-1 (E.D. Va.) (filed Nov. 3, 2025) (Attorney General order purporting to appoint Lindsey Halligan as a special attorney to conduct legal proceedings in the Eastern District of Virigina and to ratify actions already taken by Ms. Halligan there, relying on the same legal theories in this and other similar cases); *see also* Def.Br.9-13 (describing the use of this practice in several judicial districts).

exclusivity provision, reprises the very abuses that led to the FVRA's enactment in the first place, and would render superfluous the statutory scheme for U.S. Attorney appointments.

1. The government's theory that the Attorney General is empowered under 28 U.S.C. §§ 509, 510, and 515 to delegate to Ms. Chattah the powers of a U.S. Attorney "runs headlong into the exclusivity provisions of the FVRA." ER.27. Congress made the FVRA "the exclusive means for temporarily authorizing an acting official to perform the functions and duties" of a PAS officer, 5 U.S.C. § 3347, with exceptions for a statute that "expressly authorizes" filling a vacancy (such as 28 U.S.C. § 546), 5 U.S.C. § 3347(a)(1), and for a recess appointment, *id.* § 3347(a)(2). But the FVRA exclusivity provision makes clear that the "expressly authorizes" carveout in Section 3347(a)(1) *does not* include "[a]ny statutory provision providing general authority to the head of an Executive agency . . . to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency." *Id.* § 3347(b). That clear textual prohibition precludes the government from relying on the Attorney

21

General's delegation of powers under Sections 509, 510 and 515 to fill the U.S. Attorney's office position.[8]

Interpreting Section 3347(b) consistently with its text to forbid the government's delegation theory effectuates the FVRA's purpose. Congress enacted the FVRA in response to Justice Department efforts to "fill[] high-level positions, sometimes in obvious contravention of the Senate's wishes" and in view of "a threat to the Senate's advice and consent power." *SW Gen.*, 580 U.S. at 295. The FVRA's exclusivity provision took specific aim at arguments "raised by the Justice Department that sections 28 U.S.C. §§ 509 and 510, rather than the Vacancies Act, apply to vacancies in that department," S. Rep. No. 105-250, at 17—in other words, the very argument the government advances here. *See id.* at 3 ("Given the growing number of federal departments and agencies that now claim exemption from the Vacancies Act, Congress must explicitly reject the position that general organic statutes for various agencies and departments, such as 28 U.S.C.

---

[8] The three district courts that have rejected the government's U.S. Attorney delegation theory—and no court has yet accepted it—persuasively explain why the government's reliance (*see* Br.31-56) on a different provision in the FVRA and court of appeals' decisions that do not squarely address the issue here cannot overcome Section 3347(b)(1)'s plain text. *See* ER.27-33; *Ramirez*, 2025 WL 3019248, at *11-12; *Giraud*, 2025 WL 2416737, at *19-25; *see also* Def.Br.51-54 (addressing out-of-circuit court of appeals' decisions).

§§ 509 and 510, trump the specific provisions of the Vacancies Act."); *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1078 n.7 (9th Cir. 2024) (noting that Section 3347(b) responded to Justice Department efforts to "evad[e]" pre-FVRA vacancy-filling requirements by invoking the Attorney General's "general 'vesting-and-delegation authority'") (citation omitted). It would be perverse to countenance the very evasion that led to the FVRA's enactment in the first place.

