**Nos. 25-6214 & 25-6470, 25-6223 & 25-6475,
25-6224 & 25-6465, 25-6229 & 25-6468**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant-Cross-Appellee,

v.

DEVONTE DEVON JACKSON, GIANN ICOB SALAZAR DEL REAL,
JORGE ENRIQUEZ, JR., SHAMAR TYRELL GARCIA,

Defendants-Appellees-Cross-Appellants.

On Appeal from the United States District Court for the District of Nevada
Nos. 2:25-cr-240, 2:25-cr-227, 3:25-cr-26, 2:25-cr-230 (Campbell, J. (D. Ariz.))

## RESPONSE AND REPLY BRIEF

SIGAL CHATTAH
  First Assistant U.S. Attorney

ADAM FLAKE
  Assistant U.S. Attorney
  Chief, Appellate Division
  District of Nevada

PAMELA J. BONDI
  Attorney General

TODD BLANCHE
  Deputy Attorney General

STANLEY WOODWARD
  Associate Attorney General

HENRY C. WHITAKER
  Counselor to the Attorney General

MATTHEW R. GALEOTTI
  Acting Assistant Attorney General

JOSH A. GOLDFOOT
  Deputy Assistant Attorney General

TYLER ANNE LEE
  Criminal Division
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-5593
  tyler.lee@usdoj.gov

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................i

TABLE OF AUTHORITIES .............................................................iii

INTRODUCTION ........................................................................1

STATEMENT OF JURISDICTION.................................................2

ARGUMENT ...............................................................................2

I.      The District Court Erred in Disqualifying Ms. Chattah Under the FVRA. .......................................................................................2

    A.      Section 3345(a)(1) is not limited to incumbent first assistants. .................................................................................3

    B.      Service as an Acting U.S. Attorney is not limited to 120 days. ....................................................................................12

II.     The District Court Erred in Disqualifying Ms. Chattah From Supervising These Prosecutions Pursuant to the Attorney General's Delegation of Authority. ......................................................17

    A.      The FVRA does not prohibit the delegation of a vacant office's delegable duties to a non-acting officer. ........................18

    B.      Ms. Chattah's designation does not violate the Appointments Clause. ....................................................................31

    C.      The Attorney General's order appointing Ms. Chattah and delegating authority to her is valid. ...........................................39

    D.      Ms. Chattah can lead the U.S. Attorney's Office as First Assistant U.S. Attorney............................................................41

III.    At All Events, Dismissal of the Indictments Is Not Warranted. ...........43

    A.      Defendants' indictments are valid.............................................43

    B.      Dismissal under the FVRA is inappropriate. .............................44

ii

C. Dismissal under *United States v. Bundy* is inappropriate.............. 48

D. Dismissal under *Lucia v. SEC* is inappropriate........................... 50

CONCLUSION............................................................................... 53

# TABLE OF AUTHORITIES

**Cases**

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
35 F.4th 1328 (Fed. Cir. 2022) ....................................20, 22, 23, 24, 27, 29

*Azar v. Allina Health Servs.*,
587 U.S. 566 (2019) ............................................................................. 27

*Dahle v. Kijakazi*,
62 F.4th 424 (8th Cir. 2023) ................................................................. 17

*Dalton v. Specter*,
511 U.S. 462 (1994) ............................................................................. 35

*Dames & Moore v. Regan*,
453 U.S. 654 (1981) ............................................................................. 12

*Duenas v. Garland*,
78 F.4th 1069 (9th Cir. 2023) ................................................... 31, 32, 33

*Edmond v. United States*,
520 U.S. 651 (1997) ................................................................. 32, 33, 34

*Fortin v. Comm'r of Soc. Sec.*,
112 F.4th 411 (6th Cir. 2024) ..........................................................17, 35

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*,
107 F.4th 1064 (9th Cir. 2024).........................12, 20, 22, 23, 24, 27, 43, 46

*Gorecki v. Comm'r, Soc. Sec. Admin.*,
143 F.4th 1295 (11th Cir. 2025).......................................................... 17

*Hooks v. Kitsap Tenant Support Servs., Inc.*,
816 F.3d 550 (9th Cir. 2016) ...................................................... 13, 14, 15

*In re Persico*,
522 F.2d 41 (2d Cir. 1975) ................................................................... 41

*Kajmowicz v. Whitaker*,
  42 F.4th 138 (3d Cir. 2022) .................................................................. 27

*Little v. United States*,
  524 F.2d 335 (8th Cir. 1975) ................................................................ 40

*Lucia v. Securities and Exchange Commission*,
  585 U.S. 237 (2018) ....................................................................... 27, 50

*Morrison v. Olson*,
  487 U.S. 654 (1988) ............................................................................ 33

*Myers v. United States*,
  272 U.S. 52 (1926) ......................................................................... 32, 34

*NLRB v. SW General*,
  580 U.S. 288 (2017) ....................................................................... 11, 12

*Rop v. Fed. Hous. Fin. Agency*,
  50 F.4th 562 (6th Cir. 2022) ........................................................... 34, 35

*Ross v. Blake*,
  578 U.S. 632 (2016) ............................................................................ 10

*Rush v. Kijakazi*,
  65 F.4th 114 (4th Cir. 2023) ............................................................... 17

*Ryder v. United States*,
  515 U.S. 177 (1995) ............................................................................ 35

*Seago v. O'Malley*,
  91 F.4th 386 (5th Cir. 2024) ............................................................... 17

*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020) .............................................................................. 9

*Trump v. United States*,
  603 U.S. 593 (2024) ............................................................................ 38

*United States v. Arthrex, Inc.*,
  594 U.S. 1 (2021)........................................................................... 33, 34

iv

*United States v. Bundy*,
    968 F.3d 1019 (9th Cir. 2020)....................................................... 48, 49, 50

*United States v. Comey*,
    --- F. Supp. 3d ----, 2025 WL 3266932 (E.D. Va. Nov. 24, 2025) .........36, 51

*United States v. Diaz-Rosado*,
    725 F. App'x 847 (11th Cir. 2018) ........................................................ 42

*United States v. Eaton*,
    169 U.S. 331 (1898) ............................................................................. 32

*United States v. Gantt*,
    194 F.3d 987 (9th Cir. 1999), *overruled on other grounds by United
    States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) .........31, 32, 39, 44, 47, 52

*United States v. Giordano*,
    416 U.S. 505 (1974) ............................................................................. 19

*United States v. Giraud*,
    --- F.4th ----, 2025 WL 3439752 (3d Cir. Dec. 1, 2025).............. 2, 25, 28, 43

*United States v. Giraud*,
    795 F. Supp. 3d 560 (D.N.J. 2025) ....................................................... 44

*United States v. Hawthorne*,
    626 F.2d 87 (9th Cir. 1980) ................................................................. 40

*United States v. Hilario*,
    218 F.3d 19 (1st Cir. 2000).............................................................32, 39

*United States v. Nixon*,
    418 U.S. 683 (1974)..........................................................................36, 40

*United States v. Plesinski*,
    912 F.2d 1033 (9th Cir. 1990)............................................................... 40

*United States v. Prueitt*,
    540 F.2d 995 (9th Cir. 1976) ............................................................... 41

*United States v. Ramirez,*
 --- F. Supp. 3d ----, 2025 WL 3019248
 (C.D. Cal. Oct. 28, 2025)................................20, 27, 42, 43, 44, 45, 48, 49

*United States v. Rogers,*
 751 F.2d 1074 (9th Cir. 1985)................................................................. 46

*United States v. Smith,*
 962 F.3d 755 (4th Cir. 2020) ...................................................... 32, 33, 47

*United States v. Trump,*
 740 F. Supp. 3d 1245 (S.D. Fla. 2024) ................................................... 51

*United States v. Weyhrauch,*
 544 F.3d 969 (9th Cir. 2008)................................................................... 26

*United States v. Wrigley,*
 520 F.2d 362 (8th Cir. 1975) .................................................................. 41

*Weiss v. United States,*
 510 U.S. 163 (1994).........................................................................37, 39

## Statutes, Rules, and Constitutional Provisions

U.S. CONST. art. II, § 2, cl. 2........................................................................ 32

5 U.S.C. § 101............................................................................................... 26

5 U.S.C. § 105............................................................................................... 26

5 U.S.C. § 3345............................................ 1, 2, 3, 5, 10, 13, 14, 18, 25, 26, 35

5 U.S.C. § 3345 (1966) ................................................................................ 10

5 U.S.C. § 3346............................................................... 13, 15, 17, 18, 34

5 U.S.C. § 3346 (1966) ................................................................................ 10

5 U.S.C. § 3347............................................................... 17, 18, 19, 20, 22

5 U.S.C. § 3348............................................................... 19, 20, 23, 24, 46

5 U.S.C. § 3349a ........................................................................ 15

6 U.S.C. § 113 ....................................................................... 7, 8

7 U.S.C. § 2210 ......................................................................... 7

7 U.S.C. § 2211 ......................................................................... 7

18 U.S.C. § 3731 ...................................................................... 26

28 U.S.C. § 509 .................................................................. 36, 45

28 U.S.C. § 510 .............................................................. 27, 36, 45

28 U.S.C. § 515 .............................................................. 26, 36, 45

28 U.S.C. § 516 ...................................................................... 45

28 U.S.C. § 517 ...................................................................... 45

28 U.S.C. § 518 ...................................................................... 45

28 U.S.C. § 519 .................................................................. 34, 45

28 U.S.C. § 533 ...................................................................... 36

28 U.S.C. § 541 ...................................................................... 29

28 U.S.C. § 543 ...................................................................... 40

28 U.S.C. § 546 ................................................. 12, 13, 15, 29, 33, 39

28 U.S.C. § 547 ...................................................................... 44

29 U.S.C. § 153 ...................................................................... 14

44 U.S.C. § 2103 ...................................................................... 8

Pub. L. No. 111-8, 123 Stat. 524 (2009) .......................................... 21

28 C.F.R. § 0.13 ...................................................................... 26

28 C.F.R. § 0.137 ...............................................................36, 42

**Other Authorities**

Justice Manual § 9-2.001 ........................................................ 45

Justice Manual § 9-11.120 ...................................................... 25

Justice Manual § 9-11.140 ...................................................... 26

Justice Manual § 9-11.150 ...................................................... 26

S. Rep. No. 105-250 .........................................................11, 27, 28, 29

*Temporary Filling of Vacancies in the Office of United States Attorney*, 27
  Op. O.L.C. 149 (2003) ....................................................... 16

**INTRODUCTION**

The Federal Vacancies Reform Act (FVRA), 5 U.S.C. § 3345 *et seq.*, applies across the Executive Branch. It embodies a careful balance between the important roles for the President and Senate in appointing and confirming government officials and the ability of the Executive Branch to continue to operate in times of vacancies. As the government explained in its principal brief, the district court erred in concluding that the statute prohibited Sigal Chattah from serving as Acting U.S. Attorney and from conducting and supervising litigation in the District of Nevada pursuant to the Attorney General's express delegation of that authority to her. Defendants' primary responses are policy arguments based on the circumstances of this case and the result of the statute's application to the office of U.S. Attorney. This Court should not distort the text of the FVRA to achieve defendants' desired policy outcomes or undermine widespread Executive Branch practices that are critically important during times of Presidential transition and extended vacancies.

