Case Nos. 25-6214 & 25-6470; 25-6223 & 25-6475; 25-6224 & 25-6465;
25-6229 & 25-6468

United States Court of Appeals
for the Ninth Circuit

| | |
|---|---|
| United States of America, | D.C. No. 2:25-cr-240-GMN |
|     Plaintiff/Appellant/Cross-Appellee, | District of Nevada |
| | |
| v. | **Reply Brief** |
| | |
| Devonte Devon Jackson, | |
| | |
|     Defendant/Appellee/Cross-Appellant. | |
| United States of America, | |
| | D.C. No. 2:25-cr-227-JAD |
|     Plaintiff/Appellant/Cross-Appellee, | District of Nevada |
| | |
| v. | |
| | |
| Giann Icob Salazar Del Real, | |
| | |
|     Defendant/Appellee/Cross-Appellant. | |

| | |
|---|---|
| United States of America,<br><br>    Plaintiff/Appellant/Cross-Appellee,<br><br>v.<br><br>Jorge Enriquez, Jr.,<br><br>    Defendant/Appellee/Cross-Appellant. | D.C. No. 3:25-cr-26-MMD<br>District of Nevada |
| United States of America,<br><br>    Plaintiff/Appellant/Cross-Appellee,<br><br>v.<br><br>Shamar Tyrell Garcia,<br><br>    Defendant/Appellee/Cross-Appellant. | D.C. No. 2:25-cr-230-RFB<br>District of Nevada |

Rene L. Valladares
Federal Public Defender
Jeremy C. Baron
Sean A. McClelland
Assistant Federal Public Defenders
411 E. Bonneville Ave. Suite 250
Las Vegas, NV 89101
(702) 388-6577
jeremy_baron@fd.org
sean_mcclelland@fd.org

Counsel for Defendants/Appellees/Cross-Appellants

## Table of Contents

Table of Contents..................................................................................i

Table of Authorities...........................................................................ii

Argument ............................................................................................ 1

I.    The Federal Vacancies Reform Act requires dismissal. .................3

II.   *United States v. Bundy* requires dismissal. ...................................11

III.  *Lucia v. SEC* requires dismissal.......................................................17

Conclusion........................................................................................21

i

# Table of Authorities

**Cases**

*Asylumworks v. Mayorkas*, 590 F. Supp. 3d 11 (D.D.C. 2022) .............. 5

*Bandimere v. SEC*, 844 F.3d 1168 (10th Cir. 2016) ............................... 6

*Brooks v. Kijakazi*, 60 F.4th 735 (4th Cir. 2023) .................................... 6

*Cirko ex rel. Cirko v. Comm'r of Social Security*,
948 F.3d 148 (3d Cir. 2020) ................................................................ 6

*Cody v. Kijakazi*, 48 F.4th 956 (9th Cir. 2022) ............................ 6, 7, 18

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of
Homeland Sec.*, 107 F.4th 1064 (9th Cir. 2024) ........................ *passim*

*Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550
(9th Cir. 2016).................................................................................... 6

*Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000) ............................... 6, 7

*Lucia v. SEC*, 585 U.S. 237 (2018) ....................................................... 17

*Ryder v. United States*, 515 U.S. 177 (1995) ....................................... 18

*Stein v. Kaiser Found. Health Plan, Inc.*,
115 F.4th 1244 (9th Cir. 2024) (en banc) ......................................... 10

*SW General, Inc. v. N.L.R.B.*, 796 F.3d 67 (D.C. Cir. 2015) ....... 5, 6, 7, 8

*United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020) ........ 2, 11, 12, 13

*United States v. Comey*, __ F. Supp. 3d __,
2025 WL 3266932 (E.D. Va. Nov. 24, 2025) ....................... 2, 7, 17, 19

*United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999) ........................... 9

*United States v. Giraud*,
__ F.4th __, 2025 WL 3439752 (3d Cir. Dec. 1, 2025) ..................... 14

*United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001) (en banc) ....... 10

