

**U.S. Department of Justice**

Criminal Division

*950 Pennsylvania Avenue N.W., Suite 1264*
*Washington, DC 20530-0001*
*Tel: (202) 514-5593*

March 13, 2026

**<u>VIA CM/ECF</u>**

Molly C. Dwyer
Clerk of Court
James R. Browning Courthouse
U.S. Court of Appeals
95 Seventh Street
San Francisco, CA 94103-1526

      Re:    *United States v. Devonte Devon Jackson*, Case No. 25-6214
               *United States v. Giann Icob Salazar Del Real*, Case No. 25-6223
               *United States v. Jorge Enriquez, Jr.*, Case No. 25-6224
               *United States v. Shamar Tyrell Garcia*, Case No. 25-6229
               **Argued and Submitted February 12, 2026**

Dear Ms. Dwyer,

On March 2, 2026, the government filed the attached brief in *In re Grand Jury Subpoenas to the Office of the New York State Attorney General v. United States*, No. 26-156 (2d Cir.), which presents the same FVRA and delegation issues concerning the Office of U.S. Attorney that are presented in the above-captioned appeals.[1] And of particular relevance here, the brief addressed at length a topic that briefly arose during the oral argument in these appeals: namely, "whether the United States's interpretation of the FVRA would render the 120-day time limit under 28 U.S.C. § 546 meaningless, because it would allow the Attorney General to install repeatedly the same or different people as First Assistant each

---

[1] Defendants in these appeals previously filed a Rule 28(j) letter concerning the underlying district court decision, *see* Def. Rule 28(j) Letter (Jan. 12, 2026).

time an Interim U.S. Attorney's term expires—keeping the office continuously filled without Senate confirmation." 2d Cir. Br. 35 (quotation marks omitted); *see* Oral Arg. at 12:15-12:50.

As the government explained: if that is a concern, it "is not created by the United States's reading of § 3345(a)(1) to reach non-incumbent first assistants. After all, if a FAUSA was the incumbent when the Senate-confirmed U.S. Attorney resigned, there would be the same risk of cycling back and forth between the FAUSA as Acting U.S. Attorney and § 546 appointees." 2d Cir. Br. 35-36. Instead, that "concern implicates the separate question of whether the expiration of the 120-day term of an interim U.S. Attorney under § 546 creates a new vacancy that resets the clock under § 3346(a)(1)." *Id.* at 36.

As in the Second Circuit appeal, "[t]his Court need not reach th[at] question" in these appeals. *Id.* As previously explained, the nomination of George Kelesis to be U.S. Attorney for the District of Nevada restarts the clock on Ms. Chattah's acting service under § 3346(a)(2), regardless of whether a new vacancy occurred upon Ms. Chattah's resignation as interim U.S. Attorney in July 2025. *See* U.S. Rule 28(j) Letter (Feb. 11, 2026).

Respectfully submitted,

/s/ Tyler Anne Lee
TYLER ANNE LEE
*Counsel for the United States*

2

**CERTIFICATE OF COMPLIANCE**

This letter complies with the type-volume limitation of Federal Rule of Appellate Procedure 28(j) because the body of this letter contains 343 words, including text in footnotes.

This letter complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because this letter has been prepared in a proportionally spaced, 14-point serif typeface using Microsoft Word.

/s/ Tyler Anne Lee
Tyler Anne Lee

# 26-156

*To be Argued by:  HENRY C. WHITAKER*

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
### Docket No. 26-156

IN RE GRAND JURY SUBPOENAS
TO THE OFFICE OF THE NEW YORK STATE
ATTORNEY GENERAL,

*Petitioner-Appellee,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR RESPONDENT-APPELLANT
## UNITED STATES OF AMERICA

PAMELA J. BONDI
*Attorney General*

TODD BLANCHE
*Deputy Attorney General*

HENRY C. WHITAKER
*Counselor to the Attorney General*

RAJIT S. DOSANJH
*Assistant U.S. Attorney*
U.S. Attorney's Office
Northern District of N.Y.
100 South Clinton Street
Syracuse, NY  13261-7198
315-448-0672
Rajit.S.Dosanjh@usdoj.gov

# TABLE OF CONTENTS

PAGE

INTRODUCTION .................................................. 1

STATEMENT OF THE ISSUES
    PRESENTED.................................................. 6

JURISDICTIONAL STATEMENT ....................... 6

STATEMENT OF THE CASE ............................. 7

STATEMENT OF FACTS ................................... 9

    A.   Mr. Sarcone's Service as Acting
         U.S. Attorney.......................................... 9

    B.   The Grand Jury Subpoenas.................. 11

    C.   Motion to Quash................................... 12

    D.   Decision Quashing the
         Subpoenas ............................................. 13

SUMMARY OF ARGUMENT ............................ 16

STANDARD OF REVIEW.................................. 18

POINT I:
    Mr. Sarcone Was Validly Serving as
    Acting U.S. Attorney When He
    Obtained the Grand Jury Subpoenas.......... 18

A. Under the FVRA, Mr. Sarcone Was Validly Serving as Acting U.S. Attorney Because the Office of U.S. Attorney Was Vacant and He Was the First Assistant to That Office.......................................... 18

B. The District Court Erred in Holding That Mr. Sarcone Was Not Serving as Acting U.S. Attorney Because He Was Not the First Assistant When the Vacancy First Arose.............................. 20

POINT II:

Mr. Sarcone Was Authorized as Special Attorney and FAUSA to Obtain the Grand Jury Subpoenas and Oversee the Underlying Investigations. .......................... 36

A. The Attorney General Possesses Authority to Conduct and Supervise Proceedings in the NDNY, and She Delegated That Authority to Mr. Sarcone...................... 37

B. The District Court Erred in Holding That the FVRA's Exclusivity Provision Prohibited the Delegation of Authority to Mr. Sarcone. .......................................... 43

C. The Delegation of Authority to Mr. Sarcone as Special Attorney and FAUSA was Proper........................ 52

ii

D.  Mr. Sarcone Retained Delegated
    Authority to Obtain the
    Subpoenas and Oversee the
    Investigations, Even if He Was
    Not Validly Serving as Acting
    U.S Attorney.......................................... 55

E.  Any Error in the Title Used by
    Mr. Sarcone on the Face of the
    Grand Jury Subpoenas Does Not
    Warrant the Quash Order.................... 58

CONCLUSION.................................................... 62

# TABLE OF AUTHORITIES

**Cases:**

*Armor Screen Corp. v. Storm Catcher, Inc.*,
  No. 07-81091-Civ, 2009 WL 455428
  (S.D.Fla. Feb. 23, 2009).................................... 61

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
  35 F.4th 1328 (Fed. Cir. 2022)..................passim

*Atl. Inv. Mgmt., LLC v.
  Millennium Fund I, Ltd.*,
  212 F.R.D. 395 (N.D.Ill. 2002) ......................... 61

*Blair v. United States*,
  250 U.S. 273 (1919) ......................................... 61

*Branzburg v. Hayes*,
  408 U.S. 665 (1972) ......................................... 59

*Carr v. United States*,
  560 U.S. 438 (2010) ......................................... 21

*Catskill Dev., L.L.C. v.
  Park Place Ent. Corp.*,
  547 F.3d 115 (2d Cir. 2008) ............................. 21

*Dames & Moore v. Regan*,
  453 U.S. 654 (1981) ......................................... 30

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) ......................................... 21

*Fischer v. United States*,
  603 U.S. 480 (2024) .................................. 28, 29

iv

*Fleming v.*
  *Mohawk Wrecking & Lumber Co.,*
  331 U.S. 111 (1947) ......................................... 53

*Gonzales & Gonzales Bonds &*
  *Ins. Agency, Inc.*
  *v. U.S. Dep't of Homeland Sec.,*
  107 F.4th 1064 (9th Cir. 2024) ...... 43, 50, 51, 53

*Hunte v. Schneider Nat. Carriers, Inc.,*
  No. 1:13-CV-02069-WSD,
  2014 WL 3955723
  (N.D.Ga. Aug. 13, 2014) .................................. 61

*In re Grand Jury Proceeding,*
  971 F.3d 40 (2d Cir. 2020) ............................... 60

*In re Grand Jury Subpoena*
  *Duces Tecum Dated Jan. 2, 1985,*
  775 F.2d 499 (2d Cir. 1985) .............................. 6

*In re Grand Jury Subpoenas*
  *Returnable Dec. 16, 2015,*
  871 F.3d 141 (2d Cir. 2017) ............................ 18

*In re Grand Jury,*
  286 F.3d 153 (3d Cir. 2002) ............................... 6

*In re Persico,*
  522 F.2d 41 (2d Cir. 1975) ................... 38, 39, 56

*Kajmowicz v. Whitaker,*
  42 F.4th 138 (3d Cir. 2022).......................passim

*Matter of Grand Jury Empanelled,*
  597 F.2d 851 (3d Cir. 1979) .............................. 7

*Matter of Grand Jury Subpoena of Rochon,*
 873 F.2d 170 (7th Cir. 1989) .............................. 7

*Nichols v. United States,*
 578 U.S. 104 (2016) ......................................... 21

*NLRB v. Newark Elec. Corp.,*
 14 F.4th 152 (2d Cir. 2021) .............................. 44

*NLRB v. Noel Canning,*
 573 U.S. 513 (2014) ......................................... 21

*NLRB v. SW Gen., Inc.,*
 580 U.S. 288 (2017) ......................................... 44

*Russello v. United States,*
 464 U.S. 16 (1983) ........................................... 22

*Schaghticoke Tribal Nation*
 *v. Kempthorne,*
 587 F.3d 132 (2d Cir. 2009) ....................... 42, 49

*Snyder v. United States,*
 603 U.S. 1 (2024) ............................................ 23

*Stand Up for California! v.*
 *United States Dep't of the Interior,*
 994 F.3d 616, 622 (D.C. Cir. 2021),
 *affirming* 298 F. Supp. 3d 136
 (D.D.C. 2018) ................................................... 49

*Stone v. INS,*
 514 U.S. 386 (1995) ......................................... 23

*United States Dep't of the Interior,*
 994 F.3d 616 (D.C. Cir. 2021) .......................... 49

vi

*United States v. Aslam,*
  936 F.2d 751 (2d Cir. 1991) .............................. 7

*United States v. Calandra,*
  414 U.S. 338, (1974) ................................. 59, 61

*United States v. Freeman,*
  99 F.4th 125 (2d Cir. 2024)............................. 18

*United States v. Giraud,*
  160 F.4th 390 (3d Cir. 2025).....................passim

*United States v. Mangan,*
  575 F.2d 32 (2d Cir. 1978) .............................. 54

*United States v. Ndissi,*
  No. 2:25-CR-00143-CR-1,
  2026 WL 318836 (D. Vt. Feb. 5, 2026) ...... 57, 58

*United States v. R. Enters., Inc.,*
  498 U.S. 292 (1991) ......................................... 61

*United States v. Ramirez,*
  2025 WL 3019248 (C.D. Cal. 2025) ..... 53, 54, 57

*United States v. Ramirez-Martinez,*
  2026 WL 113431
  (D.N.M. Jan. 14, 2026) ............................... 57, 58

*United States v. Romaszko,*
  253 F.3d 757 (2d Cir. 2001) .............................. 7

*United States v. Ryan,*
  402 U.S. 530 (1971) ......................................... 59

*United States v. Weyhrauch,*
  544 F.3d 969 (9th Cir. 2008).....................38, 54

*Vogue Instrument Corp. v.*
 *Lem Instruments Corp.,*
  41 F.R.D. 346 (S.D.N.Y. 1967) ......................... 61