The government nonetheless insists that its delegation theory is necessary to avoid "crippl[ing] the operation of the federal government." Br.56 (citing *Kajmowicz v. Whitaker*, 42 F.4th 138, 151 (3d Cir. 2022)). That consequentialist claim is overstated, *see Giraud*, 2025 WL 2416737, at *25-26, and unpersuasive. In *Lucia v. SEC*, 585 U.S. 237 (2018), the Supreme Court considered whether administrative law judges (ALJ) at the Securities and Exchange Commission were "Officers of the United States" who had to be appointed consistent with the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, *see* 585 U.S. at 241. Arguments against such a conclusion sounded much like those the government invokes here: deeming ALJs officers "would have significant negative practical consequences (including calling into question the constitutionality of more than a century's worth of presidential

23

and congressional investigative commissions)" and "would be difficult for the political branches to administer." Brief for Court-Appointed Amicus Curiae in Support of the Judgment Below, *Lucia v. SEC*, No. 17-130, 2018 WL 1531942, at *36 (filed Mar. 26, 2018). The Supreme Court nonetheless held that the ALJs qualified as officers (because they held a continuing office and exercised "significant discretion" while performing "important functions," *Lucia*, 535 U.S. at 248), implicitly rejecting those consequentialist considerations. The Court should do the same here.

It also blinks reality to claim that a contrary holding would "cripple" government functioning in this case. The district court for the District of Nevada could have acted under Section 546(d) to appoint a U.S. Attorney (including even Ms. Chattah herself). And even if the executive was intent on removing any court-appointed U.S. Attorney, it would have been easy for the President to appoint someone other than Ms. Chattah under the FVRA. The continuity of the U.S. Attorney's office in Nevada was not under threat—until the Attorney General issued the legally flawed July order.

2. The government's delegation theory also creates needless superfluity. Courts should avoid an interpretation that is "contrary to Congress' apparent intent" and that would have the "practical effect" of rendering a statutory scheme "entirely superfluous in all but the most

24

unusual circumstances." *TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001). Yet that is precisely what the government advocates here. Never mind that Congress has provided no fewer than three ways to fill a U.S. Attorney vacancy: presidential nomination and Senate confirmation, 28 U.S.C. § 541; a time-limited Attorney-General appointment followed by a within-district judiciary appointment, 28 U.S.C. § 546; and a mechanism for filling vacant executive-branch PAS offices that the government has used interchangeably with Section 546, 5 U.S.C. §§ 3345 *et seq.*; *see* Temporary Filling of Vacancies in the Office of United States Attorney, 27 Op. O.L.C. 149, 149-50 (2003) (explaining the government's view that both Section 546 and FVRA are available to fill U.S. Attorney vacancies). If the Attorney General can simply handpick her preferred lawyers—lawyers who under Section 515 could have been private citizens only moments before being appointed as a "special attorney"—to run the ninety-plus U.S. Attorney's offices throughout the country under her delegated authority, Congress need not have bothered with such a system.

C. **Accepting the Government's Theory Thwarts Senate Review and Raises Constitutional Concerns**

Accepting the Attorney General's purported installation of Ms. Chattah as the U.S. Attorney "necessarily raises the question whether that appointment complied with the requirements of the Appointments Clause."

25

*SW Gen.*, 580 U.S. at 313 (Thomas, J., concurring). At bottom, the government's untenable legal theory operates in service of the "ignoble" aim of "enabling the President to circumvent the Senate's role in the appointment process." *Noel Canning*, 573 U.S. at 580 (Scalia, J., concurring).

Consider what has happened so far. Following Ms. Chattah's appointment under Section 546 as the interim U.S. Attorney, she served 119 days of the statutorily allotted 120-day term under Section 546(c)(2). At that point, when the judiciary, consistent with its role under Section 546(d), would have been entitled to appoint a person (potentially including Ms. Chattah herself) to serve as U.S. Attorney, the executive instead sought to reinstall Ms. Chattah as the (acting) U.S. Attorney—this time under the FVRA, apparently (at least on the government's theory) giving her another 210 days on the job, all without scrutiny by the Senate. Throughout this period, the executive has never submitted a nomination to the Senate, ER.10 ("To date, the President has not nominated Ms. Chattah or anyone else to serve as the permanent U.S. Attorney for the District of Nevada."), meaning the Senate is unable to perform its critical advice-and-consent function for the top federal prosecutor in Nevada.