Defendants' cross-appeals separately challenge the district court's refusal to dismiss the indictments. As explained in the government's motion to dismiss the cross-appeals, this Court lacks jurisdiction over those interlocutory claims, which must instead be raised on appeal from any final judgment of conviction. In any event, as the district court correctly determined, defendants' indictments

1

are valid and defendants cannot show that dismissal is the appropriate remedy for any invalidity in Ms. Chattah's service. This Court should reject their claims.

## STATEMENT OF JURISDICTION

This Court lacks jurisdiction over defendants' cross-appeals of the denial of their motions to dismiss the indictment. *See United States v. Giraud*, --- F.4th ----, 2025 WL 3439752, at *3 n.2 (3d Cir. Dec. 1, 2025). The government has accordingly moved to dismiss those appeals, *see* Mot. to Dismiss (Oct. 27, 2025), and maintains that this Court lacks jurisdiction to reach the merits of those claims.

## ARGUMENT

### I. The District Court Erred in Disqualifying Ms. Chattah Under the FVRA.

Although defendants would prefer it to be otherwise, a straightforward reading of the statute shows that Ms. Chattah has in fact been validly serving as the Acting U.S. Attorney for the District of Nevada. The Attorney General appointed her First Assistant U.S. Attorney (FAUSA), which—as neither defendants nor their *amici* dispute—is "the first assistant to the office" of U.S. Attorney. 5 U.S.C. § 3345(a)(1). Accordingly, by operation of § 3345(a)(1), she was authorized to "perform the functions and duties of the office temporarily in

2

an acting capacity." *Id.*; *see* USB-16-31.[1] Defendants' efforts to resist that simple logic fail from start to finish.

### A. Section 3345(a)(1) is not limited to incumbent first assistants.

Defendants insist that the only kind of "first assistant" eligible to be the acting U.S. Attorney for the District of Nevada was an incumbent from the previous presidential administration who was serving when the last Senate-confirmed U.S. Attorney resigned. But the statute contains no such temporal requirement.

1. As the government's principal brief showed, two straightforward features of the statute demonstrate the absence of defendants' asserted temporal requirement. First, the statute says that "the first assistant *to the office* of such officer shall perform" the functions and duties of the office in an acting capacity. 5 U.S.C. § 3345(a)(1) (emphasis added). Not the first assistant to any particular "officer." Not the first assistant who served at the specific time the vacancy arose. The first assistant *to the office*, period. Second, a vacancy is a continuing condition and the statute, in the present tense, authorizes acting service whenever the PAS office "is"—not became—vacant. *Id.* § 3345(a); USB-18-19. The statute therefore is indeed "automatic," DB-19, and "self-executing," DB-

---

[1] "USB" refers to the government's principal brief. "DB" refers to defendants' principal and response brief.

3

21: if a vacancy continues to exist, and the FVRA's time limits have not expired, whoever is occupying the office of first assistant at present by default automatically becomes the acting officer. USB-18-19.

On the text, defendants have little to say in response. Defendants agree that after the vacancy occurs, the first assistant "is the first assistant to the vacant office, not to the departed officer." DB-27. They repeat the district court's contention that the "first assistant to the office" language "refers to a designated position." DB-27. That is the point. The relevant first assistant is whoever is occupying the first-assistant office, not the person (if any) who happened to occupy the office when the vacancy first arose. *See* USB-23-24. Defendants offer no textual explanation for why that language requires the first assistant to be an incumbent. It is perfectly natural to refer to "the first assistant" to mean the specific person occupying the office at present. Defendants also assert that the present tense of the statute supports their reading and "requires the individual to be the first assistant, presently, when the vacancy occurs." DB-28. But defendants' claim lacks grounding in the text. A vacancy is a continuing state, and the automatic and present-tense nature of § 3345(a)(1)'s default rule means that whoever is serving as the first assistant at a particular moment in time during the vacancy automatically becomes the acting official for the specified time period, unless the President instead invokes (a)(2) or (a)(3). If only the "already-

4

in-place" first assistant were eligible to serve, then § 3345(a)(1) would be less useful as an automatic default rule. Under § 3345(a)(1), an agency head can often ensure that there is a first assistant in place, so the President does not have to personally select and individually designate an acting official for every PAS vacancy that arises.

2. Other parts of the statute reinforce the government's reading of § 3345(a)(1). In § 3345(a)(3) and (b)(1), Congress created eligibility requirements that turned on the circumstances at and before the time of the vacancy, and that type of language is entirely absent in (a)(1). USB-19-20. Section 3345(a)(3) says that only a person who served in the agency for 90 days prior to the vacancy at a certain rate of pay is eligible to be designated by the President as an acting officer. By contrast, § 3345(a)(1) says nothing about the timing of the first assistant to the office's service. Section 3345(b)(1) is even more on the nose. It makes a person ineligible to be both the acting officer and the nominee for the vacancy if, prior to the vacancy's arising, the person "did not serve in the position of first assistant to the office of such officer." 5 U.S.C. § 3345(b)(1). That language contemplates that first assistants appointed after the vacancy arises may serve as acting officers—otherwise, Congress would not have taken pains to make such officials ineligible to be the nominee.

Defendants have no cogent response to those points. They acknowledge that (a)(1) lacks the 90-day backward-looking eligibility requirement present in (a)(3) and (b)(1), and simply repeat the claim that (a)(1) has a "present-tense eligibility requirement." DB-29. But that does not explain why, unlike in (a)(3) and (b)(1), Congress did not include express language in (a)(1) specifying a temporal constraint on that automatic provision if it wanted to impose one: "the first assistant to the office of such officer *at the time the vacancy arose*."

3. With nothing plausible to say about the text of the FVRA, defendants support their atextual incumbency requirement with dubious structural inferences about the statute. Their arguments miss the mark.

Defendants contend that, unless § 3345(a)(1) contains an implicit incumbency requirement, subsections (a)(2) and (a)(3) are superfluous. DB-22-26. But as the government explained, (a)(1) is not available—and (a)(2) and (a)(3) play an important role—when (i) the first assistant position is itself a PAS office; (ii) the office of agency head is vacant and the first assistant must be appointed by the agency head; or (iii) the President wants the current first assistant to continue serving as first assistant. USB-24-26. In all three circumstances, a presidential designation under (a)(2) or (a)(3) is the only way to designate an acting official under the FVRA.

6

Recognizing the flaw in their "surplusage" argument, defendants retreat to the speculative conclusion that, under the government's interpretation, the situation in which (a)(2) or (a)(3) would operate "seems likely to be rare." DB-24. Defendants complain that those circumstances must be rare because the government has not provided an exhaustive list of examples. To the contrary, the government's examples demonstrate that such circumstances are not unusual: they exist across multiple Executive Branch agencies and illustrate that (a)(2) and (a)(3) are not superfluous. For instance, in addition to the State Department, USB-24-25, multiple other first assistant offices are PAS offices. *See, e.g.*, 6 U.S.C. § 113(a)(1)(A) (Deputy Secretary of Homeland Security); 7 U.S.C. §§ 2210, 2211 (Deputy Secretary of Agriculture); 43 U.S.C. § 1452 (Deputy Secretary of the Interior). Even if that situation were rare—and even if rarity, rather than surplusage, were a reason to rewrite Congress's work—it would not be anomalous for Congress to have provided (a)(2) and (a)(3) Presidential designations as a pathway for temporarily filling some of the most important positions in government.

Defendants further attempt to downplay the fact that the President has repeatedly and recently used (a)(2) and (a)(3), including over two dozen examples at the start of this administration alone. DB-26; *see* USB-25-26. Contrary to their assertion, the fact that the President has invoked (a)(2) and

(a)(3) is highly relevant to the surplusage analysis, showing that those subsections play an important role. For many of the examples cited by the government, the administration could *not* have used (a)(1) to accomplish the same result. For instance, the President could not have designated Benjamine Huffman as the Deputy Secretary of Homeland Security to permit him to serve as the Acting Secretary under (a)(1) because the Deputy Secretary is a PAS office. *See* https://www.whitehouse.gov/presidential-actions/2025/01/designation-of-acting-leaders/; 6 U.S.C. § 113(a)(1)(A). The President likewise could not have relied on (a)(1) to name Secretary of State Marco Rubio as the Acting Archivist of the United States, because the first assistant to the Archivist—the Deputy Archivist—"shall be appointed by" the Archivist, 44 U.S.C. § 2103(c), and the Archivist position was vacant.