*United States v. Smith*, 962 F.3d 755 (4th Cir. 2020) ......................... 8, 9

*United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024) .... 17, 19

**Statutes and Rules**

5 U.S.C. § 3345 ...................................................................... 1

5 U.S.C. § 3347 ...................................................................... 1

18 U.S.C. § 3731 ...................................................................... 9

28 U.S.C. § 546 ................................................................... 9, 16

Federal Rule of Criminal Procedure 7 ...................................... 9

iii

## Argument

Sigal Chattah is ineligible to serve as acting U.S. Attorney. The administration attempted to appoint her to the position by backfilling her into the first assistant role, but 5 U.S.C. § 3345(a)(1) does not authorize that strategy. The administration also tried to use general delegation authority to make her a de facto acting U.S. Attorney, but 5 U.S.C. § 3347 prohibits that tactic. Ms. Chattah was therefore unlawfully occupying her position when her office obtained the four indictments at issue here. Her improper service violates the Appointments Clause and the defendants' due process rights. The appropriate remedy for these constitutional violations is to dismiss the indictments. The government's contrary remedial arguments are unpersuasive.

Dismissal is the proper remedy under Section 3347 and *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064 (9th Cir. 2024). The government seeks to avoid this conclusion by asserting harmless error. The error here is the unlawful appointment of the chief law enforcement officer in the district who retains responsibility for approving her office's prosecutions. The error

1

is either structural in nature or harmful in the conventional sense. The government's harmless error claim cannot carry the day.

Dismissal is likewise appropriate under *United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020), as a remedy for the due process violation or as a matter of supervisory authority. The government disputes whether a due process error has occurred, but it fails to present a serious argument. It also disputes whether dismissal is a necessary supervisory sanction, but the nature and scope of the misconduct require a suitable deterrent effect. The Court should exercise its authority under *Bundy* to dismiss.

Finally, dismissal is the only remedy that will cure the Appointments Clause violation. *See, e.g.*, *United States v. Comey*, __ F. Supp. 3d __, 2025 WL 3266932, at *11 (E.D. Va. Nov. 24, 2025). The government fails to meaningfully distinguish the relevant cases.

The district court correctly concluded Ms. Chattah is ineligible to serve as acting U.S. Attorney, but it erroneously refused to dismiss the indictments. The Court should reverse this remedial decision and remand with instructions to dismiss.

2

## I.   The Federal Vacancies Reform Act requires dismissal.

If the administration improperly appoints an acting (or de facto acting) officer and the officer performs a nondelegable function, the act is "void" and cannot be ratified later. *Gonzales*, 107 F.4th at 1077. If the improper officer performs a delegable function, the act is "voidable," although a proper officer could ratify the act later. *Id.* Here, Ms. Chattah is ineligible to serve as acting (or de facto acting) U.S. Attorney. Her invalid acts—such as allowing her office to institute the prosecutions at issue here—are either void or voidable. Dismissal is therefore appropriate. Principal and Response Brief at 78-82.[1] The government disputes this conclusion and raises five arguments. None is successful.

First, the government asserts the decision whether to authorize an indictment is a delegable function,[2] and it argues "the FVRA does

---

[1] Pin citations to briefs refer to the page numbers in the footer.

[2] The government says the defense cannot "realistically . . . claim" that a decision to approve a prosecution is a nondelegable function. Response and Reply Brief at 44. But a core function—perhaps the most important function—of the U.S. Attorney is to decide whether to allow

not provide a remedy for the exercise of a delegable function." Response and Reply Brief at 46; *see also id.* at 47. *Gonzales* could not be clearer. "[E]ven where functions and duties performed in violation of the FVRA fall outside the scope of § 3348 [because they are delegable functions], those actions are *voidable,* [albeit] not void." 107 F.4th at 1077 (cleaned up). "'Voidable' means the action may be challenged, but that the agency may raise defenses" such as ratification. *Id.* (cleaned up). Thus, assuming Ms. Chattah's approval (tacit or otherwise) of indictments is a delegable function, her actions nevertheless remain voidable—rendering dismissal appropriate. *See id.*