**Federal Statutes, Rules and Other
Authorities:**

1 U.S.C. §1 ......................................................... 21

5 U.S.C. §101 ..................................................... 19

5 U.S.C. §105 ..................................................... 19

5 U.S.C. §403(h) ........................................... 26, 34

5 U.S.C. §403(h)(1)(A)(i) ............................... 26, 27

5 U.S.C. §403(h)(2) ............................................ 26

5 U.S.C. §403(h)(2)(B) ....................................... 26

5 U.S.C. §3345 ..................................... 2, 6, 23, 30

5 U.S.C. §3345(a) ....................................... passim

5 U.S.C. §3345(a)(1) .................................... passim

5 U.S.C. §3345(a)(2) .................................... passim

5 U.S.C. §3345(a)(3) .................................... passim

5 U.S.C. §3345(a)(3)(A) ..................................... 22

5 U.S.C. §3345(b)(1) ............................... 19, 34, 35

5 U.S.C. §3345(b)(1)(A) ................................ 22, 34

5 U.S.C. §3345(b)(2) ......................................... 19

5 U.S.C. §3346.................................... 19, 23, 36, 45

5 U.S.C. §3346(a)(1) .............................. 3, 20, 36, 45

5 U.S.C. §3347..................................... 5, 17, 43, 49

5 U.S.C. §3347(a) ............................... 14, 44, 45, 46

5 U.S.C. §3347(a)(1) ....................................... 46, 47

5 U.S.C. §3347(b) ........................................... 47, 50

5 U.S.C. §3348.......................................... 48, 51, 53

5 U.S.C. §3348(a)(2)(A)(ii) .................................. 48

5 U.S.C. §3348(a)(2)(B)(i)(II) .............................. 48

5 U.S.C. §3348(b) ................................................ 47

5 U.S.C. §3348(d) .................................... 47, 48, 51

5 U.S.C. §3349(b) ................................................ 28

5 U.S.C. §9807(c)(1) ............................................ 48

7 U.S.C. §7996(e)(2)(C) ....................................... 48

10 U.S.C. §2014(f) ............................................... 48

12 U.S.C. §5491(b)(5) .......................................... 32

18 U.S.C. §245(a)(1) ............................................ 53

18 U.S.C. §2516(1) ............................................... 53

18 U.S.C. §3231..................................................... 6

18 U.S.C. §3271.................................................... 53

18 U.S.C. §3731........................................... 6, 7, 54

18a U.S.C. §14 .................................................... 53

22 U.S.C. §2651a(a)(2) ........................................ 32

26 U.S.C. §6103(i)(1)(B) ...................................... 54

28 U.S.C. §503 .................................................... 37

28 U.S.C. §504 .................................................... 32

28 U.S.C. §509 ........................................... 9, 37, 56

28 U.S.C. §510 ............................................... passim

28 U.S.C. §515 ............................................... passim

28 U.S.C. §515(a) .............................. 37, 38, 39, 55

28 U.S.C. §516 .......................................... 37, 38, 56

28 U.S.C. §517 .......................................... 37, 38, 56

28 U.S.C. §518 .................................................... 56

28 U.S.C. §518(b) ......................................... 37, 38

28 U.S.C. §519 ........................................... 37, 56

28 U.S.C. §533(1) ............................................... 38

28 U.S.C. §541(a) ............................................... 19

28 U.S.C. §542 .................................................... 38

28 U.S.C. §543 .................................................... 38

28 U.S.C. §546 ............................................... passim

28 U.S.C. §546(a) ............................................... 36

28 U.S.C. §546(c)(2) ............................................ 9

x

28 U.S.C. §546(d) .............................................. 3, 9

28 U.S.C. §1291 ................................................. 6, 7

31 U.S.C. §502(f) ................................................. 33

31 U.S.C. §1344(d)(3) .......................................... 48

35 U.S.C. §3(a)(1) ................................................ 50

38 U.S.C. §304 ..................................................... 33

40 U.S.C. §302(b) ................................................ 33

41 U.S.C. §3304(a)(7) .......................................... 48

42 U.S.C. §902(b)(4) ............................................ 33

44 U.S.C. §2103(c) ............................................... 32

Fed. R. Crim. P. 17(c) ............................... 18, 59, 60

Fed. R. Crim. P. 17(c)(2) ................................. 6, 60

28 C.F.R. §0.137(b) .............................................. 20

## Legislative History:

Pub. L. 117-286, 136 Stat. 4`96 (2022) .............. 26

Pub. L. No. 111-8, Div. D, Title VII, §749,
   123 Stat. 524, 693 (2009) ................................ 49

144 Cong. Rec. S10868-69
   (daily ed. Sept. 24, 2998)
   (statement of Sen. Thompson) ........................ 24

144 Cong. Rec. S11022
   (daily ed. Sept. 28, 1998)
   (statement of Sen. Thompson) .......................... 24

144 Cong. Rec. S11037-S11038
   (daily ed. Sept. 28, 1998)
   (statement of Sen. Lieberman) .................. 24, 25

144 Cong. Rec. S12822
   (daily ed. Oct. 21, 1998)
   (statement of Sen. Thompson) .......................... 25

S. Rep. 105-250, 105th Cong., 2d Sess. 1998,
   1998 WL 404532 (July 15, 1998) ......... 24, 42, 54

**Miscellaneous:**

Anne Joseph O'Connell, *Actings*,
   120 Colum. L. Rev. 613 (2020) .......................... 40

Antonin Scalia & Bryan A. Garner,
   *Reading Law: The Interpretation
   of Legal Texts* (2012) ........................................ 23

Center for Presidential Transition,
   *Presidential Transition Guide* (2023)*,
   available at* https://perma.cc/P25H-4FR6
   (reflecting data from 2016) .............................. 31

*Designation of Acting Associate
   Attorney General,*
   25 Op. O.L.C. 177 (2001) .................................. 28

*Designating an Acting Attorney General,*
   42 Op. O.L.C. 182 (2018) ........................... 32, 34

*Designating an Acting Director of the*
  *Bureau of Consumer Financial Protection*,
  41 Op. O.L.C. 99 (2017).................................. 34

*Designating an Acting Director of the*
  *Federal Housing Finance Agency*,
  43 Op. O.L.C. 70 (2019).................................. 33

*Designating an Acting Director of*
  *National Intelligence*,
  43 Op. O.L.C. 291 (2019)................................ 33

*Designation of Acting Director of the*
  *Office of Management and Budget*,
  27 Op. O.L.C. 121 (2003)................................ 34

*Designation of Acting Solicitor of Labor*,
  26 Op. O.L.C. 211 (2002)................................ 34

*Guidance on Application of Federal*
  *Vacancies Reform Act of 1998*,
  23 Op. O.L.C. 60 (1999)............................ 40, 48

Letter from Gary L. Kepplinger,
  General Counsel, GAO, to U.S. Senators
  Richard J. Durbin, Russell D. Feingold,
  and Edward M. Kennedy
  (June 13, 2008) .................................. 40, 41, 42

Letter from Victor S. Rezendes,
  Managing Director, Strategic Issues,
  GAO to U.S. Senators Joseph Lieberman
  and Dan Burton (Dec. 7, 2001) ................... 28, 29

# United States Court of Appeals
## FOR THE SECOND CIRCUIT
### Docket No. 26-156

IN RE GRAND JURY SUBPOENAS
TO THE OFFICE OF THE NEW YORK STATE
ATTORNEY GENERAL,
*Petitioner-Appellee,*

v.

UNITED STATES OF AMERICA,
*Respondent-Appellant.*

## BRIEF FOR THE
## UNITED STATES OF AMERICA

## INTRODUCTION

There are approximately 1,000 offices in the Executive Branch that require appointment by the President and confirmation by the Senate ("PAS" offices). Congress has recognized the importance of the functioning of the Executive Branch and has authorized multiple ways for the continued exercise of the powers of PAS offices when they are vacant. These provisions are critical to the functioning of the government and apply in varied circumstances, including Presidential transitions, unexpected death or illness, and Senate inaction. Over many years, Congress has repeatedly refined the balance between the important roles for the

President and Senate and the ability of the Executive Branch to operate in times of vacancies. This case concerns how these provisions apply to the currently vacant office of the U.S. Attorney for the Northern District of New York.

Congress has provided three methods for the continued exercise of the powers of a vacant U.S. Attorney position: acting service under the generally applicable Federal Vacancies Reform Act of 1998 ("FVRA"), 5 U.S.C. §3345; interim service under the U.S. Attorney-specific vacancy statute, 28 U.S.C. §546; and the delegation of non-exclusive duties in accordance 28 U.S.C. §§510 and 515. Each of these methods has precise rules, benefits, and drawbacks. It is typically up to the President, or the principal officers acting on his behalf, to decide which method is best suited to the circumstances. Those methods generally supplement—rather than displace—each other.

This case involves an unusual situation where one method—an interim appointment under §546—proved unworkable when the district court and Executive Branch could not agree on the best person for the job. In response, the Executive Branch used a different method of navigating the vacancy and installed John A. Sarcone III as the First Assistant U.S. Attorney ("FAUSA"), thereby enabling him to be Acting U.S. Attorney under the FVRA. As a backstop, and independent of the FVRA, the Attorney General of the United States ("Attorney General") also delegated to Mr. Sarcone authority to conduct and supervise legal

2

proceedings in the Northern District of New York ("NDNY"). In taking both steps, the Executive Branch followed the rules in the FVRA and acted in accordance with longstanding practice to remove any doubt that Mr. Sarcone is fully empowered to supervise criminal proceedings and investigations in the NDNY while the office of U.S. Attorney is vacant.

In this case, the district court (Schofield, *J.*, sitting by designation) erred in holding that neither of those sources of authority permitted Mr. Sarcone to obtain two grand jury subpoenas served on the Office of the New York State Attorney General ("NYOAG"). It likewise erred by disqualifying Mr. Sarcone from further involvement in the underlying criminal investigations.

First, Mr. Sarcone was lawfully serving as Acting U.S. Attorney when he obtained the subpoenas on August 5, 2025.[1] Prior to that date, the Attorney General had appointed Mr. Sarcone

---

[1] On February 10, 2026, Mr. Sarcone's tenure as Acting U.S. Attorney expired under 5 U.S.C. §3346(a)(1). On February 11, 2026, the Board of Judges for the NDNY appointed attorney Donald Kinsella as U.S. Attorney pursuant to 28 U.S.C. §546(d). *See* https://perma.cc/N7CU-2ZWC. The next day, the President terminated Mr. Kinsella's position as U.S. Attorney. Mr. Sarcone continues to serve as FAUSA for the district. *See* https://perma.cc/Z6AV-D629.

as a special attorney in the Department of Justice and designated him as the FAUSA for the District, so by automatic application of §3345(a)(1) of the FVRA, he was serving as Acting U.S. Attorney when he obtained the subpoenas. Contrary to the district court's view, the FVRA does not require that only a first assistant who was serving at the time the vacancy arose can serve as the acting official under the default provision of the FVRA. Rather, §3345(a)(1) is applicable to "the first assistant to *the office* of such officer"—not the first assistant to any particular officer. Moreover, the structure of the statute indicates that eligibility for service under §3345(a)(1) is based on the first assistant's current (not past) status, because it uses the present tense, whereas other provisions use backward-looking language. The district court's contrary conclusion would mean that every presidential administration for more than two decades has unlawfully installed dozens of acting officials—including especially during presidential transitions, when first assistants in the new administration are appointed only after PAS officers from the past administration have departed. The district court's interpretation of the FVRA cannot be right.

Second, even if Mr. Sarcone was not the Acting U.S. Attorney at the time he obtained the subpoenas, he retained delegated authority from the Attorney General under 28 U.S.C. §§510 and 515 to conduct legal proceedings in the NDNY, including grand jury proceedings, in his capacity as FAUSA. Despite recognizing—as numerous

4

courts have agreed—that the Attorney General can delegate her prosecutorial authority to other attorneys in the Department of Justice, the district court held that the Attorney General's delegation here was prohibited by the exclusivity provision of the FVRA, 5 U.S.C. §3347. The court misinterpreted §3347 and failed to appreciate the difference between an acting official, who may perform all the functions of an office, and a non-acting official, who is merely exercising those functions that were lawfully delegated. The district court's holding also conflicts with longstanding executive practice that has been accepted by every branch of the federal government and would cripple the functioning of government when a PAS office is vacant and no acting official may lawfully serve.

In reaching its decision, the district court relied heavily on *United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025), which affirmed a similar decision disqualifying the Acting U.S. Attorney in the District of New Jersey.[2] But *Giraud* did not meaningfully grapple with the foregoing arguments concerning the text, structure, and implementation of the FVRA. Based on these arguments and others elaborated below, this Court should reverse the district court's order in this case.