The executive branch's conduct in shoehorning Ms. Chattah into the U.S. Attorney role has thus bypassed not only the Senate's role envisioned in

26

Section 541, but also the additional safeguard through the judiciary that Congress provided in Section 546(d). And on the government's delegation theory, Ms. Chattah could remain the *de facto* U.S. Attorney permanently. Permitting such conduct would "eviscerate the divided-powers framework" that the Appointments Clause establishes, *N.L.R.B. v. New Vista Nursing and Rehab.*, 719 F.3d 203, 230 (3d Cir. 2013). It would also undermine an important "'limiting principle' on executive appointments," *Cody v. Kijakazi*, 48 F.4th 956, 960 (9th Cir. 2022) (quoting *Freytag*, 501 U.S. at 880), by consolidating all appointment power in the executive branch.

A conclusion that Ms. Chattah is not validly serving as the U.S. Attorney furthers the accountability the Appointments Clause was designed to guarantee, *see United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021), without preventing the filling of a vacancy through lawful operation of the FVRA and Section 546. The FVRA provides the President with several "tools," *L.M.-M.*, 442 F. Supp. 3d at 34, to temporarily fill vacancies before the Senate confirms a presidential nominee. Those include relying on an experienced first assistant, § 3345(a)(1), or another PAS officer or sufficiently senior agency official to assume the role, § 3345(a)(2)-(3). And where (unlike here) a district court fails to act under Section 546(d), that provision may also permit a "second interim appointment," *In re Grand Jury Proc.*, 671 F.Supp. 5, 7 (D.

27

Mass. 1987); *see* Memorandum of Samuel A. Alito, Jr., Deputy Assistant Attorney General, Office of Legal Counsel, to William P. Tyson, Director, Executive Director, Executive Office of United States Attorneys 3 (Nov. 13, 1986), albeit not for Ms. Chattah, who has already served well beyond the 120-day term provided in Section 546(c), *see* Def.Br.38.

## CONCLUSION

This Court should affirm the district court's order.

Respectfully submitted,

November 25, 2025

/s/ James I. Pearce
JAMES I. PEARCE†
SAMANTHA BATEMAN
MARY L. DOHRMANN††
NATHANIEL A.G. ZELINSKY
WASHINGTON LITIGATION GROUP
1717 K St NW
Suite 1120
Washington, DC 20006
202-521-8750
jpearce@washingtonlitigationgroup.org
sbateman@washingtonlitigationgroup.org
mdohrmann@washingtonlitigationgroup.org
nzelinsky@washingtonlitigationgroup.org

*† Admitted only in New York and North Carolina; practicing under the supervision of D.C. Bar Members*

*††Admitted only in New York; practicing under the supervision of D.C. Bar Members*

*Counsel for Amicus Nevada Attorneys for Criminal Justice and the National Association of Criminal Defense Lawyers*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I certify the following:

1. This brief complies with Fed. R. App. P. 29(a)(5) because it contains 6,036 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Georgia 14-point font using Microsoft Word 2018.

3. This brief complies with the electronic filing requirements of Local R. 31.1(c) because the text of the electronic brief is identical to the text of the paper copies and because OpenText was run on the file containing the electronic version of this brief and no viruses were detected.

/s/ James I. Pearce
JAMES I. PEARCE†
WASHINGTON LITIGATION GROUP
1717 K St NW
Suite 1120
Washington, DC 20006
202-521-8750
jpearce@washingtonlitigationgroup.org

November 25, 2025

† *Admitted only in New York and North Carolina; practicing under the supervision of D.C. Bar Member*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on November 25, 2025. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ James I. Pearce
JAMES I. PEARCE[†]
WASHINGTON LITIGATION GROUP
1717 K St NW
Suite 1120
Washington, DC 20006
202-521-8750
jpearce@washingtonlitigationgroup.org

November 25, 2025

[†] *Admitted only in New York and North Carolina; practicing under the supervision of D.C. Bar Member*