Defendants also contend that because (a)(1) is "mandatory and automatic" and (a)(2) and (a)(3) are "discretionary," DB-19, allowing the Attorney General to select an acting officer by designating someone to the first assistant role "fails to respect Congress's judgment that the President (and only the President) may exercise discretion," DB-22. But even under defendants' view, the Attorney General is fully empowered to discretionarily appoint someone with no experience in the agency as first assistant one second before a PAS official resigns—*e.g.*, in cases where that official provided advance notice

8

of his intended resignation—and that person would automatically assume acting status. Defendants identify no reason why Congress would have wanted such accidents of timing to determine whether an official can be named the acting. And it is utterly implausible that Congress intended the default to be that the President must rely on career officials who may disagree with his policies to serve as acting political officers during the critical period at the start of an administration.

More fundamentally, the Constitution entrusts to the Executive Branch considerable freedom in selecting the officials entrusted to execute the laws on the President's behalf. *See, e.g.*, *Seila Law LLC v. CFPB*, 591 U.S. 197, 213-14, 223-24 (2020). That the first-assistant provision of the FVRA gives the Attorney General substantial flexibility in selecting an acting official to help execute the core Article II function of overseeing criminal prosecutions in accordance with the electorate's choice of President is thus a great virtue of the government's position here, not a vice.

4. Defendants' reliance on the FVRA's legislative history, besides being irrelevant given the clarity of the text, is equally misplaced. Defendants repeat the district court's error, ER-24-27, in placing significant weight on a Senate Report, which they read to reflect that Congress intended the first-assistant provision to apply only to incumbents. DB-30-33. But as explained, that report

9

concerned an earlier version of the bill with critically different language. USB-30. And that statutory language underwent a key revision between the Senate bill and the final legislation in response to concerns that the earlier language was overly restrictive and restricted acting service to incumbent first assistants. USB-20-22, 30-31. As explained, this change was made to "depersonalize" the first assistant. USB-21. Defendants claim the change was "semantic" and not intended to alter then-current law. DB-31. But the FVRA's predecessor statute provided that when an officer was absent, "his first assistant" would perform the office's duties. *See* 5 U.S.C. §§ 3345, 3346 (1966). In 1998, Congress chose different language, and used "the first assistant to *the office* of such officer" to define the presumptive default for acting service in all PAS offices. 5 U.S.C. § 3345(a) (emphasis added).

This is not, as defendants contend, a "gaping loophole." DB-32. As discussed, Congress debated and deliberately broadened the statutory language to permit post-vacancy first assistants to serve. USB-20-22. Congress's broadening that aspect of the statute, while narrowing it in others, reflects a carefully crafted legislative compromise that the Court should respect, not an anomaly. *See, e.g.*, *Ross v. Blake*, 578 U.S. 632, 641-42 (2016) ("When Congress amends legislation, courts must presume it intends the change to have real and substantial effect.") (brackets and quotation marks omitted).

10

Relying on language from the Senate Report, defendants also suggest that the statute was designed to allow only the existing first assistant to serve as an acting officer "because that person is an experienced incumbent." DB-30-31. But that language again reflects the earlier version of the bill, referring to circumstances in which "the vacant *officer* has a first assistant," and at most contemplates that the first assistant is "often"—but not always—a "career official." S. Rep. No. 105-250 at 12 (emphasis added). And as already explained, even under defendants' view, the Attorney General could appoint a first assistant with no prior experience immediately before a vacancy occurs.

5. Accepting defendants' position would require upending a quarter-century of Executive Branch practice of having agency heads appoint first assistants after a vacancy arises—a practice endorsed by both the Office of Legal Counsel (OLC) and the Government Accountability Office (GAO)—and would, consistent with Senator Lieberman's concerns, cripple a new administration's ability to name acting officials early in a President's term. USB-22-23, 29-30. Defendants, for their part, again assert a lack of sufficient examples, and claim that the Supreme Court rejected a similar argument regarding "post-enactment practice" in *NLRB v. SW General*, 580 U.S. 288 (2017). DB-35-38. But in *SW General*, which concerned § 3345(b)(1) of the FVRA, the guidance documents "paid the matter little attention," making only

11

"conclusory statements about subsection (b)(1), with no analysis." 580 U.S. at 308. Here, by contrast, OLC's opinion squarely addresses and analyzes whether a non-incumbent first assistant may serve in an acting capacity under § 3345(a)(1), and the GAO letter explicitly agrees with that analysis. *See* USB-22-23, 29-30. Congress has not acted to alter that shared view, which has been consistent for more than two decades. *See Dames & Moore v. Regan*, 453 U.S. 654, 686 (1981); *see also Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1085-86 (9th Cir. 2024) (Johnstone, J., concurring) ("The FVRA arose from disagreements between our co-equal branches about the scope of the President's power to fill vacancies without the Senate's advice and consent. So it is significant that, here, agencies in each branch agree upon the same, narrower reading[.]").

### B. Service as an Acting U.S. Attorney is not limited to 120 days.

Defendants incorrectly contend (DB-38-41) that even if Ms. Chattah was validly designated as Acting U.S. Attorney under the FVRA, her time to serve was limited to 120 days.

Ms. Chattah was appointed as interim U.S. Attorney under 28 U.S.C. § 546(a) effective April 1, 2025. ER-183. She resigned from that position on July 28, 2025, 119 days after the appointment became effective, ER-185, and before the 120-day cap on that interim service expired. *See* 28 U.S.C. § 546(c)(2).

12

Her service as interim U.S. Attorney under § 546 thus did not exceed that statute's limits. Ms. Chattah was then appointed as a Special Attorney and designated as First Assistant U.S. Attorney, ER-187-193, and because the office of U.S. Attorney was vacant, she became the Acting U.S. Attorney pursuant to the FVRA, subject to the distinct time limits imposed by that statute. *See* USB-17-18; 5 U.S.C. §§ 3345, 3346.

Defendants erroneously suggest that § 546's time limit governs acting service under the FVRA, a separate statute with its own time limits. Under § 546, "[a] person appointed as United States attorney under this section may serve until … the expiration of 120 days after appointment by the Attorney General." 28 U.S.C. § 546(c)(2). The plain text refers to appointment and service under § 546, not service pursuant to other provisions. Defendants' unsupported reading of the statute—extending its time limit to other service by that individual—makes little sense.

Rather, under controlling Ninth Circuit precedent, both 28 U.S.C. § 546 and the FVRA are available, non-exclusive options to designate and appoint officials to perform the functions of a U.S. Attorney. In *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 556 (9th Cir. 2016), this Court rejected the argument that the FVRA was inapplicable because an agency-specific statute—there the National Labor Relations Act's vacancy provision applicable to the

13

NLRB General Counsel—"expressly provide[d] a means" for designating an acting officer. *Id.* at 556 (discussing 29 U.S.C. § 153(d)). The "text of the respective statutes" "belied" any such argument. *Id.* at 555. The existence of an agency-specific statute means that "the FVRA would continue to provide an *alternative procedure* for temporarily occupying the office," such that "the President is permitted to elect between these two statutory alternatives." *Id.* at 556 (brackets and quotation marks omitted; emphasis in original). So too here. An interim appointment under 28 U.S.C. § 546 supplements, rather than supplants, the methods for designating an Acting U.S. Attorney under the FVRA. If there is a vacancy in the office of U.S. Attorney, and there is a first assistant, that person by default becomes the Acting U.S. Attorney under § 3345(a)(1). If the Attorney General or the district court invoke § 546, an interim U.S. Attorney displaces the Acting and serves until her term expires or until she is removed. If an interim U.S. Attorney's term expires or she is removed, the FVRA becomes available once again for an official to become the acting officer, subject to its time limits and other eligibility restrictions.

Defendants do not acknowledge *Hooks*. Instead, they suggest that, even if the FVRA is available for an acting official to perform the functions of the office of U.S. Attorney, the Court should strike out the express time limits the FVRA provides for acting service and replace them with the 120-day time period from

14

28 U.S.C. § 546(c). DB-39. But if, as this Court's decision in *Hooks* indicates, the FVRA is fully available even after an interim appointment under § 546 has expired, then all of it is available, including the distinct, specific time limits applicable to acting service for which the FVRA expressly provides. *See* 5 U.S.C. §§ 3346, 3349a.

Defendants' arguments misapply the specific-governs-the-general canon and are premised on a "conflict" between the FVRA and § 546 that does not exist. DB-39. There is no conflict here: under this Court's decision in *Hooks*, both the FVRA and § 546 are available mechanisms for designating an officer to temporarily serve as U.S. Attorney when the office is vacant. *See* 816 F.3d at 555-56. The specific-governs-the-general canon thus provides no support for defendants' strange suggestion that § 546 somehow becomes the more specific statute only if the Attorney General invokes it, but until the Attorney General does so, the more general FVRA continues to allow service as an acting officer (including by an earlier First Assistant U.S. Attorney prior to Ms. Chattah's interim appointment here, USB-9).

Nor would failing to engraft a 120-day time limit on the FVRA render § 546(d)'s method for district court appointment "surplusage." DB-39-40. Section 546(d) has done plenty of work in the many years in which the government's longstanding position has been that both the FVRA and § 546 are

15

available methods for dealing with U.S. Attorney vacancies. *See Temporary Filling of Vacancies in the Office of United States Attorney*, 27 Op. O.L.C. 149, 149-50 (2003). Both methods have pros and cons. For example, an interim U.S. Attorney appointed by the court under § 546(d) may serve indefinitely until the vacancy is filled, whereas an Acting U.S. Attorney is subject to the FVRA's express time limits. Neither of those distinct authorities supersedes or subsumes the other.