Second, the government asserts "dismissal would be premature" because "ratification may yet occur." Response and Reply Brief at 46. But absent ratification, Ms. Chattah's actions remain unlawful in the moment, so dismissal is appropriate now. *See Gonzales,* 107 F.4th at 1077. Indeed, under the government's logic, dismissal would never be appropriate—not now, not on direct appeal, not on collateral attack, not

---

the office to pursue a criminal case. Principal and Response Brief at 79. If that critical function is delegable, it is hard to imagine a function of the office that would be nondelegable.

ever—because it is always hypothetically possible a valid officer might ratify an invalid officer's decision-making in the future. The Court should reject that heads-I-win, tails-you-lose approach. *Cf. Asylumworks v. Mayorkas*, 590 F. Supp. 3d 11, 22 (D.D.C. 2022) (concluding two FVRA-violating rules were invalid and noting "[n]o effort has been made to ratify" one of the rules). By contrast, if the Court dismisses the indictments without prejudice now, a proper U.S. Attorney could ratify Ms. Chattah's invalid actions in the future by authorizing the office to seek a new indictment. As of today, however, the indictments cannot proceed.

Third, the government presents a "harmless error" defense; in its view, dismissal is inappropriate because Ms. Chattah's invalid service did not cause the defendants "prejudice[]." Response and Reply Brief at 46-47. The argument is off base.

The D.C. Circuit rejected this type of harmless error defense in *SW General, Inc. v. N.L.R.B.*, 796 F.3d 67 (D.C. Cir. 2015).[3] There, the

---

[3] The government cites a Ninth Circuit case supporting its harmless error defense; the daisy chain of citations traces back to *SW*

court suggested a litigant "need not demonstrate prejudice in the first place if the alleged error is 'structural' in nature." *Id.* at 79. "[I]ssues of separation of powers are structural errors that do not require a showing of prejudice because it will often be difficult or impossible" to demonstrate concrete harm. *Id.* (cleaned up). "Demand for a clear causal link to a party's harm would frustrate the prophylactic goal of the separation of powers." *Id.* (cleaned up). So such errors are often structural. *See id.* (collecting cases).[4] They therefore warrant

---

*General. See* Response and Reply Brief at 46 (citing *Gonzales*, 107 F.4th at 1077); *Gonzales*, 107 F.4th at 1077 (citing *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 564 (9th Cir. 2016)); *Hooks*, 816 F.3d at 564 (citing *SW General*, 796 F.3d at 79-82).

[4] *See also, e.g.*, *Brooks v. Kijakazi*, 60 F.4th 735, 740 (4th Cir. 2023) ("[C]laimants . . . are entitled to relief from any adjudication tainted with an appointments violation.") (cleaned up); *Cody v. Kijakazi*, 48 F.4th 956, 960 (9th Cir. 2022) ("An Appointments Clause violation is . . . no mere technicality or quaint formality—it weakens our constitutional design."); *Cirko ex rel. Cirko v. Comm'r of Social Security*, 948 F.3d 148, 153 (3d Cir. 2020) ("An individual litigant need not show direct harm or prejudice caused by an Appointments Clause violation."); *Bandimere v. SEC*, 844 F.3d 1168, 1181 n.31 (10th Cir. 2016) (identifying that improper appointments of inferior officers are "[s]tructural errors not subject to prejudicial-error review"); *Landry v. FDIC*, 204 F.3d 1125, 1131 (D.C. Cir. 2000) ("Issues of separation of powers (including Appointments Clause matters), seem most fit to the

"remedies with bite." *Cody*, 48 F.4th at 960; *see also Comey*, 2025 WL 3266932, at *10.