---

[2] Similar issues are under consideration by the Ninth Circuit in *United States v. Jackson*, Case No. 25-6214 (9th Cir.) (oral argument held on Feb. 12, 2026).

## STATEMENT OF THE ISSUES PRESENTED

1.  Whether Mr. Sarcone was validly serving as Acting U.S. Attorney for the NDNY pursuant to the FVRA, 5 U.S.C. §3345, when he obtained the grand jury subpoenas at issue in this case because the office of the U.S. Attorney was vacant and he was the FAUSA.

2.  Whether Mr. Sarcone was authorized to obtain the grand jury subpoenas and oversee the related investigations pursuant to the Attorney General's delegation of that authority to him under 28 U.S.C. §§510 and 515 as special attorney and FAUSA.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction to consider NYOAG's quash motion under 18 U.S.C. §3231, and Fed. R. Crim. P. 17(c)(2). *See, e.g.*, *In re Grand Jury*, 286 F.3d 153, 157 (3d Cir. 2002).

This Court has jurisdiction to consider the district court's order under 18 U.S.C. §3731 and 28 U.S.C. §1291. First, an order quashing a grand jury subpoena is appealable by the government under §3731. *See, e.g.*, *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985*, 775 F.2d 499, 502 (2d Cir. 1985) ("[A] grand jury proceeding is 'a criminal proceeding' within the portion of the Criminal Appeals Act, 18 U.S.C. §3731, that entitles the Government to appeal from a decision

or order of a district court suppressing or excluding evidence.") (*citing Matter of Grand Jury Empanelled (Colucci)*, 597 F.2d 851, 857 (3d Cir. 1979)); *see also United States v. Aslam*, 936 F.2d 751, 754 (2d Cir. 1991) (describing §3731 as a "broad authorization to appeal"). The Deputy Attorney General has provided the certification required under §3731. A:2286-87; *cf. United States v. Romaszko*, 253 F.3d 757, 760 (2d Cir. 2001) (finding Solicitor General approval of appeal satisfies purposes of §3731 certification requirement).

Second, the district court's order is appealable under 28 U.S.C. §1291, either as a final order, *see Colucci*, 597 F.2d at 858, or as a collateral order, *see, e.g., Giraud*, 160 F.4th at 396 (finding jurisdiction under collateral order doctrine to consider appeal of order disqualifying Acting U.S. Attorney under FVRA); *see also Matter of Grand Jury Subpoena of Rochon*, 873 F.2d 170, 173 (7th Cir. 1989) (collateral order doctrine permitted immediate appeal by government from order disqualifying Attorney General from participation in grand jury proceedings).

## STATEMENT OF THE CASE

On August 5, 2025, a grand jury sitting in the NDNY issued two grand jury subpoenas to the NYOAG. A:69-70, 73-74.[3] On August 19, 2025, the

---

[3] References to "A" and "SA" are to the joint appendix and special appendix, respectively.

7

NYOAG moved to quash the subpoenas. A:1-1574. The matter was assigned to U.S. District Judge Lorna G. Schofield of the Southern District of New York. A:1628. The United States opposed the motion to quash, A:1629-2125, and NYOAG filed a reply, A:2126-2202.[4]

On January 8, 2026, the district court issued an Opinion and Order, granting NYOAG's motion to quash the subpoenas. SA:1-24. The United States timely filed a notice of appeal on January 23, 2026. A:2286-87. The United States also moved in the district court for a stay of the Opinion and Order pending appeal. A:2288-2307. NYOAG opposed the stay motion, A:2308-65, and the motion remains pending.

---

[4] NYOAG separately moved to unseal the proceedings. A:1575-1627. The district court granted this motion, with the exception of permitting the United States to redact nonpublic grand jury information in its opposition to the quash motion. A:2203-17.

8

## STATEMENT OF FACTS

### A. Mr. Sarcone's Service as Acting U.S. Attorney

On February 17, 2025, Carla B. Freedman, the U.S. Attorney for the NDNY appointed by President Biden and confirmed by the Senate, left office. *See* https://perma.cc/3FSP-TTM5. By operation of the default provision of the FVRA, 5 U.S.C. §3345(a)(1), Daniel Hanlon, who was then FAUSA for the district, became Acting U.S. Attorney. On February 28, 2025, the Attorney General appointed Mr. Sarcone as U.S. Attorney pursuant to 28 U.S.C. §546, effective March 17, 2025. A:2075. Under that statute, Mr. Sarcone was authorized to serve as U.S. Attorney on an interim basis for 120 days. *See* 28 U.S.C. §546(c)(2).

On July 14, 2025, the last day of Mr. Sarcone's interim term, the Board of Judges for the NDNY declined to exercise its authority under 28 U.S.C. §546(d) to appoint a U.S. Attorney for the district. *See* https://perma.cc/XP4Z-WB8F. That same day, Daniel Hanlon was reassigned to Deputy U.S. Attorney, rendering the FAUSA role vacant. A:2079. Mr. Sarcone was appointed as a special attorney under authority including 28 U.S.C. §§509, 510, and 515, and designated as the FAUSA, effective July 15, 2025.[5] A:2095.

---

[5] On October 8, 2025, the Attorney General issued an order confirming that Mr. Sarcone's appointment as special attorney and designation

9

Accordingly, the Executive Office for United States Attorneys (EOUSA) issued a letter appointing Mr. Sarcone as special attorney and authorizing him "to conduct in the Northern District of New York, any kind of legal proceedings, civil or criminal, including Grand Jury proceedings and proceedings before United States Magistrates, which United States Attorneys are authorized to conduct." A:2072. The letter states that Mr. Sarcone's appointment as special attorney "is indefinite." A:2072. Likewise, the General Counsel for EOUSA approved a written request to appoint Mr. Sarcone as FAUSA for a period of one year. A:2090. Mr. Sarcone's designation as FAUSA was effective July 15, 2025. A:2095. By operation of the default provision of the FVRA, Mr. Sarcone began serving as Acting U.S. Attorney on July 15, 2025. *See* 5 U.S.C. §3345(a).

---

as FAUSA was done "at [her] direction and with [her] approval." A:2095. In the same order, the Attorney General ratified these actions by virtue of her authority under 28 U.S.C. §§509, 510, and 515, stating that she approved Mr. Sarcone's "appointment and designation as my own action under the Constitution and laws of the United States." A:2095. The order confirmed that, as FAUSA, Mr. Sarcone had "authority to serve as Acting United States Attorney during the vacancy in that office, subject to the conditions and time limitations of the [FVRA]." A:2095.

10

## B. The Grand Jury Subpoenas

Mr. Sarcone was serving as Acting U.S. Attorney on August 5, 2025, when he obtained two grand jury subpoenas from a grand jury sitting in the NDNY. A:69-70, A:73-74. The subpoenas requested records regarding two civil enforcement actions investigated and pursued by the NYOAG: (i) *People of the State of New York v. The National Rifle Association of America, et al.*, Index No. 451625/2020; and (ii) *People of the State of New York v. Donald J. Trump, et al.*, Index No. 452564/2022. A:69-70, A:73-74. On their face, the subpoenas identified Mr. Sarcone as the official requesting the subpoenas and listed his title as "Acting United States Attorney." A:69, 73. The subpoenas commanded NYOAG to appear at the U.S. Courthouse in Albany on August 21, 2025, at 10:00 a.m., to testify before the grand jury and produce the requested records. A:69, 73.

The subpoenas were accompanied by identical cover letters, signed by Mr. Sarcone as "Acting United States Attorney." A:68, 72. The cover letters explained that the subpoenas required NYOAG "to produce the demanded documents and records to the grand jury." A:68, 72. The cover letters further explained that, if NYOAG preferred, it could produce the materials "by mail or email rather than appearing personally," and provided Mr. Sarcone's mailing address and e-mail address at the U.S. Attorney's Office for that

11

purpose.[6] A:68, 72. Here, too, the cover letters identified Mr. Sarcone as "Acting United States Attorney."

## C. Motion to Quash

On August 19, 2025, NYOAG moved to quash the subpoenas on several grounds. A:1-1574. It argued that the subpoenas were issued in retaliation and with an intent to harass New York State Attorney General Letitia James and NYOAG; were unreasonable intrusions on the

---

[6] In its Opinion and Order, the district court stated, incorrectly, that the cover letters to the subpoenas "direct" NYOAG to send responsive documents to Mr. Sarcone "personally." SA:1, 6, 21. As explained, however, the subpoenas themselves make the documents and records returnable to the grand jury at the U.S. Courthouse in Albany and specify a date and time for the return. A:69, 73. Consistent with this directive, the cover letters explain that the subpoenas "require[e] your Office to produce the demanded documents and records to the grand jury." A:68, 72. The cover letters then state: "[i]f you prefer to produce the materials by mail or email rather than appearing personally, you may do so" by the time specified on the subpoenas, and provide Mr. Sarcone's mailing and email addresses at the U.S. Attorney's Office. A:68, 72. Neither the subpoenas nor the cover letters require NYOAG to produce the documents to Mr. Sarcone "personally."

12

sovereignty of New York State; infringed NYOAG's First Amendment rights; were impermissibly overbroad and unduly burdensome; sought privileged information; and were "facially invalid" because Mr. Sarcone was not lawfully serving as Acting U.S. Attorney when he requested and obtained the subpoenas. A:16-36.

The United States opposed the quash motion on all grounds. A:1629-2125. As relevant here, the United States argued that Mr. Sarcone was validly serving as Acting U.S. Attorney under the FVRA, and, in any event, was empowered to obtain the grand jury subpoenas in his capacity as a special attorney and FAUSA. A:1662-74. After NYOAG filed a reply, A:2126-2202, the district court held argument on the quash motion on December 4, 2025, A:2219-61. It limited oral argument to the question of "whether Mr. Sarcone's allegedly improper appointment as Acting U.S. Attorney invalidates the subpoenas." A:2218.

## D. Decision Quashing the Subpoenas

On January 8, 2026, the district court issued an Opinion and Order quashing the grand jury subpoenas, based solely on its finding that Mr. Sarcone was not lawfully serving as Acting U.S. Attorney when the subpoenas were issued. SA:1-24. The district court did not decide any of the other claims made by NYOAG in support of its motion to quash, including its retaliation, state

sovereignty, and First Amendment claims.[7] SA:1, 3.

The court determined that, under the FVRA, only the first assistant who is serving "at the moment the vacancy arises," can serve as the acting officer. SA:13-17. Because Mr. Sarcone was not FAUSA when the previous U.S. Attorney left office on February 17, 2025, the district court concluded that he was not validly serving as Acting U.S. Attorney when he obtained the grand jury subpoenas. SA:17, 20. The district court also rejected the United States's argument that Mr. Sarcone could obtain the subpoenas through the exercise of the authority delegated to him by the Attorney General under 28 U.S.C. §§510 and 515, and in his designated role as FAUSA. SA:17-19. The court determined that the Attorney General's delegation of authority to Mr. Sarcone went beyond the delegation of "specific, nonexclusive duties," and constituted an improper "attempt to use general delegation to create an Acting U.S. Attorney outside the FVRA's statutory framework," SA:19, purportedly running afoul of the FVRA's exclusivity provision, 5 U.S.C. §3347(a), SA:18-19. On this basis, the district court found the subpoenas invalid and "disqualified" Mr.

---

[7] The district court noted that if the United States chose to reissue "substantially similar subpoenas through a lawfully authorized official," NYOAG could renew its motion to quash on the grounds not addressed by the court's decision. SA:2-3.

14

Sarcone "from any further involvement in prosecuting or supervising the criminal investigations that prompted the subpoenas." SA:20. The court stated that Mr. Sarcone was disqualified "regardless of his title." SA:23.

The court also determined that the subpoenas "were issued through an official acting without lawful authority," and were therefore "unreasonable" within the meaning of Rule 17. SA:21. The court explained that Mr. Sarcone's appointment as a "special attorney" under Section 515 did not "cure" this defect in the subpoenas because the subpoenas and their supporting materials identified Mr. Sarcone only as the "Acting United States Attorney," and not as a "special attorney." SA:22. On this basis, the court concluded that "enforceability of the subpoenas … turns on whether Mr. Sarcone was lawfully serving as Acting U.S. Attorney – not on whether he also held a lawful 'Special Attorney' appointment." SA:22. The court stated "[w]hen the Federal Government seeks to invoke the district court's coercive power, it must do so based on lawful authority, not by asking courts to treat an unauthorized subpoena as interchangeable with a valid one." SA:23. The court further explained that the subpoenas were unreasonable not because of a "lack of subpoena power in the abstract," but because of the "Federal Government's choice to invoke that power through a statutory end-run and then leverage that power against a perceived rival of the President." SA:23.