Defendants additionally declare that allowing Ms. Chattah to serve beyond § 546(c)(2)'s 120-day time limit "would perpetuate the very mischief Congress sought to stop when it enacted [§ 546's] limit in 2007." DB-40. But Ms. Chattah's appointment under § 546 did not exceed the 120-day time limit. And that has nothing to do with the FVRA, which is a different statute and serves a distinct, though overlapping, function. In short, Ms. Chattah's prior service as interim U.S. Attorney under § 546 did not prohibit her subsequent service under the FVRA.[2]

---

[2] Ms. Chattah was validly serving as Acting U.S. Attorney through at least November 16, 2025. And the FVRA permitted her to continue serving as Acting U.S. Attorney after that date because a new vacancy arose on July 28, 2025, when she resigned as interim U.S. Attorney. Since November 16, she has not held herself out as Acting U.S. Attorney out of an abundance of caution because the government stated in the district court that the time limit would expire on that date. *See* ER-115-116. However, she remains the Acting U.S. Attorney. In any event, the question of whether the district court erred in determining that

*Continued on next page.*

16

**II. The District Court Erred in Disqualifying Ms. Chattah From Supervising These Prosecutions Pursuant to the Attorney General's Delegation of Authority.**

Even if Ms. Chattah cannot serve as the Acting U.S. Attorney, she may continue to exercise prosecutorial and supervisory authority in the District of Nevada in her capacity as Special Attorney and First Assistant U.S. Attorney because the Attorney General expressly delegated that authority to her. *See* USB-31-56. Defendants do not dispute that the Attorney General has authority to conduct and supervise litigation in the District of Nevada, that she can delegate that authority, and that she has delegated that authority to Ms. Chattah. Instead, they argue that the FVRA's exclusivity provision, 5 U.S.C. § 3347, bars the Attorney General's delegation. DB-42-58. That is wrong under the plain text of the statute. And again, defendants' arguments largely sound in purpose and legislative history and are not persuasive in any event.

---

Ms. Chattah's service was invalid under the FVRA is not moot, because if the President nominates someone for the position of U.S. Attorney, that triggers a new time period in which Ms. Chattah may serve as the acting officer under the FVRA. *See* 5 U.S.C. § 3346(a)(2); *Dahle v. Kijakazi*, 62 F.4th 424, 427-29 (8th Cir. 2023) ("[T]he FVRA authorizes an individual who has ceased serving under § 3346(a)(1) to begin serving again under § 3346(a)(2) once a nomination is sent to the Senate."); *accord Rush v. Kijakazi*, 65 F.4th 114, 124 (4th Cir. 2023); *Seago v. O'Malley*, 91 F.4th 386, 392 (5th Cir. 2024); *Fortin v. Comm'r of Soc. Sec.*, 112 F.4th 411, 421-23 (6th Cir. 2024); *Gorecki v. Comm'r, Soc. Sec. Admin.*, 143 F.4th 1295, 1298-99 (11th Cir. 2025).

17

**A.    The FVRA does not prohibit the delegation of a vacant office's delegable duties to a non-acting officer.**

1.    The FVRA authorizes service as an "acting officer" and is generally the exclusive means for authorizing that type of service, but it does not purport to prohibit the exercise of lawfully delegated powers by non-acting officials. *See* USB-31-56. Section 3345 is titled "Acting officer" and provides for certain officials to "perform the functions and duties" of a vacant PAS office "temporarily in an *acting capacity* subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(1)-(3) (emphasis added). Section 3346 sets forth the time limits for "serving as an *acting officer*" under § 3345. *Id.* § 3346 (emphasis added). And § 3347 provides that §§ 3345 and 3346 are the "exclusive means for temporarily authorizing an *acting official* to perform the functions and duties" of a PAS office, unless (1) another statute expressly authorizes the designation of someone to serve in an "acting capacity" for a particular office, or (2) the President makes a recess appointment. *Id.* § 3347(a) (emphasis added).

An "acting officer" is one who can perform *all* the functions and duties of the vacant office without qualification—*i.e.*, the person can fully act as the absent officer. Indeed, that is why the person uses the title of the vacant office—*e.g.*, Acting U.S. Attorney—and why the title has significance. The FVRA is the exclusive means for temporarily authorizing service as an acting official. 5 U.S.C. § 3347(a).

18

Delegation is different. A delegation of authority occurs when one officer empowers another official to perform a function vested in that officer. Delegations are limited by the scope of the delegation; they are not necessarily limited to times of vacancies; they do not confer titles; and they are valid only if the function is delegable. *See, e.g.*, *United States v. Giordano*, 416 U.S. 505, 512-23 (1974). But a delegation cannot include any functions vested exclusively in the PAS official by statute or regulation.

Section 3347(b) reinforces the distinction between exercising authority delegated from an agency head and acting service. It confirms that general statutes that authorize an agency head to delegate her functions do *not* count under § 3347(a)(1) as office-specific statutes that authorize *acting* service. *See* 5 U.S.C. § 3347(b). What § 3347(a) establishes, in other words, is that general delegation statutes may not be used to "temporarily authoriz[e] an *acting official*" to perform *all* the functions and duties of a vacant PAS office. But that prohibition does not bar conferring on an official the delegable functions of a vacant PAS office.

The FVRA's remedial provision (§ 3348) further underscores that § 3347 does not prohibit the delegation of a vacant office's delegable duties because § 3348 does not provide a remedy for the exercise of such duties. Instead, § 3348 provides that when a PAS office is vacant, the exercise of non-delegable duties

19

by someone who is not validly serving under the FVRA or an office-specific statute that authorizes acting service "shall have no force or effect" and "may not be ratified." 5 U.S.C. § 3348(a), (d); *Gonzales*, 107 F.4th at 1072-73. Congress thereby ensured that only validly "acting" officials under the FVRA could perform both the delegable and non-delegable functions of a vacant office, but other officials could continue performing delegable functions.

This Court and the Federal Circuit have agreed with the government's plain-text interpretation of § 3347. *See Gonzales*, 107 F.4th at 1078 ("§ 3347(b) clarifies that general vesting-and-delegation statutes are not sufficient to authorize the department to choose the *acting officer* under the FVRA…") (emphasis added); *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1338 (Fed. Cir. 2022) (§ 3347(b) "provides that a statute granting the head of an agency 'general authority … to delegate [his] duties' does not exempt the agency from the FVRA") (quoting 5 U.S.C. § 3347(b)). And in *United States v. Ramirez*, the district court recognized that if an invalidly-serving Acting U.S. Attorney continued to supervise prosecutions in that role, his actions would violate § 3347, but determined that he could continue supervising cases as the First Assistant U.S. Attorney pursuant to delegated authority. *See United States v. Ramirez*, --- F. Supp. 3d ----, 2025 WL 3019248, at *18 (C.D. Cal. Oct. 28, 2025). The plain text of the FVRA does not prohibit the delegation of delegable

20

functions or provide a remedy for the unlawful exercise of delegable functions. Accordingly, the FVRA does not prohibit the delegation at issue here.

2. In arguing that the government is using DOJ's delegation statutes to "create" an acting officer, defendants steadfastly blur the legal differences between acting service and the exercise of delegable functions. DB-42. Defendants do not offer any explanation for the FVRA's use of different terms. Instead, defendants largely dismiss the statute's repeated use of the terms "acting officer," "acting official," and "acting capacity." Contrary to defendants' contention (DB-46), the distinction between an "acting officer" within the meaning of the FVRA and an individual exercising a vacant office's powers by delegation is not purely semantic. The FVRA was the first time in the history of the Vacancies Act that Congress used those terms, and in doing so Congress clarified the distinction between acting service and the mere performance of delegated functions. Since enacting the FVRA, Congress has continued to recognize that an official can exercise the functions of a vacant PAS office in an "acting *or* temporary capacity." Pub. L. No. 111-8, Div. D, Title VII, § 749, 123 Stat. 524, 693 (2009) (emphasis added). In other words, Congress recognizes that delegable duties of a vacant PAS office may be performed either in an acting capacity *or* in another "temporary" capacity—for instance, by delegation while the office is vacant.

21

Defendants nevertheless assert that the Attorney General's delegation to Ms. Chattah violates § 3347 of the FVRA. Section 3347 provides that the FVRA is generally the "exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office." 5 U.S.C. § 3347. It does not, however, prohibit delegating those powers to an individual in a non-acting capacity. *See* USB-40-41, 49. The Federal Circuit rejected a similar argument about § 3347(b) in *Arthrex*, explaining that the text of that provision "merely provides that a statute granting the head of an agency 'general authority … to delegate [his] duties' does not exempt the agency from the FVRA." 35 F.4th at 1338. In enacting the FVRA, Congress did not make it the "exclusive means for temporarily authorizing *[anyone]* to perform the functions and duties" of a vacant PAS office. 5 U.S.C. § 3347(a) (emphasis added).

Defendants point (DB-44-46) to this Court's observation in *Gonzales* that "a department head cannot rely on a general vesting-and-delegation statute to designate the acting officer in the event of a vacancy." 107 F.4th at 1078. That is correct, but it does not help defendants. A delegation of a vacant office's non-exclusive, delegable functions is not "designat[ing] the acting officer" or "choos[ing] the acting officer under the FVRA." *Id.* Thus, *Gonzales*'s observation that "agencies hypothetically could rely on their vesting-and-delegation authority, even if knowingly violating the FVRA, but that would

22

neither make their actions immediately lawful nor ensure their ratification," *id.* at 1077, simply reflects the fact that agencies may not use their general delegation statutes to "designate the acting officer" in the event of a vacancy, *id.* at 1078. Nothing in § 3347 or *Gonzales* prohibits an agency head from delegating a vacant office's functions to someone serving in a different role. And as explained, the Attorney General also delegated her own separate authority, in addition to the powers of a U.S. Attorney, to Ms. Chattah. USB-47.

Defendants next unsuccessfully attempt to distinguish the decisions that support the government's interpretation of the FVRA. DB-51-54. In very similar circumstances, the Federal Circuit in *Arthrex* held that the FVRA did not prohibit an officer's exercise of a delegable function pursuant to the wholesale delegation of the delegable functions of a vacant PAS office. 35 F.4th at 1335-38. That decision strongly supports the legality of Ms. Chattah's continued supervision of these prosecutions pursuant to the Attorney General's delegation of authority.