Nevertheless, the *SW General* court ultimately declined to reach the question whether "an FVRA violation is a structural error" because it found the error harmful in the conventional sense. 796 F.3d at 80. The challenged agency action was "essentially [an] exercise[] [of] prosecutorial discretion." *Id.* The court could not "be confident" another officer would have exercised prosecutorial discretion in the same manner. *Id.* That "uncertainty is sufficient to conclude . . . the FVRA violation is non-harmless." *Id.* The court stated its "conclusion does not control whether the ineligibility of an official with prosecutorial responsibilities in other contexts should be considered harmless." *Id.* at 81.

The same analysis applies here. Ms. Chattah's service violates the FVRA, creating a "'structural'" error that warrants relief without a showing of prejudice. *SW General*, 796 F.3d at 79. But even if that

[structural error] doctrine; it will often be difficult or impossible for someone subject to a wrongly designed scheme to show that the design—the structure—played a causal role in his loss.") (cleaned up).

were not so, Ms. Chattah's invalid service is harmful error under *SW General*'s reasoning. When an invalid officer like Ms. Chattah "exercises prosecutorial discretion"—for example, by giving her office authorization (tacit or otherwise) to institute a criminal case—the exercise of discretion is not harmless. *Id.* at 80. This Court "cannot be confident" a properly serving U.S. Attorney would exercise discretion in the same manner by approving the same four prosecutions. *Id.* Given that "uncertainty," the error counts as harmful, even were the Court to reach a prejudice analysis. *Id.*

Fourth, the government relies on *United States v. Smith*, 962 F.3d 755 (4th Cir. 2020). Response and Reply Brief at 47. That case provides meager guidance. In *Smith*, the court rejected an Appointments Clause challenge to the acting Attorney General. It observed that the defendant "cited no authority" for his remedial request. 962 F.3d at 765-66. Here, by contrast, the defense is citing ample authority to support dismissal. The court in *Smith* also observed that the defendant was "prosecuted by the United States Attorney for the Western District of North Carolina, who was Senate-confirmed and who was independently empowered by statute to prosecute all offenses

8

against the United States." *Id.* at 766 (cleaned up). Here, the defense is directly challenging Ms. Chattah, not an unrelated Department of Justice official. *Smith* is thus distinguishable; dismissal is appropriate.

Fifth, the government argues dismissal is unavailable under *United States v. Gantt*, 194 F.3d 987, 998 (9th Cir. 1999). Response and Reply Brief at 43-44. The government significantly overreads the case. In *Gantt*, an interim U.S. Attorney appointed under 28 U.S.C. § 546(d) certified an interlocutory suppression appeal as required by 18 U.S.C. § 3731. The defense asserted the certification was invalid because the interim officer's service violated the Appointments Clause. The Court rejected the Appointments Clause argument. It made the following stray remark: "The constitutionality of § 546(d) would not affect the validity of indictments . . . as indictments need only be signed by an 'attorney for the government.'" 194 F.3d at 998 (quoting Criminal Rule 7(c)(1)).

This stray remark was dicta. *Gantt* involved an Appointments Clause challenge to an interlocutory appeal certification, not an indictment. The Court's reference to indictments was not "germane to the eventual resolution of the case" and therefore amounted to dicta.

9

*United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc); *see also Stein v. Kaiser Found. Health Plan, Inc.*, 115 F.4th 1244, 1248-54 (9th Cir. 2024) (en banc) (Forrest, J., concurring).  The Court thus need not apply that remark as if it were binding.  Indeed, the defense has identified as much already, *see* Principal and Response Brief at 81-82, and the government does not respond to the defense's analysis.

Moreover, even if the statement from *Gantt* were binding, it does not dictate the outcome here.  *Gantt* suggests that if the U.S. Attorney were invalidly serving, an indictment would be insulated from challenge because the Criminal Rules do not require the U.S. Attorney to sign the indictment.  But the defense is not asserting a Criminal Rules violation here.  Rather, the defense is relying on multiple statutory and constitutional dismissal theories and multiple lines of authority, none of which *Gantt* squarely addresses.  Again, the defense has made this point already, Principal and Response Brief at 82, and the government does not address it.  However viewed, *Gantt* is no barrier to dismissal.