This appeal followed.

## SUMMARY OF ARGUMENT

I. Mr. Sarcone was validly serving as the Acting U.S. Attorney for the NDNY under the FVRA when he obtained the grand jury subpoenas at issue in this case. When Mr. Sarcone was designated by the Attorney General as FAUSA for the district, the office of U.S. Attorney was (and continues to be) vacant. Accordingly, under the default provision of the FVRA, 5 U.S.C. §3345(a)(1), Mr. Sarcone became the Acting U.S. Attorney upon his designation.

The district court erred in concluding that Mr. Sarcone was not validly serving as Acting U.S. Attorney under §3345(a)(1) because he was not the first assistant when the vacancy initially arose. That requirement appears nowhere in the statute. The statute instead provides that the first assistant is the person who is the "first assistant to *the office* of such officer"—not the first assistant to the particular officer who was serving at the moment the vacancy arose. 5 U.S.C. §3345(a)(1) (emphasis added). The district court's contrary interpretation conflicts with the structure of the statute and widely accepted Executive Branch practice over the last two decades, and would hamstring incoming presidential administrations in designating acting officers of their choice.

II. In any event, Mr. Sarcone was authorized to obtain the grand jury subpoenas and oversee the

16

underlying investigations in his capacity as FAUSA, based on the Attorney General's delegation of authority to him. That delegation followed well-established practice that has been uniformly recognized by all three branches of government. In particular, even when an individual is no longer eligible to serve as an acting officer under the FVRA, the official may continue to perform the functions and duties of the vacant office that were lawfully delegated to him.

The district court erroneously held that the FVRA's exclusivity provision, 5 U.S.C. §3347, prohibits delegating the powers of a vacant office to a non-acting official. As many courts of appeal have concluded, the FVRA does not preclude the exercise of delegated functions by a non-acting official. The FVRA's exclusivity provision governs only temporary service by *acting* officials, who exercise both delegable and non-delegable functions. Furthermore, as this Court has recognized, the FVRA's remedial provisions are limited to *non*-delegable functions and duties that may only be performed by the vacant office, underscoring that the FVRA's exclusivity provision does not preclude delegations.

Because Mr. Sarcone was authorized to obtain the grand jury subpoenas as special attorney and FAUSA, any error in identifying him as Acting U.S. Attorney on the face of the subpoenas and the accompanying cover letters was one of form, not substance, and does not provide a valid ground for

17

quashing the subpoenas under Fed. R. Crim. P. 17(c).

## STANDARD OF REVIEW

This Court reviews an order quashing a grand jury subpoena for abuse of discretion, and questions of statutory interpretation *de novo*. *In re Grand Jury Subpoenas Returnable Dec. 16, 2015*, 871 F.3d 141, 145 (2d Cir. 2017); *United States v. Freeman*, 99 F.4th 125, 127 (2d Cir. 2024).

**POINT I:** **Mr. Sarcone Was Validly Serving as Acting U.S. Attorney When He Obtained the Grand Jury Subpoenas.**

**A. Under the FVRA, Mr. Sarcone Was Validly Serving as Acting U.S. Attorney Because the Office of U.S. Attorney Was Vacant and He Was the First Assistant to That Office.**

1. The FVRA is one of several means by which the President or the Attorney General can designate someone to run a U.S. Attorney's Office when there is no Senate-confirmed U.S. Attorney. Under the FVRA, when a PAS office is vacant because the incumbent officeholder dies, resigns, or is otherwise unable to serve, another official may perform the functions and duties of that office on an acting basis. *See* 5 U.S.C. §3345(a).

Section 3345(a) identifies three categories of individuals who may serve as acting officials,

18

subject to the time limits in §3346. The default rule is that the "first assistant to the office" shall "perform the functions and duties of the office temporarily in an acting capacity." 5 U.S.C. §3345(a)(1). Alternatively, the President may designate another PAS officer under §3345(a)(2) or certain other agency officers or employees under §3345(a)(3) to serve in an "acting capacity." *Id.* §3345(a)(2)-(3). The FVRA generally prohibits acting service by a current nominee for the office, unless the nominee served as the first assistant for at least 90 days within the year preceding the vacancy or is currently serving as the first assistant pursuant to a PAS appointment. *Id.* §3345(b)(1)-(2).

2. Mr. Sarcone was the Acting U.S. Attorney under the default provision of the FVRA when he obtained the grand jury subpoenas. *See* 5 U.S.C. §3345(a)(1).

It is undisputed that the U.S. Attorney for the NDNY is a PAS office in the Executive Branch subject to the FVRA, *see* 28 U.S.C. §541(a); 5 U.S.C. §§101, 105, and that the office is vacant. The last Senate-confirmed U.S. Attorney, Carla Freedman, left office on February 17, 2025. *See* https://perma.cc/3FSP-TTM5. The Attorney General appointed Mr. Sarcone as interim U.S. Attorney, pursuant to 28 U.S.C. §546, effective March 17, 2025. A:2075. On the day that his 120-day term as interim U.S. Attorney expired, the Attorney General reassigned the then-current FAUSA, Daniel Hanlon, to the position of Deputy

19

U.S. Attorney, A:2079, appointed Mr. Sarcone as special attorney under authority including 28 U.S.C. §§509, 510, and 515, A:2072-73, and designated Mr. Sarcone as the FAUSA, effective July 15, 2025, A:2090-95, consistent with 28 C.F.R. §0.137(b).

Mr. Sarcone thus was serving as FAUSA when his term as interim U.S. Attorney ended. Under the default provision of the FVRA, 5 U.S.C. §3345(a), Mr. Sarcone began performing "the functions and duties of the office" of U.S. Attorney "in an acting capacity" the same day, subject to the time limits of the FVRA, *id*. §3346(a)(1). Mr. Sarcone was serving as Acting U.S. Attorney when he obtained the grand jury subpoenas on August 5, 2025. A:68-74.

**B. The District Court Erred in Holding That Mr. Sarcone Was Not Serving as Acting U.S. Attorney Because He Was Not the First Assistant When the Vacancy First Arose.**

1. Contrary to the district court's conclusion, SA:13-17, the FVRA does not require a first assistant to be the incumbent at the time the vacancy initially arose to serve as an acting officer under the default provision in §3345(a)(1).

First, consider the statutory text. The FVRA does not say that only the first assistant *at the time the vacancy arose* shall be the default acting officer under §3345(a)(1). Rather, it says that

20

"[i]f" a PAS officer "dies, resigns, or *is* otherwise unable to perform the functions and duties of the office," "the first assistant *to the office* of such officer shall perform" those functions and duties in an acting capacity. 5 U.S.C. §3345(a)(1) (emphasis added). Because a vacancy is "a continuing state," *NLRB v. Noel Canning*, 573 U.S. 513, 539 (2014), §3345(a)(1) requires determining who the first assistant is when a PAS officer "is" unable to perform the functions and duties of the office, not just when a PAS officer first became unable to perform, *see Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003) (when a statutory provision is "expressed in the present tense," it requires consideration of the status at the time of the covered action, not before); *Nichols v. United States*, 578 U.S. 104, 109-10 (2016) (same). That is confirmed by the statute's reference to the first assistant "to *the office* of such officer" (which can be different people over time), rather than the first assistant to a particular PAS officeholder at a particular time.

"The Dictionary Act also ascribes significance to verb tense." *Carr v. United States*, 560 U.S. 438, 448 (2010). It provides that, "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise[,] … words used in the present tense include the future as well as the present." 1 U.S.C. §1; *see, e.g.*, *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 126 (2d Cir. 2008) (explaining that under Dictionary Act statutory reference to land "which *is* held in trust" includes "land that *will be* held in trust"). This further

supports the interpretation of §3345(a)(1) as applying not only at the moment that a vacancy begins, but also at any future point during that vacancy.

Second, consider §3345's structure. Elsewhere in the same section, Congress *did* include backward-looking language that makes eligibility for acting service for certain individuals depend on the state of affairs during the time preceding the vacancy. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quotation marks omitted).

Two paragraphs later, for instance, Congress made ineligible for a presidential acting designation certain officials who had not served in the agency for at least 90 days in the year preceding when the vacancy arose. *See* 5 U.S.C. §3345(a)(3)(A). In the next subsection of the statute, Congress lifted the general prohibition on having an acting official also be the nominee for anyone who had served as first assistant for at least 90 days prior to the date on which the vacancy initially arose. *See id*. §3345(b)(1)(A). No such backward-looking eligibility requirement, however, applies to an official who is designated first assistant under §3345(a)(1) and is not the nominee for the position in question. To the contrary, the general prohibition in §3345(b)(1)(A)

implicitly contemplates that a first assistant may serve as an acting official even if she "did not serve in the position of first assistant" prior to the vacancy, so long as she is not also the nominee. *Id*.

Third, although text and structure alone should resolve the question, consider also statutory history, which "reinforces that textual analysis." *Snyder v. United States*, 603 U.S. 1, 12 (2024). Prior to the FVRA, the Vacancies Act had provided that if the PAS officer died, resigned or was sick or absent, "his first assistant" presumptively would "perform the duties of the office until a successor is appointed or the absence or sickness stops." 5 U.S.C. §§3345, 3346 (1997). Thus, the default candidate for temporarily filling a vacancy was the first assistant *of the officer* whose death, resignation, sickness or absence made the office vacant. But in 1998, Congress chose different language. The version of the FVRA that became law abandoned the "his first assistant" language. Instead, Congress used "the first assistant to the office of such officer" to define the presumptive default for acting service in all PAS offices. 5 U.S.C §3345(a). This change in language must be given meaning, rather than ignored. When Congress substantively revises a statute's text, courts presume Congress "intends its amendment to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995). "[A] significant change in language is presumed to entail a change in meaning." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 256-60 (2012). Here, as discussed above, the

23

change in statutory language reinforces that §3345(a)(1) is not triggered by the death, departure, or incapacity of a particular PAS officeholder, but by a vacancy in the office, and thus applies to anyone who is first assistant during that vacancy.

The legislative history of the FVRA confirms this understanding of §3345(a)(1). An earlier version of the bill defined the first assistant in §3345(a)(1) as the "first assistant of *such officer*," S. Rep. No. 105-250 at 25 (1998) (emphasis added), rather than the "first assistant *to the office* of such officer," 5 U.S.C. §3345(a)(1) (emphasis added). That proposed language was the subject of debate and a cloture vote and was eventually altered in the final version of the bill after the cloture motion failed. See 144 Cong. Rec. S10868-69 (daily ed. Sept. 24, 1998); 144 Cong. Rec. S11022 (daily ed. Sept. 28, 1998) (statement of Sen. Thompson) (explaining that under the bill being debated "the first assistant to the officer becomes the acting officer"). Some Senators voted against cloture precisely because the "first assistant to such officer" language proposed in the bill was too restrictive, and Congress as a result changed the language to the "first assistant to the office of such officer" to address those concerns. For example, Senator Lieberman worried that "by the terms of the bill, a first assistant apparently can take over only if he or she was the first assistant at the time of the vacancy." 144 Cong. Rec. S11037 (daily ed. Sept. 28, 1998). Senator Lieberman continued:

24

Also troubling is what can happen when a new President comes into office. If individuals in Senate-confirmed positions leave before the new President takes office, as often happens, then the only people who would be qualified to serve as acting officials as the new administration gets off the ground, because they were the first assistants at the time of the vacancy, are holdovers, often political appointees from the previous administration. That would create an awkward situation that would require a new administration to staff itself with a previous administration's political appointees.

*Id.* at S11038.