The district court dismissed *Arthrex* on the ground that the Federal Circuit erroneously applied the narrow definition of "'functions and duties'" from § 3348 to the entire statute, ER-30 n.8, and defendants adopt that view, DB-52-53. That is mistaken. In stating that "the FVRA applies" only to non-delegable duties, the Federal Circuit was not reasoning that the FVRA *as a whole* is

23

inapplicable where an agency head has delegable duties, which would be nonsensical and effectively render the statute inoperative since every agency head has such duties; rather, in context, the court was stating that the FVRA's remedial provision (§ 3348) only applies to non-delegable duties. *Arthrex*, 35 F.4th at 1335. That is how this Court understood *Arthrex*. *See Gonzales*, 107 F.4th at 1073.

As the government has explained, this Court and others have held that the FVRA does not invalidate the exercise of the delegable functions of a vacant office. *See, e.g.*, USB-37-40. Defendants respond with various attempts to distinguish those decisions, including that some involved § 3348 rather than § 3347, and that others involved different delegations. DB-51-54. But the cases addressing § 3348 are relevant to the interpretation of § 3347. There is no reason why Congress would have prohibited the exercise of otherwise lawfully delegated duties of a vacant office in § 3347 but then provided no remedy for violating that prohibition in § 3348. And this Court in *Gonzales*, 107 F.4th at 1078, expressly agreed with *Arthrex*'s analysis of § 3347(b). Similarly, the cases upholding delegations of authority reinforce that the FVRA does not prohibit the exercise of a vacant office's delegable functions.

Defendants rely on the Third Circuit's recent decision in *Giraud*, but that court got it wrong. Like defendants here, *Giraud* misunderstood § 3347 and

24

conflated the distinction between an acting official and a delegee, ignoring the textual point that an acting official is one who performs a vacant office's duties specifically "in an acting capacity." *See Giraud*, 2025 WL 3439752, at \*2 (quoting 5 U.S.C. § 3345(a)(1)). And despite acknowledging that *Arthrex* upheld the exercise of a vacant office's delegable duties by a non-acting official, the Third Circuit dismissed *Arthrex* for the same mistaken reasons as the defendants and the district court in this case. *See id.* at \*10-11.

3. Defendants' resort to policy-based arguments and legislative history fails. First, they argue that if all the duties of the office of U.S. Attorney are delegable, then there is no functional difference between someone serving as Acting U.S. Attorney and merely exercising the delegable duties of the office of U.S. Attorney, so § 3347 must prohibit such a delegation. DB-48-50. That is wrong on multiple grounds.

At the outset, there are indeed functional differences between the types of service: duties could be made non-delegable by regulation or statute in the future, and a delegee cannot use the title of acting officer. *See* USB-39-40. And a delegee may face litigation concerning the delegability of functions. *See* USB-53 n.12.[3] Indeed, with respect to the functions of the office of U.S. Attorney

---

[3] *Cf.* Justice Manual §§ 9-11.120 (requiring "approval of the responsible United States Attorney" for re-submission of charges before a grand jury);

*Continued on next page.*

25

specifically, this Court in *United States v. Weyhrauch* recognized that 28 U.S.C. § 515 (and 28 C.F.R. § 0.13(a)) "allow the Attorney General to give authority otherwise restricted to United States Attorneys to certain other attorneys, considerably expanding who may undertake those tasks." 544 F.3d 969, 974 (9th Cir. 2008) (per curiam). However, *Weyhrauch* also illustrates that there may be limits on the delegability of a U.S. Attorney's functions. *See id.* (stating that an attorney specially appointed under 28 U.S.C. § 515, "without more," may not certify an appeal under 18 U.S.C. § 3731, which "requires that the United States Attorney personally certify an interlocutory appeal").

But even if there were no functional differences in the context of the particular office of U.S. Attorney, that would not justify an atextual interpretation of the FVRA, which applies to *all* Executive Branch PAS officers unless specifically excluded. 5 U.S.C. §§ 101, 105, 3345(a). The difference between acting service and exercising delegated functions would still have significance for many other PAS officials under the FVRA. For example, because the power to appoint inferior officers is a non-delegable function constitutionally vested in an agency head, *Lucia v. Securities and Exchange*

---

9-11.140 (requiring "prior approval of the United States Attorney" for a forthwith subpoena); 9-11.150 (requiring U.S. Attorney approval, or alternatively Assistant Attorney General approval, for subpoenas to a target of an investigation).

*Commission*, 585 U.S. 237, 244 (2018), an Acting Attorney General may appoint inferior officers under the FVRA, but an individual who has merely been delegated the Attorney General's powers under 28 U.S.C. § 510 may not; it would make no sense, however, to leap from that proposition to defendants' conclusion that the FVRA also atextually preempts delegations that are valid under § 510. And in all events, this Court and others have rejected similar functional arguments regarding the FVRA on multiple occasions, recognizing that such complaints are properly directed at Congress, not the courts. *See Gonzales*, 107 F.4th at 1080; *Arthrex*, 35 F.4th at 1337; *Kajmowicz v. Whitaker*, 42 F.4th 138, 151 (3d Cir. 2022); *Ramirez*, 2025 WL 3019248, at *19.

Finally, defendants rely heavily on the legislative history. "[L]egislative history is not the law." *Azar v. Allina Health Servs.*, 587 U.S. 566, 579 (2019) (quotation marks omitted). In any event, the Senate Report adopted the same interpretation of § 3347(b) that the government advances: "any statutory provision providing general authority to the head of an executive agency to delegate or reassign duties within that executive agency is not a statutory provision that qualifies within the exception contained in section [3347(a)(1)] for existing statutes that provide for the filling of a vacancy in a specific office." S. Rep. No. 105-250 at 17. The Senate Report and other legislative history criticized DOJ's view that its general delegation statutes "exempte[d]" DOJ

27

from the Vacancies Act and authorized the "designation of acting officials" outside of that statute. *See id.* at 3, 4, 5, 17. The report explained that § 3347 forecloses the argument that an agency's delegation statutes "rather than the Vacancies Act, apply to vacancies" in the agency. *Id.* at 17.

At the same time, the Senate Report expressly recognized that when there is no validly serving acting officer, "[d]elegable functions of the office could still be performed by other officers or employees." *Id.* at 18; *see id.* at 31, 36 (additional and minority views emphasizing that FVRA's remedies are limited to "nondelegable duties" and the exercise of delegable duties "would continue" so that a vacancy "does not cause an unintended shutdown" of the agency).

Defendants suggest (DB-55-56) that this language means an agency head could divide delegable functions among several individuals, but that the FVRA prohibits the delegation of *all* of a vacant office's duties to a *single* person. The Third Circuit in *Giraud* likewise indicated that "it is possible a more dispersed delegation of authority might not create a de facto U.S. Attorney and therefore might not run afoul of the FVRA's exclusivity provision." 2025 WL 3439752, at *11. That proposed rule yields odd results and would not eliminate the circumvention concern driving it. For example, if a vacant PAS office has one non-delegable function, then the FVRA would not prohibit the delegation of the rest of the office's functions. Or, if a vacant PAS office's functions were

28

delegated to two people, then the FVRA would not prohibit the delegation. Indeed, the district court acknowledged—and defendants do not dispute—that the FVRA does not prohibit the Attorney General from delegating to Assistant U.S. Attorneys (AUSAs) some prosecutorial authority that overlaps with the office of U.S. Attorney. ER-34. But if that is true, it is impossible to see why Ms. Chattah cannot be delegated that same authority.

At most, the legislative history includes "competing narratives," and it cannot alter the plain language of the statute in any event. *Arthrex*, 35 F.4th at 1336-37. Regardless of what prompted Congress to act, when Congress enacted the FVRA, it cemented the distinction between acting officers and mere delegees. Indeed, the Senate Report notes that GAO repeatedly disapproved of the practice under the Vacancies Act of agencies relying on general delegation statutes to "designat[e]" acting officials, S. Rep. No. 105-250 at 3, but GAO has consistently approved of the practice under the FVRA of non-acting officials exercising the delegable functions of a vacant PAS office without using the acting title, *see* USB-36-37.

4. Contrary to defendants' assertion (DB-49), the Attorney General's ability to delegate functions of a U.S. Attorney does not render the FVRA, 28 U.S.C. § 541, and 28 U.S.C. § 546 superfluous. As discussed, there are formal as well as practical distinctions between service as a delegee and service as a

29

Senate-confirmed, interim, or Acting U.S. Attorney. A delegee cannot use the title of U.S. Attorney or exercise any exclusive, non-delegable functions of that office (and may face litigation regarding the delegability of functions), and must actually be delegated the relevant functions. Moreover, the FVRA applies across the Executive Branch, so it cannot be interpreted based on the result of its application to the office of U.S. Attorney. As for the Executive Branch supposedly having no reason to use any mechanism other than delegation, DB-43, that is belied by the confirmation of 16 U.S. Attorneys in October, https://www.senate.gov/pagelayout/legislative/one_item_and_teasers/nom_confc.htm, other U.S. Attorney nominations that remain pending, and the Executive Branch's actions in this very case to ensure that Ms. Chattah could serve as Acting U.S. Attorney.

5. Finally, defendants (DB-56-58) largely dismiss the widespread practice of principal deputies and first assistants performing the delegable functions of a vacant PAS office in a non-acting capacity.[4] Nothing in Congress's enactment of the FVRA casts doubt on that routine practice, and as the government

---

[4] As additional examples, *compare, e.g.*, the Criminal Division's briefs under Nicole Argentieri, Answering Brief, 2023 WL 5747521 ("Acting Assistant Attorney General"), *with* Response Brief, 2024 WL 2300635 ("Principal Deputy Assistant Attorney General"), and the Tax Division's briefs under Caroline Ciraolo, https://www.justice.gov/osg/brief/sperrazza-v-united-states ("Acting Assistant Attorney General"), *with* https://www.justice.gov/osg/brief/baras-v-united-states ("Principal Deputy Assistant Attorney General").

explained, all three branches of government have consistently approved of the practice. USB-22-23, 29-30. Adopting defendants' view would upset this important tool that ensures the continued functioning of the Executive Branch when acting service is not available.