At bottom, Ms. Chattah was improperly serving as acting U.S. Attorney when she allowed her office to obtain the four indictments at issue here.  That decision is voidable under *Gonzales*.  The government

10

has no valid defense to dismissal. The Court should dismiss the indictments.

## II. *United States v. Bundy* requires dismissal.

Dismissal is also warranted under *Bundy*. When the government engages in misconduct, courts should apply appropriate sanctions. *See Bundy*, 968 F.3d at 1030-31. Dismissal is a suitable remedy when the government commits a sufficiently serious due process violation. *Id.* at 1030. Dismissal is also available under the federal courts' supervisory authority to deter illegal conduct and prevent willful disobedience of the law. *Id.* at 1030-31. The administration's unlawful appointment of Ms. Chattah warrants dismissal as a sanction under both theories. Principal and Response Brief at 82-87.

The government disputes whether a due process violation has occurred. Response and Reply Brief at 48. But criminal proceedings are inconsistent with due process when the head prosecutor overseeing the office is serving unlawfully. Principal and Response Brief at 84-85. The government does not present a substantial argument otherwise.

The government likewise disputes whether the due process error was prejudicial. Response and Reply Brief at 48. But, as discussed, the

11

error is structural, so the Court has no need to consider prejudice. Even if there is no presumption of prejudice, the error is nonetheless harmful because the U.S. Attorney's approval (tacit or otherwise) is a prerequisite to prosecution. In any event, the prejudice question does not affect this part of the *Bundy* analysis. Although a defendant must demonstrate "substantial prejudice" to secure a with-prejudice dismissal under *Bundy*'s supervisory authority standard, 968 F.3d at 1031 (cleaned up), *Bundy*'s due process standard does not require a similar showing of prejudice.

In the government's view, any constitutional error is not sufficiently shocking to mandate dismissal. Response and Reply Brief at 48. Whatever adjective applies, the administration's conduct—a repeated effort in multiple districts to unlawfully and unconstitutionally appoint individuals as acting, de facto acting, and interim U.S. Attorneys, despite their ineligibility to serve under any relevant statutory scheme—is serious enough to require a remedy.

Next, the government disputes whether dismissal is appropriate under the federal courts' supervisory authority. Response and Reply Brief at 49. It suggests a supervisory sanction is appropriate only when

12

"'government misconduct directly affected the fairness of the criminal prosecution.'" *Id.* (quoting the district court's opinion). But the government's misconduct has directly affected the fairness of these prosecutions because Ms. Chattah's unlawful appointment tainted the office's decision to institute these criminal cases in the first place. It is fundamentally unfair for the defendants to have been charged and to have spent time in custody when the individual leading the prosecuting office lacked authority to approve the prosecutions.

In any event, the *Bundy* standard does not require a defendant to show unfairness. Rather, dismissal is an appropriate sanction for deterrence purposes and to prevent the federal courts from becoming complicit in willful violations of the law, namely violations of the FVRA and the Appointments Clause. Perhaps the government is arguing that a court cannot use its supervisory authority under *Bundy* to dismiss an indictment *with prejudice* unless the defense demonstrates "substantial prejudice." 968 F.3d at 1031 (cleaned up). But the defense can demonstrate substantial prejudice for the reasons explained above. Absent that showing, dismissal without prejudice would remain an available sanction.

13

There is supposedly "no controlling authority" regarding Ms. Chattah's ineligibility, the government claims; thus, the government concludes, its misconduct is insufficiently serious to justify a supervisory sanction. Response and Reply Brief at 49. But to secure a *Bundy* remedy, the defense need not identify a prior opinion involving prior misconduct that is on all fours with the government's misconduct in the current case. Even if there were such a requirement, *Gonzales* is controlling authority disproving the government's general delegation theory: "[A] department head cannot rely on a general vesting-and-delegation statute to designate the acting officer in the event of a vacancy." 107 F.4th at 1078. At a minimum, the government's unwillingness to follow *Gonzales* warrants a remedial response.