In response, Senator Thompson assured the Senate that "just to be the acting officer, anyone who serves in that position would become the acting officer without having been there any length of time." *Id.* But those assurances were not enough, and the cloture motion failed. *Id.* at S11039. To secure passage of the bill, as Senator Thompson later explained, "subsequent changes" were made, including using "[t]he term 'first assistant to the office' … rather than 'first assistant to the officer.'" 144 Cong. Rec. S12822 (daily ed. Oct. 21, 1998). "This change [was] made to 'depersonalize' the first assistant." *Id.* That critical change in the language—which was made after specific concerns that the earlier phrasing was too narrow and restricted acting service to incumbent first

25

assistants—underscores what §3345(a)(1)'s text and structure already demonstrate: that the first assistant is not required to be serving in that role at the moment the vacancy in the PAS office arises.

Congress knows how to limit acting officer status to only incumbent first assistants when it wants to. Take, for example, Congress's 2022 amendment to the statute governing appointment of inspectors general, 5 U.S.C. §403(h), *available at* https://perma.cc/7PPH-8BC6.[8] Similar to the FVRA, §403(h) provides that when an inspector general "dies, resigns, or is otherwise unable to perform the functions and duties of that position," *id.* §403(h)(2), the "first assistant to the position of Inspector General shall perform the functions and duties of the Inspector General temporarily in an acting capacity," *id.* §403(h)(2)(B). Crucially, Congress specified that the term "first assistant" in this subsection means only the person who was first assistant "as of the day before the date on which the Inspector General dies, resigns, or otherwise becomes unable to perform the functions and duties of that position."[9] *Id.* §403(h)(1)(A)(i).

---

[8] *See* Pub. L. 117-286, sec. 5(b) (Dec. 27, 2022) (confirming that amendments to the Inspector General Act enacted after Oct. 19, 2021, are in effect even though such amendments were not included in the Act's codification).

[9] Here, Congress uses "*becomes* unable to perform," not "*is* unable to perform," to limit the term "first assistant" to the person serving in that

The absence of such restrictive language in the FVRA further highlights that §3345(a)(1) is not limited to incumbent first assistants.

Finally, consider longstanding Executive Branch practice. During presidential transitions, past administrations have routinely filled PAS positions that become vacant *before* noon on Inauguration Day by appointing new first assistants *at or after noon* on Inauguration Day. Those first assistants, by automatic operation of §3345(a)(1), then serve in an acting capacity, subject to the FVRA's time constraints. There are numerous examples of this practice, including Sarah Harris's service as Acting Solicitor General at the beginning of the current administration, Brian Boynton's service as Acting Assistant Attorney General for the Civil Division at the beginning of the Biden administration, and David Barron's service as the Acting Assistant Attorney General for the Office of Legal Counsel at the beginning of the Obama administration. *See United States v. Giraud*, Case No. 25-2635 (3d Cir.), Dkt. 26, at 278, 326.

The Government Accountability Office (GAO)— a component of the Legislative Branch statutorily charged with monitoring FVRA compliance, *see*

---

position at the moment the vacancy first occurs. 5 U.S.C. §403(h)(1)(A)(i) (emphasis added). This further shows that the use of "is" in §3345(a)(1) denotes a constant state or condition, rather than a particular moment of transition.

27

5 U.S.C. §3349(b)—agrees with that longstanding practice. *See* Letter from Victor S. Rezendes, Managing Director, Strategic Issues, GAO to U.S. Senators Joseph Lieberman and Dan Burton (Dec. 7, 2001) ("2001 GAO Letter"), *available at* https://www.gao.gov/assets/gao-02-272r.pdf. So does the Department of Justice's Office of Legal Counsel (OLC). *See Designation of Acting Associate Attorney General*, 25 Op. O.L.C. 177, 179-81 (2001) ("2001 OLC Opinion"), *available at* https://www.justice.gov/file/146056/dl.

All of this shows that someone who the Attorney General designates as FAUSA after the prior U.S. Attorney steps down can serve under the FVRA as the Acting U.S. Attorney for the specified time period during the vacancy in that PAS office.

2. In reaching a contrary conclusion, the district court failed to address many of the United States's arguments. The district court never discussed Congress's use of the phrase "to the *office* of such officer" in §3345(a)(1), even though the United States emphasized the significance of this language in its response to the quash motion. A:1667-68. Likewise, the court did not discuss the present tense phrasing of §3345(a)(1). Although the Third Circuit in *Giraud*, 160 F.4th at 398, rejected this argument, it did so based on a misapplication of Supreme Court precedent. Citing *Fischer v. United States*, 603 U.S. 480, 489-90 (2024), the *Giraud* court concluded that the phrase "is otherwise unable to perform the functions and duties of the office" is "limited by the list of specific

28

examples that precede it." *Id*. Because "dies" and "resigns" refer to a single moment in time, the Third Circuit reasoned that the "otherwise unable to perform" clause "must be read to refer to a single instance." *Id*. But neither *Fischer,* nor the principles of statutory interpretation upon which it is based, support this reading. To interpret the phrase "is otherwise unable" as referring to a continuing state does not "rende[r] meaningless" the other terms that accompany this phrase or make those terms "redundant"—the key factors that support reading an "otherwise" clause narrowly. *Fischer*, 603 U.S. at 487, 488. Accordingly, there is no reason not to give the phrase "is otherwise unable" its plain meaning as referring to an ongoing state.

In addition, the district court ignored the guidance from GAO and OLC that the language of §3345(a)(1) does not require the first assistant to have been serving in that position when the vacancy arose. A:1669 (government motion response citing 2001 GAO Letter and 2001 OLC Opinion).[10] But this guidance reflects the longstanding views of the legislative and executive branches. GAO, an arm of Congress, has expressly agreed that §3345(a)(1) applies to non-incumbent first assistants, *see* 2001 GAO Letter, at 1-2, and Congress has made no attempt to amend that

---

[10] The district court never addressed the 2001 guidance. It only briefly mentioned a 2018 OLC opinion cited by the United States concerning the meaning of §3345(a)(2) and (a)(3). SA:15 n.8.

29

provision in the past two decades to curtail this common Executive Branch practice. *See Dames & Moore v. Regan*, 453 U.S. 654, 686 (1981) ("long-continued practice, known to and acquiesced in by Congress, would raise a presumption that the action had been taken in pursuance of its consent") (brackets and quotation marks omitted). Similarly, OLC's interpretation informs the correct understanding of the statute's scope—particularly when viewed in conjunction with Congress's acquiescence and unchallenged Executive Branch practice. Likewise, that OLC initially and briefly took a different view of §3345, *see* 2001 OLC Opinion, at 179, is significantly outweighed by the fact that, subsequently, OLC interpreted the statute to mean that the first assistant need not be the first assistant at the time the vacancy arose, *id.*, and that agreed-upon interpretation has remained unchanged for nearly a quarter of a century.

3. The district court offered several justifications for its contrary reading of the FVRA, but none withstands scrutiny.

First, the district court stressed that §3345(a)(1), unlike §3345(a)(2) and (a)(3), is automatic: the first assistant becomes the acting officer without any need for further action by the President or anyone else. SA:13-14. But the automatic nature of the provision does not suggest that it operates only on first assistants in place "at the moment a vacancy first arises." SA:14. On the contrary, because a vacancy is a continuing state

30

of affairs, the automatic nature of §3345(a)(1)'s default rule and its use of the present tense establish that whoever is serving as the first assistant at a particular moment in time during the vacancy becomes the acting official. If only the first assistant who was in office when the vacancy first arose could serve, then §3345(a)(1) could not automatically apply once that first assistant left office. Section 3345(a)(1) is an automatic default rule—it applies to first assistants precisely because an agency head can often ensure that there is a first assistant in place and the President therefore does not have to personally fill every PAS vacancy that arises. The rule makes sense, given the approximately 1,000 PAS offices in the Executive Branch.[11]

Second, the district court concluded that allowing new first assistants to become acting officials under §3345(a)(1) would render subsections (a)(2) and (a)(3) "superfluous." SA:15. This is wrong. There are at least three significant circumstances where the President cannot rely on subsection (a)(1) to select an acting officer and thus subsections (a)(2) and (a)(3) continue to play an important role. First, when the first assistant

---

[11] *See* Center for Presidential Transition, *Presidential Transition Guide* (2023), 93*, available at* https://perma.cc/P25H-4FR6 (reflecting data from 2016).

31

position is itself a PAS office,[12] (a)(1) is unavailable because the Executive Branch cannot appoint a first assistant without Senate confirmation. Instead, the President must use (a)(2) or (a)(3). Second, (a)(1) is also not available when the office of an agency head is vacant and the first assistant must be appointed by the agency head. *See, e.g.*, 12 U.S.C. §5491(b)(5) (Bureau of Consumer Financial Protection); 44 U.S.C. §2103(c) (National Archives and Records Administration). Third, subsections (a)(2) and (a)(3) also play a distinct role when the President wants to leave the current first assistant in place and appoint someone else to be the acting officer—*e.g.*, because the individual serving as first assistant is the best suited to perform the important second-in-command functions of a first assistant. *See, e.g.*, *Designating an Acting Attorney General*, 42 Op. O.L.C. 182 (2018) (discussing the designation of Matthew Whitaker as Acting Attorney General under §3345(a)(3)).

The district court rejected this argument, suggesting that it would leave presidential designations under (a)(2) or (a)(3) only for "unusual circumstances." SA:15 (internal quotation marks omitted). But such presidential designations are not rare. On the first day of the

---

[12] This is often the case for the highest positions in agencies. For example, the Deputy Attorney General is a PAS office, *see* 28 U.S.C. §504, as is the Deputy Secretary of State, *see* 22 U.S.C. §2651a(a)(2).

32

present administration alone, rather than relying on §3345(a)(1), the President designated 31 officials to serve in an acting capacity, at least 27 of whom he designated under (a)(2) and (a)(3) of the FVRA. *See* https://perma.cc/79PA-GJFQ.[13] More broadly, Presidents have issued standing orders of succession for agencies pursuant to their authority under (a)(2) and (a)(3).[14] And many proposed Presidential designations under §3345(a)(2) and (a)(3) have occasioned formal opinions issued by the Office of Legal Counsel.[15]

---

[13] Based on a review of the statutory authority underlying those designations, only four of them could have been based on a statute other than the FVRA. *See* 38 U.S.C. §304 (Acting VA Secretary); 31 U.S.C. §502(f) (Acting OMB Director); 40 U.S.C. §302(b) (Acting GSA Administrator); 42 U.S.C. §902(b)(4) (Acting SSA Commissioner).

[14] *See e.g.*, Executive Order 13963 of December 10, 2020 (Department of Defense); Executive Order 13915 of April 14, 2020 (Department of the Interior); Executive Order 13251 of December 28, 2001 (Department of State); *see also Designating an Acting Director of National Intelligence*, 43 Op. O.L.C. 291, 300-02 (2019) (discussing the order of succession for the Office of the Director of National Intelligence).

[15] *See Designating an Acting Director of National Intelligence*, 43 Op. O.L.C. 291 (2019); *Designating an Acting Director of the Federal Housing Finance Agency*, 43 Op. O.L.C. 70 (2019);

33

Third, the district court dismissed the fact that §3345(a)(3) and (b)(1) have backward-looking eligibility requirements, whereas §3345(a)(1) does not. The court reasoned that (a)(1) is a "self-executing default that applies when the vacancy arises, so it does not include the screening requirements that Congress used to cabin discretionary selections under sections 3345(a)(2), (a)(3) and (b)(1)(A)." SA:15-16. But the court did not explain why, in its view, the automatic nature of §3345(a)(1) justified the lack of similar language expressly focusing on whether the first assistant held office at the time the vacancy arose. If Congress did not wish to allow recently-appointed first assistants to serve as acting officers, it could have limited §3345(a)(1) similarly as it did (a)(3), or as it later did in 5 U.S.C. §403(h). But Congress did not do so; indeed, as explained above, it expressly rejected proposed statutory text that would have limited acting service to incumbent first assistants.