### B. Ms. Chattah's designation does not violate the Appointments Clause.

Defendants contend (DB-58-71) that U.S. Attorneys, including "temporary" U.S. Attorneys, are principal officers requiring Senate confirmation under the Constitution's Appointments Clause. Recognizing that this Court has already determined that U.S. Attorneys are inferior officers, *see United States v. Gantt*, 194 F.3d 987, 999 (9th Cir. 1999), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008), defendants nevertheless argue that Ms. Chattah's service runs afoul of the Appointments Clause. Their arguments lack merit.

1. "[T]he Appointments Clause mandates that the President appoint the principal 'Officers of the United States,' subject to 'the Advice and Consent of the Senate.'" *Duenas v. Garland*, 78 F.4th 1069, 1072 (9th Cir. 2023) (quoting U.S. CONST. art. II, § 2, cl. 2). "Principal officers include cabinet heads and other high-level appointees." *Id.* The Appointments Clause "also allows Congress to vest the appointment of 'inferior' officers, who still exercise significant authority but do not need Senate confirmation, in 'Heads of

31

Departments.'" *Id.* (quoting U.S. CONST. art. II, § 2, cl. 2); *see also United States v. Smith*, 962 F.3d 755, 763 (4th Cir. 2020) ("Principal officers must be appointed by the President with the advice and consent of the Senate. Inferior officers may be appointed in the same manner, but doing so is not constitutionally required.") (citations omitted). "When distinguishing between these types of officers, we mainly look at whether the officer's work is directed and supervised at some level by other officers appointed by the President with the Senate's consent." *Duenas*, 78 F.4th at 1073 (quotation marks omitted); *see Edmond v. United States*, 520 U.S. 651, 663 (1997).

U.S. Attorneys are themselves inferior officers. *See Myers v. United States*, 272 U.S. 52, 159 (1926) (referring to "a United States attorney" as "an inferior officer"); *Gantt*, 194 F.3d at 999-1000 ("we conclude that United States Attorneys are inferior officers"); *United States v. Hilario*, 218 F.3d 19, 24-26 (1st Cir. 2000) (concluding that "United States Attorneys are inferior officers"). That means that interim U.S. Attorneys and Acting U.S. Attorneys are at most inferior officers, too. *See, e.g.*, *Hilario*, 218 F.3d at 28-29.

But even were that not so, an Acting U.S. Attorney "under the FVRA is 'only charged with the performance of the duty of the superior for a limited time and under special and temporary conditions.'" *Smith*, 962 F.3d at 764 (quoting *United States v. Eaton*, 169 U.S. 331, 343 (1898)). Even "*acting* heads of

32

departments"—such as an Acting Attorney General—"are not principal officers because of the temporary nature of the office." *Id.* at 765 (citing *Edmond*, 520 U.S. at 661; *Morrison v. Olson*, 487 U.S. 654, 672-73 (1988)). Accordingly, it was valid for Congress to authorize the Attorney General, as head of the Department of Justice, *see Duenas*, 78 F.4th at 1073, to appoint Ms. Chattah under 28 U.S.C. § 546(a) and later to designate Ms. Chattah as First Assistant U.S. Attorney and thereby make her Acting U.S. Attorney under the FVRA.

2. Notwithstanding this Court's holding in *Gantt* that U.S. Attorneys are inferior officers, defendants argue (DB-63-64) that the Supreme Court impliedly overruled *Gantt* in *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021). *Arthrex* held that Administrative Patent Judges in the Department of Commerce were principal officers because they possessed unreviewable authority to make decisions on behalf of the agency. *See* 594 U.S. at 23. That is decidedly not the case for U.S. Attorneys, whose decisions are supervised and can be reversed by the Attorney General and the Deputy Attorney General. In any event, *Arthrex* reaffirmed that "'whether one is an "inferior" officer depends on whether he has a superior' other than the President." *Id.* at 13 (brackets omitted) (quoting *Edmond v. United States*, 520 U.S. 651, 662 (1997)). Unlike the members of the Patent Trial and Appeal Board at issue in *Arthrex*, U.S. Attorneys are "'directed and supervised at some level by others who were appointed by Presidential

33

nomination with the advice and consent of the Senate'"—namely, the Attorney General—and therefore qualify as inferior officers under the principles on which *Arthrex* itself relied. *Id.* (quoting *Edmond*, 520 U.S. at 663); *see* 28 U.S.C. § 519 ("[T]he Attorney General … shall direct all United States attorneys … in the discharge of their respective duties."). Defendants' argument also overlooks *Myers*, in which the Supreme Court explicitly observed almost 100 years ago that U.S. Attorneys are inferior officers. *See Myers*, 272 U.S. at 159.

Defendants' claim that an "indefinitely serving 'temporary' appointee" is a principal officer fares no better. DB-64-66. As explained, U.S. Attorneys are inferior officers and thus an acting or temporary U.S. Attorney is likewise at most an inferior officer. Any service by Ms. Chattah as Acting U.S. Attorney under the FVRA is limited to the time limits contained in that statute. *See* 5 U.S.C. § 3346. When the FVRA's time limit on acting service expires—or if Ms. Chattah is otherwise not validly serving as Acting U.S. Attorney under the FVRA—she reverts back to serving as First Assistant U.S. Attorney, where she may exercise delegated powers, but *not* in an acting-officer capacity, as explained above.

Defendants cite *Rop v. Fed. Hous. Fin. Agency*, 50 F.4th 562 (6th Cir. 2022), but that decision supports the government's position. There, in addressing a statute that specifically provides for an Acting Director to take on the

34

responsibilities of the Director of the Federal Housing Finance Agency, the Sixth Circuit found "no violation of the Appointments Clause nor any reason to read an explicit time limit on acting officials into the constitutional or statutory schemes." *Id.* at 571. Here, the FVRA prescribes a specific time limit for acting officials to serve. *Rop* further recognizes that "[a]cting officials … are not 'appointed.'" *Id.* at 573. An acting officer under the FVRA "performs the functions and duties of the office temporarily in an acting capacity," 5 U.S.C. § 3345(a)(1); she is not "appointed" as such. *See Fortin v. Comm'r of Soc. Sec.*, 112 F.4th 411, 420-21 (6th Cir. 2024).

3. In an effort to suggest that constitutional concerns persist even if U.S. Attorneys are inferior officers, defendants try to bootstrap their claimed violations of the FVRA and § 546 into a violation of the Appointments Clause. According to defendants (DB-66-68), any appointment not made in compliance with those statutes is not authorized "by Law" and thus automatically violates the Appointments Clause. But not every action "in excess of … statutory authority is *ipso facto* in violation of the Constitution." *Dalton v. Specter*, 511 U.S. 462, 472 (1994). As the Supreme Court has observed, "a mere matter of statutory construction" does not rise to an Appointments Clause violation. *Ryder v. United States*, 515 U.S. 177, 181 (1995) (quotation marks omitted); *see id.* (distinguishing constitutional claim that an inferior officer had not been

35

appointed by the President, a court of law, or department head from claim that a judge had been appointed to temporarily fill a vacancy in violation of a statute). Yet on defendants' theory, every statutory violation would become a constitutional violation since any appointment in violation of a statute would not be authorized "by Law."

Defendants' reliance on *United States v. Comey*, --- F. Supp. 3d ----, 2025 WL 3266932 (E.D. Va. Nov. 24, 2025), is unavailing. There, the district court found that Lindsay Halligan's appointment as interim U.S. Attorney under § 546 violated the statute and therefore she had not been appointed "through a process Congress has authorized by statute." *Comey*, 2025 WL 3266932, at *10 (quotation marks omitted). Here, the Attorney General relied on express statutory authority to appoint Ms. Chattah to her position of Special Attorney and additionally designated Ms. Chattah to the First Assistant supervisory position in the District of Nevada under the statutes and regulations governing the Department of Justice, including 28 U.S.C. §§ 509, 510, and 515, and 28 C.F.R. § 0.137(b). The Supreme Court has already held that those statutes—specifically citing 28 U.S.C. §§ 509, 510, 515, and 533—"vest" in the Attorney General "the power to appoint subordinate officers to assist him in the discharge of his duties." *United States v. Nixon*, 418 U.S. 683, 694 (1974). Thus, even if her

36

acting service under the FVRA is invalid, Ms. Chattah was validly appointed as a Special Attorney through a process Congress authorized by statute.

As a last resort, defendants appear to advance a novel clear-statement requirement for the Appointments Clause. DB-69-70. That argument lacks support in any precedent or caselaw government counsel are aware of, and certainly not in the authorities defendants cite. *Weiss v. United States*, 510 U.S. 163, 170-71 (1994), cuts against defendants' arguments—the question there was whether a military officer, already subject to Senate confirmation, was required by statute to be nominated and confirmed a second time to serve as a military judge. *Id.* at 170 ("Petitioners contend that the position of military judge is so different from other positions to which an officer may be assigned that either Congress has, by implication, required a second appointment, or the Appointments Clause, by constitutional command, requires one."). The Court held that the Appointments Clause was not triggered "by implication," and that congressional silence could not be used to infer that a military judge constituted a "separate office" that required separate confirmation. *Id.* at 170-71. A military officer can be designated as a "lawyer or [a] pilot," and moving from one job to the other does not mean entering a new "office" that requires a second confirmation. *Id.* at 171.