*United States v. Giraud*, __ F.4th __, 2025 WL 3439752 (3d Cir. Dec. 1, 2025), does not aid the government on this point. Response and Reply Brief at 49. True enough, the Third Circuit did not dismiss the indictments as a penalty for the acting U.S. Attorney's unlawful service. *Id.* at *3 n.2. But that is largely because none of the *Giraud* defendants cross-appealed the district court's decision not to dismiss, and each

14

party agreed the dismissal question was not before the appellate court.[5] It is not surprising the Third Circuit declined to reach an issue that all parties agreed was not before the court. The defense has repeatedly made this point. *See, e.g.*, Dkt. No. 16.1 at 19 n.4. Yet the government continues to cite *Giraud* as if it provides persuasive authority regarding the scope of the appeal or the proper remedy. The Court should reject the government's attempt to conjure a Third Circuit holding out of an unappealed issue the parties agreed was not before that court.

A supervisory dismissal sanction would provide a suitable deterrent effect, notwithstanding the government's contrary arguments. Principal and Response Brief at 85-86. The government does not dispute that its position is creating serious risks to the integrity of the four prosecutions at issue in this appeal, other prosecutions in this

---

[5] *See United States v. Giraud*, No. 25-2635, Dkt. No. 18 at 1 (3d Cir. Sept. 5, 2025) ("The government agrees . . . the only portion of the district court's interlocutory order that is currently appealable is the order disqualifying Ms. Habba."); *id.*, Dkt. No. 19 (3d Cir. Sept. 5, 2025) ("Mr. Giraud agrees . . . this appeal is limited to issues concerning the . . . disqualification ruling."); *id.*, Dkt. No. 22 (3d Cir. Sept. 8, 2025) (taking the same position); *United States v. Pina*, No. 25-2636, Dkt. No. 21 (3d Cir. Sept. 5, 2025) ("Mr. Pina does not, at this time, seek to appeal the District Court's denial of the motion to dismiss his indictment.").

district, other prosecutions in other districts, the judiciary's appointment authority under 28 U.S.C. § 546(d), and the Senate's advice and consent power. Response and Reply Brief at 49-50. The government simply asserts those risks do not require a deterrent sanction unless the defense demonstrates unfairness. *Id.* As discussed, the argument misses the mark. The need for deterrence does not hinge on unfairness, but assuming otherwise, the defense can demonstrate unfairness as explained above.

The lesser remedy of disqualification will not, as the government insists, provide adequate deterrence or correct the government's willful disobedience of the law. Response and Reply Brief at 50. The government again asserts it "is well within its right" to press its legal theories absent "controlling authority" to the contrary. *Id.* Once again, the *Bundy* standard does not require the defense to identify a prior case on all fours with the government's present misconduct. Even if it did, *Gonzales* is controlling authority refuting the government's general delegation theory. The district court's disqualification order did not adequately deter the government from continuing to defend its unlawful appointments notwithstanding *Gonzales*. Dismissal—the district

16

court's chosen remedy in the *Comey* litigation, *see Comey*, 2025 WL 3266932, at \*15—is the only remedy that will provide adequate deterrence.

## III.  *Lucia v. SEC* requires dismissal.

When a litigant raises a legitimate Appointments Clause challenge, the appropriate remedy is to invalidate the officer's ultra vires actions.  *See Lucia v. SEC*, 585 U.S. 237, 251 (2018); *Comey*, 2025 WL 3266932, at \*11; *United States v. Trump*, 740 F. Supp. 3d 1245, 1303 (S.D. Fla. 2024).  Because the defense has presented a meritorious Appointments Clause challenge to Ms. Chattah's status, the Court should invalidate her ultra vires actions, which include allowing her office to pursue the four prosecutions at issue here.  Principal and Response Brief at 87-89.  In short:  the Appointments Clause violation requires dismissal under *Lucia*.