Nor did the district court recognize the significance of the backward-looking language in §3345(b)(1). Subsection (a)(1) sets out the general

---

*Designating an Acting Attorney General*, 42 Op. O.L.C. 182 (2018); *Designating an Acting Director of the Bureau of Consumer Financial Protection*, 41 Op. O.L.C. 99 (2017); *Designation of Acting Director of the Office of Management and Budget*, 27 Op. O.L.C. 121 (2003); *Designation of Acting Solicitor of Labor*, 26 Op. O.L.C. 211 (2002).

rule that when a PAS office is vacant, the first assistant shall perform the office's duties in an acting capacity. Subsection (b)(1) places limitations on acting service, delineating certain circumstances that prohibit a person from serving as the acting officer, "[n]otwithstanding" (a)(1)'s broad language. 5 U.S.C. §3345(b)(1). As discussed, §3345(b)(1) provides that a first assistant *who is the nominee* for the permanent position may serve as an acting officer only if she served as first assistant before the vacancy arose. Section 3345(b)(1) places no similar restrictions on a first assistant who serves as the acting officer and is *not* the nominee. The fact that subsection (b)(1) imposes prior-service restrictions *only* where the first assistant is also the nominee reinforces that (a)(1) does not contain such restrictions.

Finally, the district court wrongly concluded that the United States's interpretation of the FVRA would render the 120-day time limit under 28 U.S.C. §546 "meaningless," because it would "allow the Attorney General to install repeatedly the same or different people as First Assistant each time an Interim U.S. Attorney's term expires— keeping the office continuously filled without Senate confirmation." SA:16. According to the district court, this possibility creates a "conflict" between the FVRA and §546. SA:16. But any "conflict" here is not created by the United States's reading of §3345(a)(1) to reach non-incumbent first assistants. After all, if a FAUSA was the incumbent when the Senate-confirmed U.S. Attorney resigned, there would be the same risk of

35

cycling back and forth between the FAUSA as Acting U.S. Attorney and §546 appointees. Instead, the district court's concern implicates the separate question of whether the expiration of the 120-day term of an interim U.S. Attorney under §546(a) creates a new vacancy that resets the clock under §3346(a)(1). This Court need not reach this question because the subpoenas here were timely issued under §3346 even if timeliness is measured from when the Senate-confirmed U.S. Attorney left office. The question here is only whether Mr. Sarcone was validly serving as Acting U.S. Attorney when he obtained the grand jury subpoenas. For the foregoing reasons, he was.

**POINT II: Mr. Sarcone Was Authorized as Special Attorney and FAUSA to Obtain the Grand Jury Subpoenas and Oversee the Underlying Investigations.**

Even if Mr. Sarcone was not properly serving as Acting U.S. Attorney, he had the authority to obtain the subpoenas and oversee the underlying investigations pursuant to the Attorney General's delegation of authority to him in his capacity as a special attorney and FAUSA. The district court erred in concluding that this delegation of authority was barred by the FVRA, and in quashing the subpoenas on this basis. SA:17-23.

36

**A. The Attorney General Possesses Authority to Conduct and Supervise Proceedings in the NDNY, and She Delegated That Authority to Mr. Sarcone.**

1. The Attorney General unquestionably has the authority—through multiple reinforcing statutes—to investigate crimes, obtain grand jury subpoenas, and supervise litigation in any federal district, including the NDNY. The Attorney General is the "head of the Department of Justice," 28 U.S.C. §503, and is vested with "[a]ll functions" of the Department's officers, agencies, and employees, subject to narrow exceptions not relevant here, *id.* §509. That includes the U.S. Attorneys' functions to conduct litigation in their districts. Indeed, 28 U.S.C. §515(a) specifies that the Attorney General may "conduct any kind of legal proceeding, civil or criminal, ... which United States attorneys are authorized by law to conduct."

The Attorney General also has separate, direct authority to conduct and supervise all litigation on behalf of the United States. The Attorney General may "personally conduct and argue any case in a court of the United States in which the United States is interested." 28 U.S.C. §518(b). In addition, the Attorney General may "supervise all litigation to which the United States, an agency, or officer thereof is a party" and "direct all United States attorneys, assistant United States attorneys, and special attorneys" in exercising their duties. *Id.* §519; *see also id.* §§516-517; *see*

*generally In re Persico*, 522 F.2d 41, 54-55 (2d Cir. 1975).

Further, the Attorney General has uncontested authority to appoint various attorneys within the Department of Justice and to delegate her functions to those attorneys. The Attorney General may appoint special attorneys and special assistants to the Attorney General, 28 U.S.C. §515(a), AUSAs, *id*. §542, special attorneys to assist U.S. attorneys, *id*. §543, and other "officials" to "detect and prosecute crimes against the United States," *id*. §533(1). The Attorney General may delegate "any function of the Attorney General" to "any other officer, employee, or agency of the Department of Justice," *id*. §510, and may "specifically direct[]" any Department officer or other "attorney specially appointed" by her to "conduct any kind of legal proceeding, civil or criminal, … which United States attorneys are authorized by law to conduct," *id*. §515(a); *see id*. §518(b) (the Attorney General "may direct … any officer of the Department of Justice" to "conduct and argue any case in a court of the United States in which the United States is interested"); *id*. §§516-517; *see United States v. Weyhrauch*, 544 F.3d 969, 974 (9th Cir. 2008) (per curiam) (recognizing delegation authority under §515(a)).

As this Court has summarized:

[T]he Attorney General has authority to assign other officers of the Department of Justice, not only under 28 U.S.C. §515, but

38

also under the other statutes giving [her] power over criminal litigation. If it were otherwise, [her] broad power to enforce the criminal laws of the United States would be seriously hampered at its inception—the initiation of a criminal case by presenting evidence before grand juries.

*Persico*, 522 F.2d at 55.

Here, the Attorney General exercised her delegation authority in appointing Mr. Sarcone as a special attorney and designating him as the FAUSA for the NDNY. Consistent with the language of 28 U.S.C §515(a), the Attorney General's delegation to Mr. Sarcone authorized him to "conduct in the Northern District of New York, any kind of legal proceedings, civil or criminal, including Grand Jury proceedings and proceedings before United States Magistrates, which United States Attorneys are authorized to conduct," A:2072, and to supervise matters within the office to the same extent as any other first assistant.

2. The Attorney General's delegation of authority to Mr. Sarcone also is consistent with well-established practice—endorsed by all three branches of government—recognizing that an agency head may delegate authority to an individual to perform certain functions and duties of a vacant PAS office, even where the individual would not be eligible to serve in an "acting" capacity under the FVRA.

39

The Executive Branch has long understood delegations of authority to allow the duties of an office to be performed during a vacancy when there is no acting official in place. Shortly after the FVRA was enacted, OLC determined that "the Act permits" certain "responsibilities to be delegated to other appropriate officers and employees in the agency" because "Congress understood that there would be occasions … when there would, for a period, be no one qualified to serve in an acting capacity." *Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 72 (1999). Accordingly, executive officials routinely carry out the functions of a vacant PAS office pursuant to a delegation of authority where no acting official is available. *See, e.g.*, Anne Joseph O'Connell, *Actings*, 120 Colum. L. Rev. 613, 634 (2020) (noting that "many functions and duties are regularly delegated" to executive officials).

For example, Steven Bradbury led OLC from February 2005 through the end of that Presidential administration without the Senate acting on his nomination to the position of Assistant Attorney General for OLC. In those portions of his tenure during which the FVRA's time limits precluded Mr. Bradbury from serving as the "acting" official, he led OLC pursuant to a delegation of authority in his role as the Principal Deputy Assistant Attorney General. *See* Letter from Gary L. Kepplinger, General Counsel, GAO, to U.S. Senators Richard J. Durbin, Russell D. Feingold, and Edward M. Kennedy (June 13, 2008)

40

("GAO Bradbury Letter"), *available at* https://go.usa.gov/xtEQP. Likewise, in the absence of a confirmed Assistant Attorney General for the Civil Division, Brian Boynton led the Division throughout the entirety of the last Presidential administration, including pursuant to delegated authority after his time for acting service under the FVRA had expired. *Compare, e.g.*, Brief for Respondent, 2021 WL 1154026 ("Acting Assistant Attorney General"), *with* Response Brief, 2024 WL 4262497 ("Principal Deputy Assistant Attorney General"). And of particular relevance here, there have been multiple instances in which a FAUSA has continued to lead a U.S. Attorney's Office pursuant to delegated authority when the office of U.S. Attorney was vacant and the time limit for acting service under the FVRA had expired.[16]

Notably, Congress has endorsed the view that executive officials may exercise authority pursuant

---

[16] For example, pursuant to a delegation of authority as FAUSA, Elizabeth A. Strange led the U.S. Attorney's Office for the District of Arizona from approximately November 2017 until May 2019, *see, e.g.*, Brief of Appellee, 2018 WL 2418885; Michelle M. Baeppler led the U.S. Attorney's Office for the Northern District of Ohio from approximately May 2022 until June 2023, *see, e.g.*, Brief of Plaintiff-Appellee, 2023 WL 2600208; and Robert J. Troester led the U.S. Attorney's Office for the Western District of Oklahoma from approximately August 2018 until June 2019, *see, e.g.*, Brief of Plaintiff-Appellee, 2018 WL 5309976.

41

to delegations that are independent of, and compatible with, the FVRA. In enacting the FVRA, the Senate Committee on Governmental Affairs recognized that the "[d]elegable functions of the [vacant] office could still be performed by other officers or employees," even where no acting official was serving under the FVRA. S. Rep. No. 105-250, at 18. And GAO—again, the arm of Congress charged with monitoring FVRA compliance— agrees that non-acting officials can perform the lawfully delegated duties of a vacant office. *See* GAO Bradbury Letter (concluding that the FVRA did not prohibit Mr. Bradbury from performing the duties of the vacant office of Assistant Attorney General for OLC while serving as Principal Deputy Assistant Attorney General).[17]

This and other Courts have endorsed this view, concluding that the FVRA does not preclude a non-acting officer from exercising lawfully delegated duties of a vacant PAS office. *See Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132, 135 (2d Cir. 2009); *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1336 (Fed. Cir. 2022). Other Circuits have adopted similar logic in holding that the FVRA's remedial provisions do not prohibit ratification of an agency official's performance of lawfully delegated duties of a vacant office. *See*

---

[17] GAO has reiterated that understanding in subsequent decisions. *See* https://www.gao.gov/ass ets/880/874603.pdf (2025); https://www.gao.gov/as sets/870/865197.pdf (2024); https://www.gao.gov/a ssets/870/869737.pdf (2024).

42

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1073-74 (9th Cir. 2024); *Kajmowicz v. Whitaker*, 42 F.4th 138, 148 (3d Cir. 2022).

If adopted, the district court's reasoning would end the common practice—blessed by all three branches of government—of having principal deputies or other individuals perform the delegable powers of a vacant PAS office in a non-acting capacity. Such a "broad reading" of the FVRA's limitations "would effectively cripple the operation of the federal government." *Kajmowicz*, 42 F.4th at 151. That is because "[t]he universe of delegable PAS officer duties is expansive, potentially encompassing every Executive agency." *Arthrex*, 35 F.4th at 1337; *accord Gonzales*, 107 F.4th at 1080 (recognizing "broad authority" of department heads to delegate). Adopting the district court's view would significantly upend the ordinary functions of the government and the ability of agencies to continue operating when PAS offices are vacant and acting service is not available.

## B. The District Court Erred in Holding That the FVRA's Exclusivity Provision Prohibited the Delegation of Authority to Mr. Sarcone.

Citing the Third Circuit's decision in *Giraud*, 160 F.4th at 403, the district court concluded that 5 U.S.C. §3347, the provision that generally makes the FVRA the "exclusive means" to designate an

"acting official," prohibited Mr. Sarcone from exercising the authority delegated to him by the Attorney General. SA:17-19. The district court, like the Third Circuit in *Giraud*, misinterpreted and misapplied the exclusivity provision.

The FVRA's text makes clear that §3347(a)'s exclusivity provision does not prohibit the exercise of lawfully delegated powers by non-acting officials. As detailed above, Congress created in the FVRA a mechanism through which certain classes of government officials may serve as "acting" officers. 5 U.S.C. §3345(a); *see NLRB v. SW Gen., Inc.,* 580 U.S. 288, 293 (2017). An official serving as an "acting" officer pursuant to the FVRA can exercise all "the functions and duties" of the vacant office, including any non-delegable powers that are specifically committed by statute exclusively to that office. 5 U.S.C. §3345(a). Section 3347(a), in turn, provides that unless there is a recess appointment or another statute expressly authorizing the designation of an acting official for a particular office, the FVRA is the "exclusive means for temporarily authorizing an acting official to perform the functions and duties" of a PAS office. *Id.* §3347(a); *see NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 160-61 (2d Cir. 2021) (explaining that FVRA is the exclusive means of temporarily authorizing an acting official unless "another statutory provision authorizes otherwise"). Section 3347(a) thus makes clear that the FVRA is generally the exclusive means of designating an individual as an "acting official,"

44

who is empowered to perform all the functions and duties of the vacant office.