37

Justice Thomas's concurring opinion in *Trump v. United States*, 603 U.S. 593, 643 (2024), is no better for defendants' position. Justice Thomas—in a separate opinion joined by no other Justice—expressed doubt that the office of "Special Counsel" in the Department of Justice "has been 'established by Law,' as the Constitution requires." *Trump*, 603 U.S. at 643 (Thomas, J., concurring) (quoting the Appointments Clause); *see also id.* at 645. He noted that the statutes relied on by the Attorney General, "28 U.S.C. §§ 509, 510, 515, 533," are "statutes of a general nature," and that "[n]one … appears to create an office for the Special Counsel, and especially not with the clarity typical of past statutes used for that purpose." 603 U.S. at 647-48 (citing the statute that "created an office for a 'special counsel' to investigate the Teapot Dome Scandal"); *cf. id.* at 649 (acknowledging the Court's statement in *Nixon* referring "to the cited statutes as supporting the appointment of the Special Prosecutor"). But those concerns have little to do with the Attorney General's ability to appoint Department of Justice lawyers, assign them to any of the 93 U.S. Attorneys' Offices around the country, and designate some of them as "First Assistants" in those offices. If Ms. Chattah can be appointed a "Special Attorney" by the Attorney General and brought into the Department of Justice, she can also be designated by the Attorney General to a supervisory position in the Department, including a role like First Assistant in a U.S. Attorney's Office or Principal

Deputy in a Main DOJ component. And if that additional role makes her an "inferior officer" under the Appointments Clause—which is not at all clear, *cf. Weiss*, 510 U.S. at 170-71—it is at least clear that the Clause's requirements are satisfied, because it was the Attorney General who exercised her lawful authority to put Ms. Chattah there.

Finally, adopting defendants' unsupported Appointments Clause theory to resolve a constitutional concern (as defendants argue this Court should do) would only produce other constitutional problems in turn. 28 U.S.C. § 546(d) provides that the district court may appoint a U.S. Attorney in certain circumstances, and that person may serve "until the vacancy is filled." *See Hilario*, 218 F.3d at 24 ("[S]ection 546(d) does not limit the duration of the service of court-appointed interim United States Attorneys."). Defendants themselves urged the district court to invoke that statute. *See* ER-254-255. But if U.S. Attorneys—or indefinitely serving "temporary" U.S. Attorneys—are indeed principal officers, as defendants now contend, then they can only be appointed by the President with Senate confirmation, and § 546(d) would be unconstitutional. *See Gantt*, 194 F.3d at 999.

## C. The Attorney General's order appointing Ms. Chattah and delegating authority to her is valid.

The Attorney General properly appointed Ms. Chattah as a Special Attorney and delegated authority to her. *See* USB-10, 33-34; ER-187.

39

Defendants' resort (DB-71-74) to disputing the specifics of those actions is unavailing.

1. Defendants' reliance on 28 U.S.C. § 543 is misplaced. This Court has recognized that "Sections 543 and 515 are considered independent statutory authorizations. Section 543 authorizes the appointment of attorneys to assist the U.S. Attorney, while section 515 authorizes the appointment of attorneys to assist the Attorney General." *United States v. Plesinski*, 912 F.2d 1033, 1037 n.5 (9th Cir. 1990) (citing *United States v. Hawthorne*, 626 F.2d 87, 90 (9th Cir. 1980) (per curiam)). As already explained, the Supreme Court has held, citing 28 U.S.C. §§ 509, 510, 515, and 533, that those statutes "vest" in the Attorney General "the power to appoint subordinate officers to assist him in the discharge of his duties." *Nixon*, 418 U.S. at 694. Ms. Chattah was properly appointed under that statutory framework.

2. Defendants next complain (DB-73-74) that the Attorney General's order delegating authority to Ms. Chattah was insufficiently specific. The Attorney General's delegation was valid, and defendants cite no authority establishing otherwise. *Cf. Little v. United States*, 524 F.2d 335, 336 (8th Cir. 1975) (per curiam) (special attorneys may conduct grand-jury proceedings and sign indictments, even if the "letter of authorization" from Attorney General "contained no express grant of authority to sign indictments"). It is well-settled

40

that there is no requirement that the Attorney General limit an appointment under § 515 to a specific case or cases. *See, e.g.*, *United States v. Prueitt*, 540 F.2d 995, 1003 (9th Cir. 1976); *In re Persico*, 522 F.2d 41, 62 (2d Cir. 1975); *United States v. Wrigley*, 520 F.2d 362, 369 (8th Cir. 1975). Regardless, Ms. Chattah's § 515 authority is limited to legal proceedings in the District of Nevada. ER-192. Moreover, the Attorney General's order was not limited to § 515; it was based on authority "including" § 515 and specifically mentioned §§ 509 and 510 as well. ER-187; USB-32-34.

### D. Ms. Chattah can lead the U.S. Attorney's Office as First Assistant U.S. Attorney.

Lastly, this Court should reject defendants' assertion (DB-74-77) that Ms. Chattah cannot supervise their prosecutions as the First Assistant U.S. Attorney.

Ms. Chattah was appointed Special Attorney and designated as the First Assistant U.S. Attorney for the District of Nevada. ER-187. In that capacity, she may supervise criminal prosecutions in Nevada pursuant to delegated authority, as already explained. ER-171-174; USB-31-56. Her ability to exercise that delegated authority does not depend on her designation as First Assistant U.S. Attorney, though of course, as defendants recognize (DB-76), First Assistant U.S. Attorneys may be delegated supervisory responsibilities. The government's brief simply refers to her as "First Assistant U.S. Attorney"

41

because that is her correct title if she is not validly serving as Acting U.S. Attorney.[5]

First Assistant U.S. Attorneys can perform non-exclusive duties of U.S. Attorneys, such as supervising prosecutions. *See* USB-36 n.8; *see, e.g.*, *United States v. Diaz-Rosado*, 725 F. App'x 847, 854 (11th Cir. 2018) (observing that First Assistant U.S. Attorney had "supervisory authority" over attorney who prosecuted defendant). As the district court in *Ramirez* correctly determined, there is "no basis to preclude [Ms. Chattah] from performing the lawful duties of a FAUSA. And in *that* capacity, [s]he could supervise these prosecutions." *Ramirez*, 2025 WL 3019248, at *18. As explained, executive officials routinely carry out the functions of a vacant PAS office pursuant to a delegation of authority where no acting official is available. USB-34-36; *supra* 30-31 & n.4.

Although defendants complain that the government should not be allowed to delegate non-exclusive duties of U.S. Attorneys to First Assistant U.S. Attorneys, that result "stems from the power of the Attorney General to delegate authority." *Ramirez*, 2025 WL 3019248, at *19. And "concerns regarding the current ability of department heads to delegate authority … are concerns of

---

[5] The government agrees that "First Assistant U.S. Attorney" is a designation, not a statutory office. *See* 28 C.F.R. § 0.137(b).

42

undesirable policy consequences" that are for Congress to address, not the courts. *Id.* (quoting *Gonzales*, 107 F.4th at 1080).

## III. At All Events, Dismissal of the Indictments Is Not Warranted.

As explained in the government's motion to dismiss, this Court should dismiss defendants' cross-appeals for lack of jurisdiction. *See* Mot. to Dismiss (Oct. 27, 2025); *Giraud*, 2025 WL 3439752, at *3 n.2. But even if this Court were to reach the merits of defendants' claims, defendants cannot show that dismissing their indictments is the appropriate remedy for any invalidity in Ms. Chattah's service. Regardless of whether Ms. Chattah may validly supervise defendants' prosecutions, the district court correctly denied defendants' request to dismiss the indictments.

### A. Defendants' indictments are valid.

As the district court correctly determined—and as defendants do not contest—each indictment was returned by a properly constituted grand jury, contained the essential facts constituting the offenses charged, and was signed by an Assistant U.S. Attorney, an authorized attorney for the government. ER-35-36.

Even if Ms. Chattah's service is unlawful, this Court in *Gantt* has rejected the contention that a defect in a U.S. Attorney's service necessarily renders a defendant's indictment invalid, stating that a constitutional "infirmity" in a U.S.

Attorney's appointment under § 546(d) "would not affect the validity of indictments … as indictments need only be signed by an attorney for the government." *Gantt*, 194 F.3d at 998 (quotation marks omitted). Many other courts agree. *See Ramirez*, 2025 WL 3019248, at *16 (collecting cases); ER-35-36 (same). Accordingly, defendants' indictments are valid.

### B.    Dismissal under the FVRA is inappropriate.

Even assuming that Ms. Chattah is improperly serving as Acting U.S. Attorney, defendants' indictments remain valid. Every court to consider the issue has held that even where an Acting U.S. Attorney is unlawfully serving, it would not be appropriate to dismiss indictments obtained under that individual's invalid tenure. ER-33-37; *Ramirez*, 2025 WL 3019248, at *12-17; *United States v. Giraud*, 795 F. Supp. 3d 560, 604-06 (D.N.J. 2025).

1. Defendants are correct that the FVRA voids an invalidly-serving acting officer's exercise of an exclusive, non-delegable function. *See* 5 U.S.C. § 3348(d). But defendants stop short of actually contending that authorizing the prosecution of a criminal offense is an exclusive and non-delegable function of a U.S. Attorney. That is because they cannot realistically make that claim. "[T]he power to prosecute is not exclusive to the U.S. Attorney." ER-34. Nothing in 28 U.S.C. § 547 or any other provision of law suggests otherwise. Moreover, all the functions of a U.S. Attorney, including the duty to prosecute

44

offenses against the United States, are vested in the Attorney General, 28 U.S.C. § 509; *see id.* § 515; Congress also vested the Attorney General with independent authority to conduct and supervise litigation involving the United States, *id.* §§ 516-519. And the Attorney General may delegate those duties to other officers and employees of the Department of Justice. *Id.* § 510.

Here, the "indictments did not result from duties or functions that *only* [Ms. Chattah] could have performed"; they were obtained and signed by Assistant U.S. Attorneys exercising powers delegated from the Attorney General. *Ramirez*, 2025 WL 3019248, at *14; *see* ER-34-35. Furthermore, "approving or authorizing the [defendants'] indictments … are acts that can be performed by others and are delegable duties." *Ramirez*, 2025 WL 3019248, at *14. And contrary to defendants' assertion (DB-79), Ms. Chattah did not have the "ultimate authority" to decide whether to authorize the indictments at issue here. Rather, as defendants acknowledge, a U.S. Attorney's authority "is exercised under the supervision and direction of the Attorney General and his/her delegates." Justice Manual § 9-2.001; *see* 28 U.S.C. § 519. Put simply, authorizing criminal prosecutions is not an exclusive, non-delegable duty of a U.S. Attorney.