*Lucia* is supposedly distinguishable, the government says, because the case involved an invalidly serving administrative law judge, not an invalidly serving prosecutor.  Response and Reply Brief at 50.  But nothing in *Lucia* suggests a different rule for prosecutors.  Indeed, the

17

district courts in *Trump* and *Comey* applied *Lucia* to invalidly serving prosecutors. This Court should do the same.

The government also seeks to distinguish *Lucia* as a case involving a constitutional violation. Response and Reply Brief at 50. But this case is no different: the defense has established a constitutional violation here too. Either Ms. Chattah is a principal officer serving without Senate confirmation, or she is an inferior officer serving without statutory authorization. Under either scenario, her service is impermissible under the Appointments Clause. Principal and Response Brief at 58-71. That means a remedy "with bite"— dismissal—is appropriate under *Lucia*. *Cody*, 48 F.4th at 960; *see also Ryder v. United States*, 515 U.S. 177, 183 (1995) ("Any other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments.").

*Trump* is distinguishable in the government's view because the unlawfully appointed special counsel personally signed the indictment, while Ms. Chattah did not personally sign the indictments in this case. Response and Reply Brief at 51. The government is conflating a Criminal Rules violation with an Appointments Clause violation. The

18

Criminal Rules require an attorney for the government to sign the indictment. The defense is not alleging a Criminal Rules violation here. Instead, the defense presents an Appointments Clause challenge to the indictments because Ms. Chattah was leading the office when the office initiated the prosecutions. *Trump* awarded dismissal based on similar concerns regarding the special counsel's eligibility and his unlawful "exercise of prosecutorial power." 740 F. Supp. 3d at 1302. Nothing in *Trump* suggests a different outcome if a government attorney other than the special counsel had performed the ministerial act of signing the indictment. *Trump*, in short, supports dismissal here.

The government tries a similar move with *Comey*, claiming the case is distinguishable because the improperly serving interim U.S. Attorney personally presented the relevant indictments to the grand jury. Response and Reply Brief at 51. The government misreads that case: nothing in *Comey* suggests a different outcome if the improper officer had brought another government attorney with her. Rather, *Comey* awarded dismissal because Appointments Clause violations warrant "remedies with bite" that "set aside" any "unlawful exercises of executive power." 2025 WL 3266932, at *10-*11 (cleaned up). That

19

principle applies regardless of who steps into the grand jury room. The government's attempt to recast *Comey* does not seriously grapple with that case's actual logic, which is fully applicable here. These indictments warrant the same dismissal remedy.

The Court should follow *Lucia*, *Trump*, and *Comey*, and award dismissal as the proper remedy for the administration's Appointments Clause violation.

\* \* \*

Dismissal is appropriate thrice over here. It is appropriate under the statutory framework. It is appropriate under *Bundy*. And it is also appropriate under *Lucia* and its progeny. For any or all of these reasons, this Court should direct the district court to dismiss the indictments.

20

## Conclusion

This Court should affirm the district court's decision on the merits but reverse its decision on remedy and remand with instructions to dismiss the indictments.

Dated December 23, 2025.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Jeremy C. Baron*
Jeremy C. Baron
Assistant Federal Public Defender

*/s/ Sean A. McClelland*
Sean A. McClelland
Assistant Federal Public Defender

21

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8.** **Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-6214 & 25-6470; 25-6223 & 25-6475; 25-6224 & 25-6465; 25-6229 & 25-6468

I am the attorney or self-represented party.

**This brief contains** 3,857 **words, including** 0 **words** manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

◉ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Jeremy C. Baron **Date** December 23, 2025

*(use* "s/[typed name]" *to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 25-6214 & 25-6470; 25-6223 & 25-6475; 25-6224 & 25-6465; 25-6229 & 25-6468

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

Devonte Devon Jackson, Giann Icob Salazar Del Real, Jorge Enriquez, Jr., Shamar Tyrell Garcia.

**Description of Document(s)** *(required for all documents)*:

Reply Brief

**Signature** | s/ Jeremy C. Baron      **Date** | December 23, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

**Form 15**                                                           *Rev. 12/01/2018*