Nothing in §3347(a)'s exclusivity provision purports to address the delegation of a vacant office's functions and duties to an official exercising those powers in a non-acting capacity. That flows from the plain language of §3347(a), which provides that the FVRA is the "exclusive means for temporarily authorizing an *acting official* to perform the functions and duties" of a PAS office. 5 U.S.C. §3347(a) (emphasis added); *see id*. §3345 (titled "Acting officer" and providing for performance of duties "in an *acting* capacity") (emphasis added); *id*. §3346 (setting forth time limits for "serving as an *acting* officer") (emphasis added). The critical term "acting official" in §3347(a) is not surplusage. Instead, it makes clear that the FVRA concerns the means of designating an "acting official" to perform all the functions and duties of an office, not the means of delegating some or all the office's delegable duties to a non-acting official.

The distinction between acting officials and those exercising a vacant office's powers by delegation is significant. Acting officials derive their authority from their designation pursuant to the FVRA and are authorized to perform all "the functions and duties of the office" for which they are acting. 5 U.S.C. §3345(a). Non-acting officials, by contrast, derive authority only to the extent another official has delegated powers to them. *See, e.g.*, 28 U.S.C. §510. Non-acting officials exercising

45

delegated power thus face two constraints not applicable to acting officials. First, non-acting officials can exercise *only* delegable powers—that is, the functions and duties that "a statute tasks an officer with … yet permits him to subdelegate." *Kajmowicz*, 42 F.4th at 149. Non-acting officials cannot exercise authority that is "'exclusive' to the office" and thus non-delegable. *Id*. Second, non-acting officials are subject to any limits the superior officer sees fit to place on the delegation and can exercise only those delegable powers that have actually been delegated to them. Neither constraint applies to acting officials under the FVRA, who may exercise all powers of the office.

The surrounding FVRA provisions confirm that §3347(a)'s exclusivity provision does not prohibit the delegation of powers to non-acting officials. Start with §3347(a)(1), which excepts from the FVRA's exclusivity provision a statute that "expressly … authorizes" certain officials "to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity," or that itself "designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. §3347(a)(1). That exception applies only to statutes that provide for the designation of an official to serve in an "acting capacity," demonstrating that the FVRA is concerned with which officials may serve as "acting" officials, not officials who merely exercise delegated powers.

46

That understanding is reinforced by §3347(b). There, Congress provided that a statute giving "general authority to the head of an Executive agency … to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency, is not a statutory provision to which" the exception in §3347(a)(1) applies. *Id.* §3347(b). That provision precludes using a general delegation statute to make someone an acting official. That makes sense, given that a general delegation statute cannot authorize the performance of an office's non-delegable functions and duties, which an acting official is authorized to perform and which a non-acting official is not. The provision thus underscores that Congress drew a distinction in the FVRA between being an acting official authorized to perform all the functions and duties of an office and being a non-acting official delegated the power to perform only the delegable functions and duties of an office.

The FVRA's remedial provisions in §3348 demonstrate that Congress distinguished between delegable and non-delegable duties. That section provides that when a PAS office is vacant, and no one is filling the office on an acting basis under the FVRA, the office remains vacant and "only the head of [the] Executive agency may perform any function or duty of such office." *Id.* §3348(b). An action taken by any other person "shall have no force or effect" and "may not be ratified." *Id.* §3348(d). Importantly, though, Congress narrowly defined "function or duty" for "this section" as

limited to the functions and duties that are required by statute or regulation "to be performed by the applicable officer (*and only that officer*)." *Id.* §3348(a)(2)(A)(ii), (B)(i)(II) (emphasis added); *see also* 23 Op. O.L.C. at 72 ("Congress delimited which functions could be performed only by a qualified acting officer … defining them as only those functions or duties assigned *exclusively* to the … officer by statute or regulation.") (emphasis added). Section 3348 thus expressly differentiates between delegable and exclusive non-delegable powers and provides a remedy only for the unlawful exercise of exclusive non-delegable powers.[18]

Furthermore, since enacting the FVRA, Congress has expressly recognized that an official can exercise the functions of a vacant PAS office in a non-acting but temporary capacity. In 2009, Congress enacted into permanent law an appropriations rider that states: "[N]o part of any appropriation contained in this or any other Act may be used for the payment of services to any individual carrying out the responsibilities of any position requiring Senate advice and consent in an *acting or temporary capacity* after the second submission of a nomination for that individual to that position has been withdrawn or returned to

---

[18] For examples of Executive Branch functions that Congress has expressly made exclusive and non-delegable, *see, e.g.,* 5 U.S.C. §9807(c)(1); 7 U.S.C. §7996(e)(2)(C); 10 U.S.C. §2014(f); 31 U.S.C. §1344(d)(3); 41 U.S.C. §3304(a)(7).

the President." Pub. L. No. 111-8, Div. D, Title VII, §749, 123 Stat. 524, 693 (2009) (emphasis added). This further underscores that Congress has acquiesced in the longstanding and widely accepted practice of subordinate officials exercising the delegable duties of a vacant PAS office in a non-acting capacity.

This Court and other Circuit Courts of Appeal have likewise concluded that the FVRA does not invalidate the exercise of delegable functions and duties of a vacant office. In *Schaghticoke Tribal Nation*, 587 F.3d at 135, this Court held that the FVRA did not prohibit an inferior officer from performing a function of a PAS officer who had resigned because the agency's regulations permitted the PAS officer to delegate that function. Likewise, the D.C. Circuit agrees that the FVRA forecloses the delegation only of "exclusive duties and authorities." *Stand Up for California! v. United States Dep't of the Interior*, 994 F.3d 616, 622 (D.C. Cir. 2021), *affirming* 298 F. Supp. 3d 136, 150 (D.D.C. 2018) (holding that the exercise of delegable duties of a vacant PAS office by the principal deputy after his acting service had expired did not violate the FVRA).

Citing these decisions, the Federal Circuit in *Arthrex*, 35 F.4th 1335-38, addressed the exact issue presented here and held that §3347's exclusivity provision does not bar the wholesale delegation of all the delegable powers of a PAS office to a non-acting official, *id*. at 1338. *Arthrex* concerned a challenge to the denial of a rehearing

49

request of an order invalidating a patent. The authority to decide such rehearing requests was vested in the Director of the U.S. Patent and Trademark Office, a PAS office. *See id.* at 1332; 35 U.S.C. §3(a)(1). But because the offices of Director and Deputy Director were vacant, the rehearing decision was made by the Commissioner of Patents, who had been delegated all the "non-exclusive functions and duties" of the Director under a standing order issued by a previous Director. *See Arthrex*, 35 F.4th at 1332 (internal quotation marks omitted). In holding that the Commissioner had authority to deny the rehearing request, the Federal Circuit explained that the FVRA "does not … restrict" the delegation and performance of a "PAS officer's delegable duties when he is absent." *Id.* at 1338. The court rejected the argument that this interpretation would render §3347(b) superfluous, explaining that §3347(b) "merely provides that a statute granting the head of an agency 'general authority … to delegate [his] duties' does not exempt the agency from the FVRA." *Id.* When "Congress grants an agency head general delegation authority but specifies that certain duties are non-delegable," the court explained, "§3347(b) makes clear that the FVRA still applies to those nondelegable duties." *Id.*; *see also Gonzales*, 107 F.4th at 1073-74 (agreeing with *Arthrex* that the FVRA's remedial provision "applies only to those duties of [a PAS] officer that are nondelegable") (citing *Arthrex*, 35 F.4th at 1336); *accord Kajmowicz*, 42 F.4th at 148 (determining that the FVRA's remedial provision is "unambiguous" and "applies only to functions

50

and duties that a [PAS] officer alone is permitted by statute ... to perform" (quotation marks omitted)).

The district court erred in relying on *Giraud* to find that the exclusivity provision barred the delegation here. In *Giraud*, the Third Circuit rejected the holding of *Arthrex* on the ground that the Federal Circuit improperly applied §3348's narrow definition of "functions and duties" to the entire FVRA. 160 F.4th at 405. But that was not *Arthrex*'s reasoning. There, the Federal Circuit rejected Arthrex's argument that §3348(d) deprived the Commissioner's action of any "force or effect." *Arthrex*, 35 F.4th at 1335 (quotation marks omitted). The court's statements that "the FVRA applies" only to non-delegable duties should be read in context as referring to §3348(d). That is how other Circuits have understood *Arthrex*. *See Gonzales*, 107 F.4th at 1073; *Kajmowicz*, 42 F.4th at 151. Nevertheless, *Arthrex* strongly supports the legality of Mr. Sarcone's request for the grand jury subpoenas and continued supervision of the underlying investigations in this case pursuant to the Attorney General's delegation of authority. The Federal Circuit held that the FVRA did not prohibit an officer's exercise of a delegable function pursuant to the wholesale delegation of all delegable functions of a vacant PAS office. *See Arthrex*, 35 F.4th at 1335-38. That reasoning applies fully here, and this Court should not split with the Federal Circuit.

51

## C. The Delegation of Authority to Mr. Sarcone as Special Attorney and FAUSA was Proper.

The district court erred in concluding that the delegation of authority to Mr. Sarcone was a an "attempt to use general delegation to create an Acting U.S. Attorney outside the FVRA's statutory framework." SA:19. In reality, the delegation here was wholly consistent with the FVRA. The court's error lies in its failure to interpret the FVRA as a statute that applies to offices across the Executive Branch, not just to the Department of Justice and U.S. Attorney's Offices. The fact that the FVRA's exclusivity provision does not prohibit the relatively broad delegation in this case does not require reading that provision more narrowly than its text warrants.

Key to the district court's decision was the conclusion that the FVRA prohibits the Attorney General from creating a "de facto U.S. Attorney with the 'full panoply of [the office's] powers' by delegating the authority to conduct 'any kind of legal proceedings' that U.S. Attorneys may conduct." SA:19 (quoting *Giraud*, 160 F.4th at 403). This ignores that there is fundamental difference between a U.S. Attorney (or Acting U.S. Attorney) and a FAUSA (or a special attorney assigned to the office), because the former is *automatically* vested with *all* the powers of the office, while the latter has only those powers that *have been* and *can be* delegated. Not all duties of a Department of Justice official are delegable. *E.g.*,

52

18 U.S.C. §2516(1) (wiretaps); 18 U.S.C. §245(a)(1) (civil-rights prosecutions); 18a U.S.C. §3271 (human-trafficking prosecutions); 18 U.S.C. §14 (Classified Information Procedures Act). Here, by contrast, NYOAG has identified no power wielded by Mr. Sarcone that is not lawfully delegable to him in his capacity as FAUSA or that must be performed exclusively by a U.S. Attorney within the meaning of 5 U.S.C. §3348. The validity of that delegation to Mr. Sarcone cannot turn on the fortuity of whether a U.S. Attorney has any non-delegable duties that he cannot perform. Delegation to a FAUSA is no different than delegation to a Principal Deputy Assistant Attorney General—under the FVRA, neither is a "de facto" acting head of office.