2. The FVRA does not require dismissal for an invalidly-serving acting officer's exercise of a *delegable* function. The FVRA provides that where an

45

acting official is invalidly serving, only actions taken in the performance of exclusive, non-delegable duties "have no force or effect." 5 U.S.C. § 3348(d)(1). The ratification bar, § 3348(d)(2), provides that the actions described in (d)(1) "may not be ratified." *Id.* § 3348(d)(2). Thus, as this Court has recognized, the ratification bar "applies only to those duties of an officer that are nondelegable." *Gonzales*, 107 F.4th at 1073; *see id.* at 1077 ("[N]ot every violation of the FVRA will result in the invalidation of the challenged agency action.") (quotation marks omitted). As explained, the FVRA does not provide a remedy for the exercise of a delegable function, nor does it prohibit delegees from exercising the delegable duties of a vacant office. *See* USB-34-47; *supra* at 17-21. In any event, the "drastic" and "disfavored" remedy of dismissal would be particularly inappropriate here. *See United States v. Rogers*, 751 F.2d 1074, 1076 (9th Cir. 1985).

First, dismissal would be premature. To the extent any of Ms. Chattah's actions may require ratification, that ratification may yet occur, reinforcing that defendants' claim should be raised on appeal from final judgment, not on an interlocutory basis. *See* Mot. to Dismiss 5-11, 16. Second, any defect in Ms. Chattah's acting service is harmless. *Gonzales* expressly contemplated that "the agency may raise defenses based on harmless error … to overcome the consequences of particular FVRA violations." 107 F.4th at 1077. As the district

46

court determined, any invalidity in Ms. Chattah's service did not affect the validity of defendants' indictments. ER-33-36. Indeed, in *Gantt*, this Court explained that even a *constitutional* infirmity in the U.S. Attorney's service would not invalidate indictments signed by Assistant U.S. Attorneys. 194 F.3d at 998. There is no reason why a statutory FVRA violation would mandate a more extreme remedy, especially since the FVRA does not even provide a remedy for the exercise of delegable duties, *see* USB-41-42.

Moreover, as the district court correctly found, defendants cannot establish that any invalidity in Ms. Chattah's service prejudiced them. *See* ER-36-37; *Smith*, 962 F.3d at 765-66 ("Smith has cited no authority—nor could he— for his root-to-branch theory that as long as Whitaker's tenure as Acting Attorney General was unlawful, then the integrity of his federal prosecution … was *necessarily* marred. Rather, Smith must show that Whitaker's tenure somehow affected his proceeding and prejudiced him in some way. Yet Smith can do no such thing.") (citations omitted). Defendants do not dispute that they were charged pursuant to indictments issued by a properly constituted grand jury or that the Assistant U.S. Attorneys prosecuting their cases have authority to do so. "Everything before the court indicates that the prosecution's substantive actions have been performed by lawfully appointed AUSAs. There has been no

47

showing of a need for dismissal, much less the drastic remedy of dismissal with prejudice." *Ramirez*, 2025 WL 3019248, at *17 (quotation marks omitted).

> **C.** **Dismissal under *United States v. Bundy* is inappropriate.**

Although a district court may dismiss an indictment for government misconduct where there is a "serious due-process violation" or where dismissal is warranted under its supervisory powers, *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020), neither circumstance is present here. *Contra* DB-82-87.

1. Defendants have not shown any violation of their due process rights, much less conduct that is "so grossly shocking and outrageous as to violate the universal sense of justice." *Bundy*, 968 F.3d at 1030 (quotation marks omitted). As the district court correctly found, defendants "have received all the process they are due – they have been charged by a properly constituted grand jury and their indictments have been signed by authorized attorneys for the government." ER-36. Defendants do not dispute that the Assistant U.S. Attorneys handling their cases were properly appointed and have the authority to prosecute them. And Ms. Chattah's appointment as a Special Attorney and designation as First Assistant U.S. Attorney authorized her to participate in defendants' prosecutions irrespective of whether her service as Acting U.S. Attorney was valid. *See* USB-37-56; *see, e.g.*, *supra* at 17-43. Regardless, as explained, defendants cannot demonstrate that Ms. Chattah's supervision prejudiced them.

48

2. Similarly, the district court did not abuse its discretion in determining that dismissal was unwarranted under courts' supervisory authority. *Cf. Bundy*, 968 F.3d at 1031 (requiring both "flagrant misbehavior" and "substantial prejudice"). The district court explained that in *Bundy*, the Court found dismissal was appropriate because "government misconduct directly affected the fairness of the criminal prosecution," but "no such violation has occurred in these cases." ER-37.

Indeed, defendants can point to no controlling authority establishing that Ms. Chattah's installation as Acting U.S. Attorney was unlawful, much less that it rises to the level of misconduct. Defendants complain that the government has taken similar steps to install Acting U.S. Attorneys in several other districts. But when Ms. Chattah became the Acting U.S. Attorney on July 28, 2025, "no court had disapproved of the practice." *Ramirez*, 2025 WL 3019248, at *17. There is "no reason to impose *Bundy*'s 'drastic remedy' of dismissal with prejudice, or dismissal without prejudice, merely because the government did not concede and chose to resist efforts to disqualify" Ms. Chattah. *Id.* The Third Circuit in *Giraud* did not dismiss defendants' indictments, notwithstanding its conclusion that an Acting U.S. Attorney's service violated the FVRA. 2025 WL 3439752, at *12. And none of the potential "risks" invoked by defendants (DB-85-86) "warrants dismissal of the indictments under the Court's supervisory

49

authority if they have not affected the fairness of Defendants' prosecutions." ER-37 n.13.

Additionally, *Bundy* made clear that the court must find no lesser remedy available before dismissal. 968 F.3d at 1031. Here, the district court found that the lesser remedy of disqualification was available. *See* ER-37. Defendants assert, without further explanation, that disqualification is not sufficiently deterrent. DB-86. But until controlling authority conclusively resolves the issue, the government is well within its right to continue defending Ms. Chattah's ability to supervise prosecutions under the FVRA and applicable delegation statutes.

### D. Dismissal under *Lucia v. SEC* is inappropriate.

Contrary to defendants' contention (DB-87-89), *Lucia* does not establish that the remedy for Ms. Chattah's invalid service is dismissal.

Under *Lucia*, "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." 585 U.S. at 251 (quotation marks omitted). But *Lucia* did not address the appropriate remedy where a *prosecutor* is improperly appointed, as opposed to the adjudicating official. Furthermore, any relief under *Lucia* is limited to the context of a constitutional violation; the decision does not contemplate a remedy for a violation of the FVRA or other statutes.

50

As the district court determined, the non-binding district court decision in *United States v. Trump*, 740 F. Supp. 3d 1245, 1302-04 (S.D. Fla. 2024), is readily distinguishable. ER-34. *Trump* relied on *Lucia* to invalidate a special counsel's *ultra vires* acts. *See Trump*, 740 F. Supp. 3d at 1303. However, the *Trump* indictment was signed only by the special counsel, whereas here, the indictments were signed by Assistant U.S. Attorneys, who can continue to validly prosecute the cases. ER-33-36. Defendants nevertheless assert that Ms. Chattah was "invalidly leading the office." DB-89. But as explained above, even if that conclusion is correct, it does not warrant dismissal, because courts have consistently rejected the claim that invalidity in a U.S. Attorney's service requires dismissal of an indictment absent a showing of prejudice.

The recent district court decision in *Comey* is likewise distinguishable. There, the district court held that Lindsey Halligan was unlawfully serving as interim U.S. Attorney under § 546 and the Appointments Clause. *Comey*, 2025 WL 3266932, at *5-10. But *Comey* did not hold that dismissal is *always* warranted in those circumstances. Rather, the district court found that dismissal was appropriate to remedy the Appointments Clause violation because Ms. Halligan was not lawfully exercising executive power when she appeared alone before the grand jury to obtain the indictment. *Id.* at *10-11. Here, by contrast, even if there were a defect in Ms. Chattah's acting service under the FVRA, she

51

had a valid underlying appointment and authorization, having been appointed as a Special Attorney and designated as the First Assistant on July 28, 2025, before the indictments in these cases were obtained. USB-10-11. Moreover, as already discussed, it was line Assistant U.S. Attorneys, not Ms. Chattah, who obtained and signed defendants' indictments, and defendants have not challenged those Assistant U.S. Attorneys' authority. Any invalidity in Ms. Chattah's service—even constitutional invalidity—therefore does not warrant dismissal. *See Gantt*, 194 F.3d at 998.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order disqualifying Ms. Chattah and affirm the district court's order declining to dismiss the indictments.

Respectfully submitted,

PAMELA J. BONDI
   Attorney General

TODD BLANCHE
   Deputy Attorney General

STANLEY WOODWARD
   Associate Attorney General

HENRY C. WHITAKER
   Counselor to the Attorney General

MATTHEW R. GALEOTTI
   Acting Assistant Attorney General

SIGAL CHATTAH
   First Assistant U.S. Attorney

JOSH A. GOLDFOOT
   Deputy Assistant Attorney General

ADAM FLAKE
   Assistant U.S. Attorney
   Chief, Appellate Division
   District of Nevada

/s/ Tyler Anne Lee

TYLER ANNE LEE
   Criminal Division
   U.S. Department of Justice
   950 Pennsylvania Avenue NW
   Washington, DC 20530
   (202) 514-5593
   tyler.lee@usdoj.gov

December 16, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 25-6214 & 25-6470, 25-6223 & 25-6475, 25-6224 & 25-6465, 25-6229 & 25-6468

I am the attorney or self-represented party.

**This brief contains** | 11,855 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

● is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.
29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Tyler Anne Lee | **Date** | 12/16/2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**       *Rev. 12/01/22*