As the Federal Circuit recognized in *Arthrex*, even if the FVRA's application to a particular office is limited, that "does not … justify departing from the plain language of the statute." 35 F.4th at 1337-38; *see Gonzales*, 107 F.4th at 1080; *United States v. Ramirez*, 2025 WL 3019248, at *19 (C.D. Cal. 2025). Indeed, Congress enacted the FVRA against the background principle that "when a statute delegates authority to a federal officer or agency, subdelegation … is presumptively permissible absent affirmative evidence of a contrary congressional intent." *Kajmowicz*, 42 F.4th at 149 (brackets and quotation marks omitted); *see also Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 120-23 (1947). And Congress "chose [the FVRA's] limiting language … knowing full well that 'many [PAS officers] lack

53

any meaningful statutory [*i.e.*, non-delegable and exclusive] duties.'" *Arthrex*, 35 F.4th at 1337 (quoting S. Rep. No. 105-250, at 18).[19]

Critically, because the FVRA applies across the entire Executive Branch, its meaning cannot turn on the result of its application to one specific office in one specific agency, as the district court in *Ramirez* correctly recognized. 2025 WL 3019248, at \*19. To the extent that the primary functions of a Department of Justice lawyer—participating in litigation and supervising others—can be delegated to any Department lawyer, that is a

---

[19] Even if the office of U.S. Attorney currently has no exclusive functions, there still is a legal difference between the power of an Acting U.S. Attorney and one delegated the functions of a U.S. Attorney. The former official could exercise any exclusive functions of the office added by statute or regulation in the future, whereas the latter official could not. Moreover, an official delegated the functions of a U.S. Attorney may face litigation concerning the delegability of those functions, and some courts have suggested that there are restrictions on the power to delegate certain functions of a U.S. Attorney. *See Weyhrauch*, 544 F.3d at 974-75 (certifications under 18 U.S.C. §3731, ¶2); *cf. United States v. Mangan*, 575 F.2d 32, 39 (2d Cir. 1978) (applications under 26 U.S.C. §6103(i)(1)(B), the current version of which includes U.S. Attorneys).

54

feature of the Department of Justice that has little to do with the FVRA.

**D. Mr. Sarcone Retained Delegated Authority to Obtain the Subpoenas and Oversee the Investigations, Even if He Was Not Validly Serving as Acting U.S Attorney.**

The district court erred in concluding that the supposed invalidity of Mr. Sarcone's service as Acting U.S. Attorney under the FVRA meant that he had no authority to obtain the grand jury subpoenas and supervise the underlying investigations. His ability to do so did not hinge on him exercising the authority of a U.S. Attorney because as a special attorney and FAUSA, his authority derived from the Attorney General's own delegated authority. Even if Congress were to entirely abolish the office of U.S Attorney, the Attorney General would unquestionably have the power herself to obtain grand jury subpoenas and supervise investigations, among other functions. There is no reason why the Attorney General somehow lacked the power to delegate such authority to Mr. Sarcone as special attorney and FAUSA.

Accordingly, the district court erred in concluding that invalidity in Mr. Sarcone's service as Acting U.S. Attorney under the FVRA meant that he had no authority to obtain the subpoenas and must be disqualified from further involvement in the investigations. Section 515(a) provides that

55

"any attorney specially appointed by the Attorney General, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding … including grand jury proceedings … which United States attorneys are authorized by law to conduct." As this Court explained in *In re Persico*, the "[p]lain meaning" of this provision "arguably permits the Attorney General to give the assigned attorney a specific direction to conduct grand jury proceedings to the same extent as the United States Attorney." 522 F.2d at 56-57. And as the district court recognized, the Attorney General here had delegated authority to Mr. Sarcone not only under Section 515, but also under §510, which permits the Attorney General to "authorize the performance by any other officer [or] employee" of the Department of Justice "of any function of the Attorney General," 28 U.S.C. §510. SA:5, 18-19. As discussed previously, Congress vested the Attorney General with all of the authority granted to U.S. Attorneys, 28 U.S.C. §§509, 515, and, separately, also vested the Attorney General with independent authority to conduct and supervise litigation involving the United States, *id.* §§516-519. Accordingly, as a result of the Attorney General's delegation of authority under §§510 and 515, Mr. Sarcone had the power to seek the grand jury subpoenas and supervise the underlying investigations in this case, separate and apart from his authority as Acting U.S. Attorney.

Several district courts have reached this same conclusion under similar circumstances. In

56

*Ramirez*, for example, the district court concluded that even if the FVRA invalidated the service of the Acting U.S. Attorney Bilal A. Essayli, he "was properly appointed as a Special Attorney and designated as the FAUSA." 2025 WL 3019248 at *18. Accordingly, the court found it had "no basis to preclude" Mr. Essayli "from performing the lawful duties of a FAUSA," which included supervising prosecutions. The court recognized that this authority "stems from the power of the Attorney General to delegate [her] authority." *Id.* at 19; *accord United States v. Ndissi*, No. 2:25-CR-00143-CR-1, 2026 WL 318836, at *4 (D. Vt. Feb. 5, 2026).

Similarly, in *United States v. Ramirez-Martinez*, No. 1:22-CR-01721-KWR, 2026 WL 113431 (D.N.M. Jan. 14, 2026), the district court considered a similar delegation by the Attorney General to then-Assistant United States Attorney Ryan Ellison. As here, the Attorney General delegated to Mr. Ellison "all the delegable, nonexclusive functions of the United States Attorney for the District of New Mexico." *Id.* at *9. The Attorney General also designated Mr. Ellison as the FAUSA, as she did here. *Id.* Although the district court in *Ramirez-Martinez* determined that the §515 delegation could not authorize Mr. Ellison to perform all the functions of the United States Attorney, it nevertheless determined that this delegation authorized Mr. Ellison to perform the functions of a FAUSA, including supervising and conducting legal proceedings in that district. *Id.* at *19-20, 43. As a result, the district court

refused to invalidate actions taken by Mr. Ellison within the scope of those delegable functions and refused to disqualify him from performing the lawful duties of a FAUSA. *Id*. at \*21-24. Even if the district court here was correct that the FVRA prohibited Mr. Sarcone from assuming the position of Acting U.S. Attorney, it erred by not recognizing his independent authority to obtain the grand jury subpoenas and supervise the investigations.

### E. Any Error in the Title Used by Mr. Sarcone on the Face of the Grand Jury Subpoenas Does Not Warrant the Quash Order.

Mr. Sarcone used the title "Acting U.S. Attorney" when identifying himself as the person requesting the grand jury subpoenas, and in the accompanying cover letters. A:68-69, 72-73. For the reasons previously discussed, even if Mr. Sarcone did not validly assume the position of Acting U.S. Attorney under the FVRA, he possessed the authority to seek the subpoenas as a special attorney and as the designated FAUSA. Accordingly, the error in the subpoenas (if any) is one of form, not substance. Mr. Sarcone simply used the wrong title—Acting U.S. Attorney, rather than FAUSA. But that error does not somehow invalidate the subpoenas themselves.[20]

---

[20] A grand jury subpoena may be invalidated where the person who requested the subpoena lacks *any* authority to request the subpoenas from the grand jury. Precisely *how* such a claim can be raised (*i.e.,* whether through a motion to quash

The district court wrongly concluded that because Mr. Sarcone used the title of "Acting U.S. Attorney" when requesting the subpoenas, "the enforceability of the subpoenas therefore turns on whether Mr. Sarcone was lawfully serving as Acting U.S. Attorney—not whether he also held a lawful 'Special Attorney' appointment." SA:22. This Court should reject this conclusion.

The enforceability of a grand jury subpoena does not turn on whether the person who obtained the grand jury subpoena used the proper job title. It is axiomatic that the grand jury's "right to every man's evidence" does not derive from the authority of the U.S. Attorney; it flows instead from the grand jury's distinct Constitutional and common law role. *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972); *United States v. Calandra*, 414 U.S. 338, 342, (1974). The government is not aware of any case in which a court has found a grand jury subpoena invalid because the person requesting the subpoena used the wrong title when doing so.

---

under Rule 17(c) or through contempt proceedings, *see, e.g.*, *United States v. Ryan*, 402 U.S. 530, 532 (1971)) is a separate question, but one that this Court need not address. Here, the United States does not contest, but does not concede, that NYOAG could challenge Mr. Sarcone's subpoena authority through a motion to quash under Rule 17(c).

The district court's reliance (SA:22-23) on *In re Grand Jury Proceeding*, 971 F.3d 40 (2d Cir. 2020) ("*Oberlander*") is misplaced. In that case, this Court held that a grand jury subpoena served by the government in the name of an expired grand jury was "invalid from its inception" because the grand jury was no longer empaneled. *Id.* at 50. The focus of *Oberlander* was on the feasibility of compliance. *Id.* It held that the subpoena in that case was a "nullity" because "it required Oberlander to produce documents to and appear before a grand jury that was no longer impaneled, in connection with an investigation that had expired," which rendered "[c]ompliance with such a subpoena ... obviously impossible." *Id.* But, here, it is uncontested that the grand jury was properly impaneled when it issued the subpoenas and remains impaneled now. Mr. Sarcone's use of a wrong title does not render NYOAG's compliance "impossible."

Furthermore, the district court's quash order exceeded the scope of Rule 17(c). This rule authorizes a district court to quash a subpoena only "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Mr. Sarcone's use of a wrong job title when requesting the subpoena does not render compliance with the subpoena "unreasonable or oppressive." Interpreting Rule 17(c) more broadly to encompass such clerical errors runs counter to the longstanding recognition that a grand jury's investigative powers are broad and should not be impeded by "minitrials and preliminary showings"

60

on matters peripheral to the investigation. *United States v. R. Enters., Inc.*, 498 U.S. 292, 298–300 (1991); *Calandra*, 414 U.S. at 343; *see also Blair v. United States*, 250 U.S. 273, 282 (1919) (holding that grand jury witness "is not entitled to challenge the authority of the court or of the grand jury, provided they have a de facto existence and organization").

District courts have regularly rejected motions to quash subpoenas on the basis of clerical or typographical errors. *See, e.g.*, *Hunte v. Schneider Nat. Carriers, Inc.*, No. 1:13-CV-02069-WSD, 2014 WL 3955723, at *4 (N.D.Ga. Aug. 13, 2014) ("A minor typographical error does not constitute grounds to quash an otherwise valid Subpoena."); *Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091-Civ, 2009 WL 455428, at *2 (S.D.Fla. Feb. 23, 2009) (same); *Atl. Inv. Mgmt., LLC v. Millennium Fund I, Ltd.*, 212 F.R.D. 395, 397-98 (N.D.Ill. 2002) (refusing to quash subpoena based on lack of attorney signature); *Vogue Instrument Corp. v. Lem Instruments Corp.*, 41 F.R.D. 346, 348 (S.D.N.Y. 1967) (refusing to quash subpoena due to defect in caption).

In sum, because Mr. Sarcone actually possessed delegated authority to obtain the grand jury subpoenas, there was no basis to quash the subpoenas because he identified himself as the "Acting U.S. Attorney," rather than as the FAUSA, on the face of the subpoenas.

61

**CONCLUSION**

The district court's Opinion and Order should be vacated.

Dated:  Syracuse, New York
        March 2, 2026

        Respectfully submitted,

        PAMELA J. BONDI
        *Attorney General*

        TODD BLANCHE
        *Deputy Attorney General*

        HENRY C. WHITAKER
        *Counselor to the Attorney General*

        s/ *Rajit S. Dosanjh*
By:     RAJIT S. DOSANJH
        *Assistant United States Attorney*
        *United States Attorney's Office*
        *Northern District of New York*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7) of the Federal Rules of Appellate Procedure, the undersigned counsel for the United States hereby certifies that this brief complies with the type volume limitation of Rule 32(a)(7)(B) and Local Rule 32.1. As measured by the word-processing system used to prepare this brief, there are approximately 13,670 words in the brief.


s/ *Rajit S. Dosanjh*

By:   RAJIT S. DOSANJH
*Assistant United States Attorney*

**CERTIFICATE OF SERVICE
BY NEXTGEN CM/ECF**

IN RE GRAND JURY SUBPOENAS TO THE
OFFICE OF THE NEW YORK STATE
ATTORNEY GENERAL
v.
UNITED STATES OF AMERICA

Docket No. 26-156

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of New York, and is a person of such age and discretion as to be competent to serve papers.

She further certifies that on March 2, 2026, she served a copy of the appellee's Brief, Special Appendix, and Joint Appendix on the United States Court of Appeals for the Second Circuit and counsel for appellant, Hailyn J. Chen, Esq., Benjamin W. Hill, Esq., Donald B. Verrilli, Jr., Esq., and Barbara D. Underwood, Esq., by uploading to the Second Circuit's ECF system a Portable Document Format (PDF) version of the Brief.

s/ *Deanna Lieberman*
Deanna Lieberman